Exhibit A

| | |
|---|---|
| **DISTRICT COURT, DENVER COUNTY**<br>**STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202<br>_____<br><br>**Plaintiff**:    LJUBINKA STANISAVLJEVIC,<br><br>v.<br><br>**Defendants:**   TRAVELERS INSURANCE<br>                 COMPANY.<br>_____<br>Jonathan D. Stine, #38925<br>The Paul Wilkinson Law Firm, LLC<br>999 Jasmine St.<br>Denver, CO 80202<br>Telephone: (303) 333-7285<br>Facsimile:  (303) 756-1878<br>jonathan@pwlfllc.com | DATE FILED: November 9, 2022 11:44 AM<br>FILING ID: 42FF45C158781<br>CASE NUMBER: 2022CV33212<br><br><br>▲**COURT USE ONLY**▲<br>_____<br><br>Case Number:<br><br><br>Division: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Ljubinka Stanisavljevic, by and through her attorney, The Paul Wilkinson Law Firm, LLC, hereby submits her Complaint and Jury Demand as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff, Ljubinka Stanisavljevic, is an individual currently residing at 1341 Lemon Bay Drive, Venice, Florida, 34293.

2.    Defendant Travelers Insurance Company ("Travelers") is a foreign insurance entity authorized to do business in the State of Colorado that in fact sells insurance policies in the State of Colorado.

3.    Jurisdiction is proper pursuant to C.R.S. § 13-1-124. Travelers transacts business in the State of Colorado and contracted to insure persons, property and risk residing in the State of Colorado at the time of contracting.

4.    Venue is proper in Denver County, Colorado pursuant to C.R.C.P. 98 because Travelers, a foreign corporation, can be found and does business in Denver County.

## GENERAL ALLEGATIONS

5. Plaintiff was injured in an automobile collision due to the negligence of a driver, Tyler Stripp, on July 31, 2020.

6. At the time of the collision, Plaintiff was the front-seat passenger of a 2010 Nissan Pathfinder being driven by her friend, Loree Rosenblum. Mrs. Rosenblum was travelling southbound on US Highway 285 near the intersection with Castello Street in Park County, Colorado when Mr. Stripp, driving northbound on Highway 285 attempted to make a left turn onto Castello Street, causing the front of Mrs. Rosenblum's vehicle to collide with the passenger's side of Mr. Stripp's 2013 Ford Edge.

7. As a direct, foreseeable, and proximate result of Mr. Stripp's negligent actions, Plaintiff suffered injuries, damages and losses.

8. Plaintiff did nothing to cause or contribute to the above-referenced collision.

9. Mrs. Rosenblum did nothing to cause or contribute to the above-referenced collision.

10. No other third party other than Mr. Stripp caused or contributed to the cause of the July 31, 2020 collision, and Plaintiff's injuries, damages and losses.

11. At the time of the collision, Mr. Stripp was insured through a policy with Progressive Insurance that included $25,000 in bodily injury liability insurance coverage.

12. At the time of the collision, Mrs. Rosenblum was insured by Defendant Travelers through an insurance policy, Policy No. 604880954-203-1, that included $250,000 in underinsured motorist coverage.

13. Plaintiff, as a person occupying Ms. Rosenblum's covered vehicle at the time of the collision is deemed an insured under the terms of Ms. Rosenblum's policy with Travelers.

14. Plaintiff performed all conditions precedent to coverage.

15. Plaintiff submitted medical records and medical bills to Travelers in support of her claim for entitlement to underinsured motorist coverage.

16. On August 11, 2020 Plaintiff provided Travelers with an executed medical records release authorization.

17. The medical records release authorization provided to Travelers on August 11, 2020 enabled Travelers to obtain any medical records it felt necessary to investigate and evaluate Plaintiff's claim.

2

18.     On August 11, 2020 Plaintiff returned a completed detailed injury questionnaire to Travelers outlining the details of her injuries from the accident and her medical treatment up to that date.

19.     Travelers, upon information and belief, did not begin investigating and handling Plaintiff's underinsured motorist insurance claim until approximately January 29, 2021.

20.     On January 29, 2021 Julie Belletire, a claim adjuster for Travelers, reached out to Plaintiff and requested that she execute a medical records release authorization so that she could begin gathering bills and records regarding Plaintiff's care.

21.     Ms. Belletire, on behalf of Travelers, requested that Plaintiff execute a second medical records release authorization in January of 2021 even though Plaintiff already provided Travelers with an executed medical records release authorization on August 11, 2020. This request was an unnecessary procedural hurdle unreasonably demanded at that time.

22.     Neither Ms. Belletire nor any other representative of Travelers ever explained to Plaintiff why Travelers required her to execute multiple medical records release authorizations, nor why it could not use the release authorization provided to it by Plaintiff in August of 2020.

23.     Nonetheless, on February 2, 2021 Plaintiff provided to Travelers the second executed medical records release authorization that it had requested on January 29, 2021.

24.     Also on February 2, 2021 Plaintiff told Ms. Belletire that if there was anything she could do to assist in facilitating the process to let her know.

25.     On or about February 3, 2021 Plaintiff provided to Ms. Belletire and Travelers credentials to be able to access her medical information online portal, Mychart.

26.     On February 25, 2021 Ms. Belletire emailed Plaintiff and noted that medical records requests had been sent out but that no records had been received yet, and that she could not access the Mychart account because the link had expired.

27.     As Ms. Belletire did not access the Mychart account and download the records and bills before the access link provided to her by Plaintiff expired, on March 1, 2021 Plaintiff sent another access link to Mychart to Ms. Belletire and Travelers.

28.     Also on March 1, 2021 Plaintiff asked that Ms. Belletire send her copies of all medical records requests sent out so that Plaintiff could follow up directly with the providers for Ms. Belletire and Travelers.

3

29. On March 1, 2021 Ms. Belletire explained to Plaintiff that she had accessed the Mychart portal, but was unable to print or save the records, and thus would need to obtain hard copies of the records before being able to move forward on the claim.

30. In response to Ms. Belletire's March 1, 2021 email, Plaintiff responded that same day noting that she had previously downloaded everything from the portal other than unrelated women's health records and attached them to her email to Ms. Belletire.

31. Also in her March 1, 2021 email response to Ms. Belletire, Plaintiff noted that she had not yet received a settlement offer from Progressive, but that the Progressive policy limit was only $25,000 and the Progressive adjuster assigned to her claim told her that her case would be wrapped up by the following week.

32. In her March 1, 2021 email response to Ms. Belletire, Plaintiff also provided to Ms. Belletire and Travelers the Progressive claim number and adjuster contact information.

33. On March 2, 2021 Ms. Belletire acknowledged that she was able to download the records sent to her the previous day by Plaintiff.

34. On March 2, 2021 Plaintiff emailed Ms. Belletire on behalf of Travelers and attached additional medical records that she was able to obtain, including cervical spine and brain MRI reports, and provided additional information regarding her medical providers.

35. On March 3, 2021 Plaintiff sent to Ms. Belletire and Travelers a detailed timeline of her medical care since the date of the accident with citations to the records previously provided to Ms. Belletire and Travelers.

36. Also on March 3, 2021 Plaintiff sent to Ms. Belletire and Travelers a 9-page victim impact statement detailing her injuries from the accident and how they had affected her life, including issues with ongoing pain that precluded her from being able to earn a living to the same level that she did prior to the collision.

37. In her March 3, 2021 victim impact statement Plaintiff explained to Travelers that since the accident she was experiencing recurring neck pain, headaches and numbness into her hands and fingers that she had never experienced before the July 31, 2020 collision.

38. In her March 3, 2021 victim impact statement Plaintiff explained to Travelers that her neck pain, headaches and numbness in her upper extremities from the collision precluded her from being able to work for a full day at her computer like she had been able to do for decades prior to the July 31, 2020 collision.

4

39. Plaintiff concluded her March 3, 2021 victim impact statement by requesting that Travelers compensate her for collision-related injuries and requested that Travelers respond within 14 days.

40. On March 3, 2021 Plaintiff emailed Ms. Belletire and Travelers to update them on the status of her requests for medical billing and provided them with contact information for these medical providers in case there was anything else that Travelers felt it needed to obtain from them.

41. On March 4, 2021 Ms. Belletire emailed Plaintiff on behalf of Travelers and thanked Plaintiff for the impact statement and represented that she would review everything to make Plaintiff an offer.

42. On March 14, 2021 Plaintiff emailed to Ms. Belletire and Travelers the billing she had received from Rush Copley Medical Center totaling over $30,000. Plaintiff noted that this information had also been sent to Progressive.

43. On March 15, 2021 Ms. Belletire on behalf of Travelers emailed Plaintiff and noted that she was in the process of sorting through everything she had to date and would have an update for Plaintiff in the next couple of days.

44. On March 15, 2021 Plaintiff emailed documents to Ms. Belletire regarding her settlement with Progressive for Mr. Stripp's $25,000 bodily injury liability policy limits.

45. On March 28, 2021 Plaintiff emailed Ms. Belletire and Travelers asking when she could expect to settle her UIM claim with Travelers and asking if there was anything she could do to move things along.

46. On March 29, 2021 Ms. Belletire emailed Plaintiff and informed her that she had reviewed the documentation she had to date and noted that she was still working to obtain all of the medical bills as well as urgent care records from Colorado.

47. On April 20, 2021 Plaintiff emailed to Ms. Belletire and Travelers additional medical bills that she had obtained from her medical providers, as well as informed them as to the status of additional records that were being sent to Travelers directly from her medical provider.

48. On April 21, 2021 Ms. Belletire acknowledge receipt of the additional bills sent to her the previous day by Plaintiff as well as additional records from one of Plaintiff's medical providers and told Plaintiff that she would be reviewing everything that week and would let Plaintiff know if there were any questions.

49. After April 21, 2021 Ms. Belletire did not inform Plaintiff of any questions that she or Travelers had regarding any aspect of Plaintiff claim.

50. On May 19, 2021 James Burnham, another adjuster working for Travelers, emailed Plaintiff and informed her that he would be taking over the handling of the claim.

51. In his initial May 19, 2021 email Mr. Burnham represented that he was unable to evaluate the claim completely at that point, and that he would be working to gather prior medical records and imaging and would likely have a medical expert review the material to assist in his evaluation.

52. In his initial May 19, 2021 email Mr. Burnham noted that he was issuing a payment in the amount of $17,470.78 representing the medical bills received to date minus the $25,000 Plaintiff had obtained from Progressive.

53. Mr. Burnham did not explain why the $17,470.78 payment had not been issued earlier during the claim process.

54. Mr. Burnham sent a second email to Plaintiff on May 19, 2021 asking Plaintiff to provide her own personal automobile insurance information as such information was needed by Travelers to confirm primacy of coverage.

55. Mr. Burnham did not explain why Travelers had not requested the information about Plaintiff personal automobile insurance policy in the previous approximate ten (10) months that it was handling her claim.

56. Plaintiff responded to Mr. Burnham's initial May 19, 2021 email on May 21, 2021 and explained that she was still seeking the entire available $250,000 policy limit and asked Mr. Burnham to review the materials she had submitted to Travelers to better understand why she was seeking the full $250,000 policy limit.

57. On May 20, 2021 Plaintiff emailed Mr. Burnham, attached additional records that she had obtained from her medical providers, and asked Mr. Burnham to please explain what exactly Travelers was disputing so that she could address each issue directly.

58. In her May 20, 2021 email Plaintiff informed Travelers that she was in Florida taking care of her mother.

59. Neither Mr. Burnham nor any other representative of Travelers responded to Plaintiff's question of what Travelers was disputing on her claim.

60. On May 20, 2021, for the first time since beginning to handle Plaintiff's claim in August of 2020, Travelers, through its agent Mr. Burnham, told Plaintiff that it believed that it would require information about her prior medical history and an independent medical examination to be able to evaluate her claim.

6

61.     On May 20, 2021, for the first time since beginning to handle Plaintiff's claim in August of 2020, Travelers, through its agent Mr. Burnham, told Plaintiff that it required a record that indicates a work restriction to be able to evaluate her wage loss claim.

62.     Plaintiff wrote back to Mr. Burnham on May 20, 2021 and noted that this was the first time that a request for an independent medical examination had been mentioned to her.

63.     Plaintiff also noted on May 20, 2021 that Mr. Burnham's May 20, 2021 email was the first instance in which Travelers informed her that she required a work restriction record to be able to evaluate her wage loss claim, and that she was in the process of scheduling with her doctor to get an evaluation for work restrictions.

64.     Mr. Burnham failed to respond to multiple issues identified in Plaintiff's May 20, 2021 correspondence.

65.     Upon being informed that Plaintiff was attempting to set an appointment with her doctor to get the work restriction record that Mr. Burnham represented would be necessary for Travelers to be able to evaluate her wage loss claim, Travelers refused to pay for the visit with the doctor.

66.     Travelers' requirement that Plaintiff get a work restriction letter from her doctor to be able to evaluate her wage loss claim and failure to pay for her appointment to get that record improperly dilutes Plaintiff's UIM benefits that she is owed under the policy.

67.     Throughout Travelers' handling of Plaintiff's UIM claim, Plaintiff regularly and repeatedly provided to Travelers and its agents status updates as to her treatment as well as copies of her medical records and bills that she obtained at her own expense.

68.     At no point during its handling of the claim or upon receipt of documentation that Plaintiff had obtained herself did Travelers ever offer to compensate Plaintiff for her time and money in obtaining medical records and bills that Travelers could and should have been diligently working to obtain itself, nor has it paid any money for those efforts and expenses.

69.     Travelers' failure to compensate Plaintiff for her time and money in obtaining medical records and bills that Travelers could and should have been diligently working to obtain itself improperly dilutes Plaintiff's UIM benefits that she is owed under the policy.

70.     Upon information and belief, Travelers failed to employ individuals competent to timely gather medical records for the handling of Plaintiff's claim.

71.     On June 21, 2021 Mr. Burnham wrote to Plaintiff and informed her that Travelers had retained a law firm, Montgomery Amatuzio Chase Bell Jones LLP, to assist its handling of her

7

claim and specifically "in making sure all needed records, bills, etc. are gathered for the IME and needs of the evaluation."

72. On June 21, 2021 Plaintiff responded to Mr. Burnham asking, *inter alia*, if Travelers would pay for the functional capacity examination.

73. In her June 21, 2021 email Plaintiff requested that the independent medical examination be scheduled as soon as possible while Plaintiff was still in Chicago as she was needing to go to Florida as soon as possible to be with her sick and elderly mother.

74. On June 21, 2021 Mr. Burnham responded to Plaintiff and told her, "The timing of the IME will be an issue and your requests for an IME in Chicago in the timeframe that you suggest will not be likely as we will make sure that we have all imaging, prior imaging, prior records and current records that are needed to have the IME doctor complete the review. I anticipate that it will take some time to make sure all the medical records are available to the IME doctor and do not suggest that you delay whatever personal plans you have. If you move to Florida please advise so that the IME retention can be someone in that area. Alternatively, we may choose to retain a doctor for an IMR (independent medical record review) instead but have not made that decision. At this time I will not be paying for an FCE."

75. On June 30, 2021 attorney Hayleigh Lidbury with the law firm Montgomery Amatuzio Chase Bell Jones LLP, wrote to Plaintiff on behalf of Travelers and requested that Plaintiff execute yet another medical records release authorization.

76. When Ms. Lidbury on behalf of Travelers requested that Plaintiff execute a medical records release authorization, Travelers already had in its possession at least two other executed medical records release authorizations that it had required Plaintiff to execute. This request was another unnecessary procedural hurdle unreasonably demanded by Travelers.

77. Ms. Lidbury was at all times acting in the course and scope of her agency with Travelers.

78. Despite having previously provided two separate executed medical records release authorizations to Travelers, on July 13, 2021 Plaintiff provided the third executed medical records release authorization to Travelers.

79. On October 11, 2021 Plaintiff wrote to Mr. Burnham inquiring what was happening on her claim as it had been four months since Travelers had retained its attorneys and fifteen months since the collision.

80. Mr. Burnham responded on October 12, 2021 stating that "records have taken a lot longer since Covid likely due to staffing issues but I am not sure on that. Until we get the records for

8

the IME (independent medical exam) and likely SUO (statement under oath), I will be unable to complete my review and discuss an offer."

81. The email from Mr. Burnham on October 12, 2021 was the first time any mention was made for the purported need of a statement under oath.

82. When Mr. Burnham sent his October 12, 2021 email to Plaintiff, Travelers had been in possession of a valid medical records release authorization executed by Plaintiff for fourteen (14) months.

83. Upon information and belief, Travelers purported need for medical records, and especially those pre-dating the crash in order to perform an examination under the policy was not based upon any request or requirement of any consulted medical provider who was asked to perform the examination.

84. On November 8, 2021 Ms. Lidbury emailed Plaintiff and asked if she was still going back and forth between Chicago and Florida, and stated that she needed to know Plaintiff's schedule to get an IME date set.

85. Plaintiff responded to Ms. Lidbury on November 8, 2021 and informed Ms. Lidbury that she was currently in Venice, Florida with her mother, that she would be going back and forth frequently between Illinois and Florida, and that she expected to be in Florida in December and Illinois in January.

86. On November 19, 2021 Plaintiff followed up with Ms. Lidbury regarding her office's efforts to obtain records from her medical providers.

87. In her November 19, 2021 email Plaintiff explained multiple errors and oversights that Ms. Lidbury and her staff had made in attempting to order the medical records that resulted in them not timely obtaining the records that they were attempting to obtain.

88. In her November 19, 2021 email Plaintiff gave instructions to Ms. Lidbury and Mr. Burnham in what they needed to do to order and obtain her medical records from her medical providers.

89. On December 20, 2021 the paralegal for Ms. Lidbury, emailed Plaintiff and told her that they had obtained dates for an IME with a doctor in Joliet, Illinois in January.

90. On December 20, 2021 Plaintiff responded to Ms. Lidbury's paralegal and told her, "Unfortunately I need to be in Florida with my mother for a while longer. Not sure how long. Can you please set up the IME with a doctor here? Anywhere near Venice, Florida, zip code 34293."

9

91. On December 28, 2021 Ms. Lidbury's paralegal responded to Plaintiff's December 20, 2021 email and represented to Plaintiff that, "Unfortunately, per the policy we must base the IME off the residency of the claimant, therefore, the Chicago area."

92. Travelers representation that the examination was required to be based on the residency of the claimant per the policy was a false statement of a material fact made knowingly and/or recklessly by Travelers to its insured.

93. In reliance upon Travelers' misrepresentation about the policy terms, Plaintiff agreed to travel from Florida to Illinois in an effort to cooperate with Travelers' request for an IME and because she was told by Travelers that she was required to under the contract.

94. At her own expense and while she was staying in Florida to care for her sick elderly mother, Plaintiff traveled to Illinois from Florida to attend the IME on March 4, 2022.

95. At the March 4, 2022 IME, it was learned that Plaintiff's medical records that Travelers and Montgomery Amatuzio Chase Bell Jones LLP had obtained had not been made available to the IME doctor prior to his examination of Plaintiff.

96. Travelers' representation to Plaintiff that it must obtain all of her medical records before the IME could be conducted was not truthful as the IME was in fact conducted without the IME doctor having Plaintiff's medical records.

97. The subject Travelers insurance policy contains no specific requirements about where an IME must be conducted.

98. Travelers' December 28, 2021 representation to Plaintiff about the language of the policy was not truthful.

99. Travelers' December 28, 2021 representation to Plaintiff about the language of the policy was a misrepresentation of an existing material fact.

100. Pursuant to Colorado Rule of Professional Conduct 5.3, both Ms. Lidbury and Montgomery Amatuzio Chase Bell Jones LLP are responsible for the conduct of their paralegal, particularly including her misrepresentation about the contents of the subject insurance policy on December 28, 2021.

101. The conduct of Ms. Lidbury's paralegal in misrepresenting the terms of the subject insurance policy is imputed to Travelers.

102. On June 22, 2022 Plaintiff's counsel requested that Travelers produce all correspondence between Plaintiff and Travelers as well as all correspondence between Plaintiff and the law firm Montgomery Amaztuzio Chase Bell Jones LLP.

10

103. Montgomery Amatuzio Chase Bell Jones LLP produced, on behalf of Travelers, what they purported to be a complete set of the correspondence requested, however the set of correspondence produced by Montgomery Amatuzio Chase Bell Jones LLP did not contain Ms. Lidbury's paralegal's December 28, 2021 email misrepresenting the language of the policy to Plaintiff.

104. The conduct of Montgomery Amatuzio Chase Bell Jones LLP in concealing their December 28, 2021 email misrepresenting the language of the policy to Plaintiff from her counsel is imputed to Travelers.

105. On September 8, 2022 Plaintiff submitted a complaint to the Colorado Department of Insurance regarding Traveler's agent's conduct in fraudulently misrepresenting the terms of the subject insurance policy to Plaintiff.

106. Through his September 16, 2022 response to the Department of Insurance complaint, and at other times, Tom Crelley, a claims manager for Travelers, ratified the fraudulent conduct of its claims agent the Montgomery Amatuzio Chase Bell Jones LLP law firm in misrepresenting the terms of the subject insurance policy to Plaintiff and forcing her to travel from Florida to Illinois for the independent medical examination.

107. Throughout the claim process with Travelers, and despite Travelers having no less than three (3) executed medical records release authorizations from Plaintiff, Plaintiff continuously provided updates, medical records and medical bills, and access to her online portals, to Travelers about her injury and treatment status.

108. Travelers has issued no reservation of rights letter to Plaintiff or her counsel.

109. Travelers still has not paid Plaintiff what she is legally entitled to collect and owed under the policy.

110. The claim investigation performed by Ms. Lidbury and Montgomery Amatuzio Chase Bell Jones LLP was substandard and not based on all available information.

111. The claim investigation performed by Travelers was substandard and not based upon all available information.

112. Travelers breached its insurance contract by failing to diligently search for evidence which supported Plaintiff's claim.

113. Travelers breached its duties owed to Plaintiff including, without limitation, duties of loyalty, good faith, due care and candor, by engaging in the acts and omissions set forth in this Complaint.

114. At all relevant times, continuing to the present, Travelers and Montgomery Amatuzio Chase Bell Jones LLP have, without limitation violated Colorado law and standards, including without limitation, C.R.S. § 10-3-1104(1)(h) by:

    a. Failing to reasonably investigate Plaintiff's claim in good faith in a timely manner;

    b. Failing to reasonably evaluate Plaintiff's claim in good faith in a timely manner;

    c. Failing to reasonably respond to the inquiries of Plaintiff in good faith;

    d. Failing to reasonably consider all relevant evidence;

    e. Failing to reasonably consider Plaintiff's damages in such a manner as to construe ambiguities in favor of coverage, and find coverage where available;

    f. Failing to reasonably, timely and in good faith, compensate Plaintiff as required by the contract and law;

    g. Failing to reasonably provide underinsured motorist benefits which Plaintiff is owed in a timely manner;

    h. Refusing to reasonably communicate;

    i. Refusing to disclose relevant and material information;

    j. Failing to properly train its claim handlers, including but not limited to Ms. Lidbury, Ms. Garbowski, Mr. Burnham and Ms. Belletire; and

    k. Making material misrepresentations of fact regarding the terms of the subject insurance policy.

    l. Failing to adopt and implement reasonable standards for the prompt investigation of claims under its insurance policies.

115. Travelers and Montgomery Amatuzio Chase Bell Jones LLP's misrepresentation to Plaintiff that the policy required her to travel to Illinois for the IME constitutes an unfair and/or deceptive act in the business of insurance as defined by C.R.S. § 10-3-1104(1)(a)(I).

116. C.R.S. § 10-1-128 prohibits all persons engaged in insurance to refrain from any fraudulent insurance act.

117. C.R.S. § 10-1-128 prohibits anyone from misrepresenting or concealing material facts in an insurance claim.

118. Colorado Department of Insurance Regulation 3 CCR 702-6-5-01 defines "misrepresentation" as: "any oral or written communication or conduct, or combination of communication and conduct that is untrue and is intended to create a misleading impression in the mind of another," and "concealment" as "Concealment" means the "knowing concealment of a material fact by impeding the discovery of the material fact, by misrepresentation or by willful omission."

119. Travelers, through its investigators and claim handlers Montgomery Amatuzio Chase Bell Jones LLP and Mr. Burnham misrepresented and concealed material information as set forth above.

### FIRST CLAIM FOR RELIEF
**(Declaratory Judgment – Determination of UIM Benefits)**

120. Plaintiff incorporates the above and below paragraphs herein by reference.

121. At the time of the collision, Plaintiff was insured through a contract of insurance with Defendant Travelers.

122. The contract of insurance provides that Travelers will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured and caused by an accident.

123. Plaintiff asked Travelers for underinsured motorist benefits for losses sustained as a result of the July 31, 2020 motor vehicle collision.

124. Travelers has refused to make payment to plaintiff for benefits under her available underinsured motorist benefits.

125. Accordingly, pursuant to C.R.C.P. 57 and C.R.S. § 13-51-101 et. seq., Plaintiff seeks declaration of her rights and Travelers' obligations under the subject insurance contract and Colorado law, C.R.S. § 10-4-609, with respect to her claim for underinsured motorist insurance benefits, that Travelers owes such benefits, and the amounts of benefits owed under the policy.

### SECOND CLAIM FOR RELIEF
**(Breach of Contract)**

126. Plaintiff incorporates the above and below paragraphs herein by reference.

127. At the time of the collision, Plaintiff was insured through a contract of insurance with Defendant Travelers.

128. Plaintiff was a third party beneficiary to the contract of insurance between Travelers and Loree Rosenblum.

129. Specifically, at all times relevant, Plaintiff was insured by Defendant Travelers at the time and place of the subject collision pursuant to Policy No. 604880954-203-1, with UM/UIM limits of $250,000.00 per person.

130. Pursuant to Colorado law, the insurance contract with Defendant Travelers provides that Defendant Travelers shall pay sums that an insured person is legally entitled to recover in accordance with Colorado tort law as damages from the owner or operator of an uninsured/underinsured motor vehicle because of bodily injury sustained by the insured person.

131. Defendant Travelers owes Plaintiff a duty to pay benefits for which Plaintiff is eligible, as Plaintiff is a first-party insured.

132. Pursuant to the insurance contract, since no specific time of performance is mentioned, Travelers' performance was required within a reasonable time.

133. Pursuant to the insurance contract, since Travelers has complete discretion over the exercise of its terms, it is required to exercise that discretion reasonably.

134. Defendant Travelers breached its contract by, without limitation, failing to pay Plaintiff the benefits for which she is eligible, failing to timely perform its obligations under the contract, failing to properly exercise discretion in the performance of the contract and refusing to make a payment of benefits provided for in the contract

135. Defendant Travelers has breached its contractual duties of good faith and fair dealing by acting inconsistently with the agreed common purpose of the contract, in violation of the reasonable expectations of the Plaintiff, by acting unfairly, and by misusing its discretion, acting to deprive Plaintiff of the benefits of the contract, and by acting dishonestly, unreasonably, intentionally and negligently to do so, as well as ensuring its non-performance by incompetently, negligently, recklessly and intentionally utilizing untrained, poorly trained, and incompetent personnel to assist it to perform the contract.

136. As a direct consequence of Defendant Travelers' breach of both express and implied contractual duties owed to its insured, Plaintiff suffered injuries, damages and losses.

**THIRD CLAIM FOR RELIEF**
**(Willful and Wanton Breach of Contract)**

137.    Plaintiff incorporates the above and below paragraphs herein by reference.

138.    Traveler's breach of contract was willful and wanton.

139.    As a direct consequence of Traveler's willful and wanton breach of contractual duties to its insured, Plaintiff suffered injuries, damages, and losses.

## FOURTH CLAIM FOR RELIEF
### (Breach of the tort duty of Good Faith and Fair Dealing)

140.    Plaintiff incorporates the above and below paragraphs herein by reference.

141.    Defendant owed Plaintiff a duty to act in good faith in reviewing, investigating, evaluating, adjusting and paying her claim.

142.    As set forth above, Defendant has breached its duty of good faith and fair dealing by, in part and without limitation:

    a. Failing to reasonably investigate Plaintiff's claim in good faith in a timely manner;

    b. Failing to reasonably evaluate Plaintiff's claim in good faith in a timely manner;

    c. Failing to reasonably respond to the inquiries of Plaintiff in good faith;

    d. Failing to reasonably consider all relevant evidence;

    e. Failing to reasonably consider Plaintiff's damages in such a manner as to construe ambiguities in favor of coverage, and find coverage where available;

    f. Failing to reasonably, timely and in good faith, compensate Plaintiff as required by the contract and law;

    g. Failing to reasonably provide underinsured motorist benefits which Plaintiff is owed in a timely manner;

    h. Refusing to reasonably communicate;

    i. Refusing to disclose relevant and material information;

    j. Failing to properly train its claim handlers, including but not limited to Ms. Lidbury, Ms. Garbowski, Mr. Burnham and Ms. Belletire;

       k. Making material misrepresentations of fact regarding the terms of the subject insurance policy;

       l. concealing material facts which in equity and good conscience required it to disclose to Plaintiff, including but not limited to, that the policy did not require her to travel from Florida to Illinois to attend the IME at her own expense and that the doctor did not require to have Plaintiff's medical records before he could conduct the IME.

       m. Failing to adopt and implement reasonable standards for the prompt investigation of claims under its insurance policies.

143. Defendant's conduct was unreasonable.

144. Defendant knew its conduct, as set forth above, was unreasonable.

145. Defendant recklessly disregarded the fact that its conduct, as set forth above, was unreasonable.

146. Under C.R.S. § 10-3-1104(1)(h), Defendant willfully acted unreasonably in including, but not limited to, the following ways:

    a. Misrepresenting pertinent facts and insurance policy provisions relating to coverages at issue;

    b. Failing to adopt and implement reasonable standards for the prompt resolution of claims;

    c. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

    d. Failing to promptly settle claims, where liability has become reasonably clear;

    e. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of compromise settlement;

    f. Compelling its insured to institute litigation to recover amounts due under an insurance policy;

    g. Delaying the investigation of a claim by requiring the claimant to submit duplicate information.

      h.      Failing to adopt and implement reasonable standards for the prompt investigation of claims under its insurance policies.

147. Defendant knew its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable.

148. As a direct consequence of Defendant's breaches of its duties to its insured, Plaintiff has suffered injuries, damages, and losses.

## FIFTH CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1116(1))

149. Plaintiff incorporates the above and below paragraphs herein by reference.

150. Defendant has and continues to delay and deny Plaintiff's claim without a reasonable basis for its action.

151. Defendant's continued denial and/or delay of payment of benefits to Plaintiff under the insurance contract is contrary to Colorado law.

152. As set forth in C.R.S. § 10-3-1116(1), Plaintiff is entitled to recover reasonable attorney's fees, court costs, and two times the covered benefit (in addition to the benefit itself).

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court enter judgment in her favor and against Defendant Travelers:

    A.    For compensatory damages in an amount to be proved at trial as just and adequate compensation for Plaintiff's injuries, damages, and losses, both economic and non-economic incurred at the present time and which will probably continue to accrue in the future;

    B.    For both pre and post judgment interest as allowed by law;

    C.    For Plaintiff's costs of suit, including expert witness fees, as allowed by law; and

    D.    For further relief as this Court deems proper.

## JURY DEMAND

Plaintiff demands a trial to a jury of six on all issues.

Dated this 9th day of November, 2022.

                                    Respectfully submitted,

                                    ***Original signature on file at the office of***
                                    ***The Paul Wilkinson Law Firm, LLC***

                                 By: /s/ *Jonathan D. Stine, Esq.*
                                      Jonathan D. Stine,  #38925
                                      *Attorney for Plaintiff*

Plaintiff's Address:

1341 Lemon Bay Dr.
Venice, Florida, 34293