# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03287-RM-SBP

LJUBINKA STANISAVLJEVIC,

      Plaintiff,

v.

THE STANDARD FIRE INSURANCE COMPANY, d/b/a TRAVELERS INSURANCE
COMPANY,

      Defendant.

---

## ORDER

---

**Susan Prose, United States Magistrate Judge**

      This matter is before the court on the motion of non-party Montgomery Amatuzio Chase

Bell Jones, LLP ("MAC-Legal") to quash Plaintiff Ljubinka Stanisavljevic's subpoena for

documents, ECF No. 36 ("Motion" or "Motion to Quash"). Defendant The Standard Fire

Insurance Company ("Standard Fire") has joined the Motion. ECF No. 87. The court has

carefully reviewed the Motion to Quash, all related briefing, the entire case file, and the

applicable law, and twice heard oral argument on the matter. The court now **GRANTS** the

Motion to Quash. Plaintiff's separate request to depose MAC-Legal personnel is **DENIED**. The

court finally addresses Plaintiff's request for certain training materials, which is **DENIED AS

MOOT**.

## I.      MOTION TO QUASH

### A.      Background

***Procedural history.*** Although fundamentally a simple car accident case, this litigation

has been marked by an exceptionally contentious and convoluted procedural history. The court

begins by chronicling the events pertinent to its evaluation of the Motion.

The litigation officially commenced on November 9, 2022, when Plaintiff filed the case

in Denver District Court, prompting Standard Fire to remove the case to this court. ECF No. 1 at

1-2. In the operative complaint here, Plaintiff brings claims for underinsured motorist ("UIM")

benefits, breach of contract, willful and wanton breach of contract, breach of the duty of good

faith and fair dealing, and undue delay or denial of insurance benefits in violation of Colo. Rev.

Stat. § 10-3-1116(1). Amended Complaint, ECF No. 45. Plaintiff alleges that, on July 31, 2020,

she sustained severe injuries when the car in which she was a passenger was struck by another

vehicle. *Id.* ¶¶ 5-6. Plaintiff settled with the insurance carrier of the person who caused the

accident for that individual's policy limit of $25,000. *Id.* ¶ 44. Plaintiff then sought to obtain

$250,000 in UIM benefits under a Standard Fire policy on the vehicle in which Plaintiff was a

passenger. *Id.* ¶¶ 12-13, 56. To date, Standard Fire has not paid the full policy limit that Plaintiff

claims "she is legally entitled to collect and [is] owed under the policy." *Id.* ¶¶ 52, 109.

Plaintiff alleges that, on June 21, 2021, Standard Fire's in-house claim adjuster (then

James Burnham) informed Plaintiff that Standard Fire had retained MAC-Legal "to assist its

handling of her claim and specifically 'in making sure all needed records, bills, etc. are gathered

for the IME and needs of the evaluation.'" *Id.* ¶ 71.[1] Plaintiff dubs MAC-Legal a "claim

---

[1] Mr. Burnham was the second adjuster assigned to Plaintiff's claim; the first was Julie Belletire.

handler," *id.* ¶ 119, and, in briefing on the present discovery disputes, asserts that the law firm's work in in its alleged role of claim handler was deficient in that (1) MAC-Legal did not pursue scheduling Plaintiff for an independent medical examination ("IME") for six months; (2) Marta Garbowski, a paralegal at MAC-Legal, falsely told Plaintiff that the policy required her to travel from Florida to Chicago at her expense for the IME; and (3) Standard Fire and MAC-Legal "fraudulently" reduced Plaintiff's medical expenses for a pre-existing condition (multiple sclerosis) that they supposedly knew she did not have.

On March 24, 2023, Plaintiff issued a request for production ("RFP 2")[2] to Standard Fire, which requested all documents concerning Standard Fire's "investigation, evaluation or handling of Plaintiff's claim for underinsured motorist benefits[.]" Motion at 2. In the Scheduling Order,

---

Plaintiff has deposed Ms. Belletire. ECF No. 95 (Oct. 18, 2023 Hrg. Tr.) at 29:6-8. But according to counsel for Standard Fire, Mr. Burnham "is the one that did the majority of the worksheets [evaluating Plaintiff's claim]. He's the one that was corresponding with MAC Legal. He's the one that made the settlement offer." *Id.* at 29:8-12.

[2] RFP 2 sought "a complete, unredacted copy of all DOCUMENTS in the custody or possession of Defendant concerning its investigation, evaluation or handling of Plaintiff's claim for underinsured motorist benefits, including but not limited to the complete Defendant claim file, any written or electronic logs, memorandum, file notes, email, reports (whether internal or from an external source) spreadsheets, or other materials related to Defendant's investigation and evaluation of Plaintiff's claim. This request is intended to include any materials generated by or in the custody of or available to any Defendant agent or employee, including any internal legal services department, whether before or after the anticipation of litigation. This request is intended to include, but not be limited to, any and all DOCUMENTS or information required to by maintained by Defendant pursuant to Colorado Division of Insurance Regulation 3 CCR 702-1:1-1-7(5)(E). To the extent that Defendant asserts any privilege over such materials, please produce a privilege log that complies with C.R.C.P. 26(b)(5), in that it identifies the nature of the DOCUMENT, the individual who generated the DOCUMENT, the recipient of the DOCUMENT, the date the DOCUMENT was generated, and the specific privilege applicable to the DOCUMENT."

Plaintiff stated that she "anticipates taking depositions of all claim handlers," including, by her definition, personnel at MAC-Legal. April 12, 2023 Scheduling Order, ECF No. 30 at 11, 17. At the Scheduling Conference, Plaintiff raised the issue of deposing Standard Fire's counsel with Judge Neureiter, the United States Magistrate Judge then assigned to the case. Judge Neureiter contemplated that Plaintiff would tee up the issue by means of a subpoena and a motion to quash, which is now before this court. *See* ECF No. 38 (Apr. 12, 2023 Hrg. Tr.) at 16:4-22.

After the Scheduling Conference, MAC-Legal and counsel for Plaintiff conferred about RFP 2, but MAC-Legal did not agree that its own files were subject to production. Plaintiff then issued the subpoena (ECF No. 36-1 ("Subpoena")) that is the subject of the Motion to Quash, which demands multiple categories of documents from MAC-Legal:

1.    Produce all **DOCUMENTS** and **COMMUNICATIONS** related to the **CLAIM**, including, but not limited to, investigation, setting up IMEs, gathering and summarizing information, communications and valuation of the claim, which are the ordinary business activities of the insurance company typically handled by an adjuster or investigator.

2.    Produce all **DOCUMENTS** related to your billings, including all itemized billings or invoices submitted to Standard Fire, detailing what work was performed, who did such work, and the time and expense associated with such work.

3.    Produce all **DOCUMENTS** and **COMMUNICATIONS** evidencing the scope of the assignment The Standard Fire Insurance Company (Travelers) retained Montgomery Amatuzio Chase Bell Jones, LLP to perform related to the **CLAIM**.

4.    Produce all **DOCUMENTS** and **COMMUNICATIONS** evidencing all of the standards for the prompt investigation of claims that The Standard Fire Insurance Company (Travelers) has adopted as required by the Unfair Claims Settlement Practices Act, 10-3-1104(h)(III), and was provided Montgomery Amatuzio Chase Bell Jones, LLP for it to use for its work in relation to the **CLAIM** from the time of the inception of the claim until November 8, 2022 (the day before suit was filed.)

Subpoena at 4-5.[3] In response, MAC-Legal filed the Motion to Quash.

On August 17, 2023, this court held a discovery conference. Plaintiff requested leave to file a supplemental brief and for the court to conduct a further conference. ECF No. 53 (minutes). Plaintiff proposed that the supplemental brief address the Motion to Quash, as well as issues concerning Standard Fire's responses to discovery and Plaintiff's request to depose Ms. Lidbury and Ms. Garbowski. The court granted that request and set a briefing schedule. Plaintiff filed a supplemental brief on September 1, 2023. ECF No. 54. On September 7 and 8, 2023, MAC-Legal attorneys filed motions to withdraw as counsel for Standard Fire, ECF Nos. 67, 68, 71, which the court granted. ECF No. 75. Standard Fire, through its new counsel, Spencer Fane LLP, filed a response to Plaintiff's supplemental brief. ECF No. 84. The court heard argument on all issues raised in the briefing on October 18, 2023. ECF No. 91 (minutes); ECF No. 95 (transcript). At the parties' request, the court conducted a second discovery conference on December 14, 2023. ECF No. 98 (minutes).[4]

**_MAC-Legal documents produced to date._** As a necessary prelude to its analysis of the propriety of the Subpoena, the court identifies the documents that have been produced to

---

[3] The Subpoena does not request depositions of MAC-Legal personnel.

[4] At the December 14, 2023 conference, this court contemplated issuing a single, omnibus ruling on all discovery disputes raised to that date. However, given the number of issues the parties have presented—including a clawback issue concerning one of the exhibits that Plaintiff attached to her December discovery statement—the court finds that attempting to address all current discovery disputes would inordinately delay this ruling and would serve no useful purpose, in light of the parties' ongoing disputes. *See, e.g.*, Standard Fire Insurance Company's Motion to Compel Rule 35 Examination of Plaintiff, ECF No. 99. The court will address those issues by separate order.

Plaintiff in this case.

In the Motion to Quash, MAC-Legal represents that Standard Fire (who was then MAC-Legal's client) has produced the following documents to Plaintiff:

- Claim notes
- Bodily injury evaluations
- Communications between Standard Fire and MAC-Legal
- Communications between Standard Fire and Plaintiff
- Communications between MAC-Legal and Plaintiff or her counsel

Motion at 4. MAC-Legal states that these productions encompassed "virtually all communications in the claim file between [Standard Fire] and MAC-Legal," which Standard Fire confirmed by a comprehensive internal email search. *Id.* at 7. In later supplemental briefing, Spencer Fane, Standard Fire's new counsel, reiterated that point and further specified the scope of documents that have been produced to Plaintiff in discovery:

> Standard Fire has produced its claim file materials for Plaintiff's UIM claim. Specifically, Standard Fire has produced ***over 5,000 pages*** of claim file and other materials for this lawsuit, including, the subject policy; traffic accident report; Plaintiff's medical records; Plaintiff's billing records; property damage photos and documentation; income and wage information as received; Plaintiff's social security disability application; documents and communications received from Plaintiff; Tyler Stripp's[5] insurance information; communications and documents on the settlement with Progressive; non-privileged portions of claim notes; communications between Standard Fire and Plaintiff; communications between MAC Legal and Plaintiff; communications with Plaintiff's counsel; medical records and billing requests; medical billing summaries and evaluations; communications between Standard Fire and IME provider; uninsured motorist worksheets.
>
> . . .
>
> But there is even more. Standard Fire has also produced non-privileged communications between it and MAC Legal.

---

[5] Mr. Stripp was the driver of the vehicle that struck the car in which Plaintiff was a passenger.

ECF No. 84 at 2-3 (citing ECF No. 84-1, Standard Fire's Third Supplemental F.R.C.P. 26(a)(1) Disclosures, at 4-6) (underlined emphasis added by the court).

While the court does not have access to the entire claim file, a 21-page excerpt submitted by Standard Fire shows that the materials produced to Plaintiff to date include numerous unredacted email communications between Mr. Burnham, the Standard Fire claim adjuster, and Ms. Lidbury and Ms. Garbowski at MAC-Legal, prior to the commencement of this litigation. *See, e.g.*, ECF No. 84-2 at 11 (5/31/2022 and 6/8/2022 emails); *id.* at 12 (5/24/2022 email); *id.* at 15 (3/27/2023 email); *id.* at 16 (6/15/2022 and 7/28/2022 emails); *id.* at 17 (7/28/2022 email); *id.* at 18 (8/17/2022 and 8/24/2022 emails); *id.* at 19 (8/25/2022 email). In addition, the excerpt reviewed by the court shows that Standard Fire has produced unredacted notes reflecting Mr. Burnham's discussions with Ms. Lidbury about Plaintiff's claim. *Id.* at 9, 19 (2/14/2022 and 8/25/2022 case notes describing review of case with Lidbury).

Plaintiff does not appear to take issue with Standard Fire's production of documents reflecting pre-litigation communications between itself and MAC-Legal, nor with the handful of such documents (out of Standard Fire's five-thousand-page production) that have been withheld as privileged. *See* Standard Fire's Third Supplemental Privilege Log, ECF No. 54-5 at 12-14 (logging email chains dated 6/30/2021 and 9/16/2022). And Standard Fire has now unredacted and produced to Plaintiff one of only two email chains referenced in the privilege log. ECF No. 84 at 4 (stating, in its supplemental briefing on the Motion, that Standard Fire "has reviewed and considered Plaintiff's challenges to the identified redactions in her supplemental response and decided to un-redact and produce the information" in ECF No. 54-5).

In short, the record confirms Standard Fire's representation that is has produced to

Plaintiff substantially all pre-litigation communications between itself and MAC-Legal, and that the de minimis number of communications it has withheld are properly accounted for on a privilege log and not subject to dispute. While Standard Fire contends that MAC-Legal never took on the role of "claim handler" in this matter, *see* ECF No. 84 at 3-6, it nevertheless has produced its pre-litigation communications with MAC-Legal in tacit acknowledgment of the rule that "claims handling functions (such as investigation, gathering and summarizing information, and valuation of the claim) . . . are not entitled to attorney client privilege." *Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL 6119962, at *7 (D. Colo. Oct. 15, 2020); *see also* Motion at 7 ("Standard Fire produced virtually all communications in the claim file between it and MAC-Legal. *In further attempts to comply with Menapace*, Standard Fire has incurred the expense of undergoing a search via its internal IT department in an effort to verify that all communications between it and MAC-Legal that do not relate to the provision of legal advice have been produced.") (emphasis added).

The dispute before the court thus focuses on Plaintiff's purported entitlement to MAC-Legal's *internal* files. Plaintiff argues that "Standard Fire must be compelled to produce its entirety of written materials related to its claim handling, no matter what *human*"—including any "human" at MAC-Legal—"performed the task." ECF No. 54 at 2 (emphasis added). This, then, is the primary issue for the court to untangle.

### B.    Analysis

The legal framework guiding the court's analysis begins with Federal Rule of Civil Procedure 45, which directs that this court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . .

subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii), (iv). The court also takes into

account that "a subpoena is bound by the same [Federal Rule of Civil Procedure 26(b)] standards

that govern discovery between the parties, and, to be enforceable, a subpoena must seek

information that is relevant to a party's claims or defenses and proportional to the needs of the

case." *Oransky v. Martin Marietta Materials, Inc.*, No. 18-cv-00266-MSK-NRN, 2018 WL

11514384, at *1 (D. Colo. Sept. 7, 2018); *see also, e.g.*, *GSL Grp. Inc. v. Travelers Indem. Co.*,

No. 18-cv-00746-MSK-SKC, 2020 WL 12813087, at *2 (D. Colo. May 27, 2020) ("[T]he scope

of discovery under a subpoena is the same as the scope of discovery under Rule 26(b).") (citing

9A Wright & Miller, *Federal Practice and Procedure* § 2452 (3d ed. 2008)).

   "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case, considering the importance of

the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.

Civ. P. 26(b)(1). And as also pertinent here:

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
>
>   (i) the discovery sought is unreasonably cumulative or duplicative, or can be
>   obtained from some other source that is more convenient, less burdensome, or
>   less expensive;
>
>   (ii) the party seeking discovery has had ample opportunity to obtain the
>   information by discovery in the action; or
>
>   (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(b)(2)(C).

With these legal principles in mind, the court turns to the Motion to Quash.

### 1.     MAC-Legal's Internal Documents

MAC-Legal, along with Standard Fire, argues that the Subpoena for MAC-Legal's internal documents must be quashed because those documents are privileged and, further, that the production of those documents would be cumulative and duplicative and impose an undue burden on MAC-Legal. Motion at 9, 10-11; ECF No. 84 at 7-8. The court agrees that the Subpoena for these internal documents must be quashed.

***Privilege assertion.*** To begin with the privilege question, the court cannot find, on the current record, that MAC-Legal's internal pre-litigation documents (or some portion of them) are privileged. Having produced nearly all of its pre-litigation communications with Standard Fire (save for a few emails listed on a privilege log), MAC-Legal has acknowledged that it performed at least some non-privileged investigative work before this litigation commenced. *See Menapace*, 2020 WL 6119962, at *5 ("if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the [attorney-client] privilege . . . nor the work product privilege protects communications from a lawyer to an insurance carrier") (citation omitted).

On the record now before the court, MAC-Legal has not made a showing that its internal pre-litigation documentation is protected work product prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . ."); *Menapace*, 2020 WL 6119962, at *12-13 (under Rule 26(b), the obligation is on "the party seeking protection to show that the requested materials were prepared in

anticipation of litigation or for trial by or for the party or the party's attorney"). Typically, that showing is "made by affidavit, deposition testimony, answers to interrogatories, and the like." *Id.* Neither MAC-Legal nor Standard Fire has presented such information here, and neither has sought to affirmatively identify the point in time when it was foreseen that Plaintiff's claim would not be resolved short of litigation.[6] MAC-Legal also has not sought to explain how communications solely within the law firm, or documents that were not shared with its client, would come within the scope of the attorney-client privilege. *See, e.g.*, *Martinez v. Nationwide Affinity Ins. Co. of Am.*, No. 21-cv-02495-CNS-SKC, 2023 WL 4706752, at *1 (D. Colo. July 24, 2003) ("In Colorado, the attorney-client privilege is 'established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters *communicated by or*

---

[6] Based on its own review of the record, the court discerns that Plaintiff had retained counsel by May 23, 2023, ECF No. 84-2 at 13, but litigation is not reasonably anticipated merely because an insured retains counsel to assist with their claim for coverage. *See, e.g.*, *Menapace*, 2020 WL 6119962, at *16 (finding that "[i]t is neither unusual nor indicative of an intent to pursue litigation that Plaintiff retained counsel to handle his insurance claims"); *Olsen v. Owners Ins. Co.*, No. 18-cv-1665-RM-NYW, 2019 WL 2502201, at *8 (D. Colo. June 17, 2019) (rejecting assertion that litigation was reasonably anticipated because plaintiff retained counsel who "boast[ed] an active practice in bad faith breach of insurance contract cases"). The record also reflects that Mr. Burnham referenced the possibility of litigation on at least one occasion, and that Plaintiff filed a complaint with the Colorado Department of Insurance on September 8, 2022. *See* ECF No. 84-2 at 17 (7/28/2022 email from Burnham to Lidbury); Amended Complaint ¶ 105. But absent some explanation from MAC-Legal or Standard Fire, the court can draw no conclusions as to when litigation was actually anticipated. *See Menapace*, 2020 WL 6119962, at *15 (claim handler's comments regarding the risk if claim proceeded to litigation showed only that he was "consider[ing the insurer's] potential litigation exposure," not that he "actually anticipat[ed] that Plaintiff would file a lawsuit in the foreseeable future"); *S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2007 WL 219966, at *6 (D. Colo. Jan. 25, 2007) (an investigation by an agency "presents more than a remote prospect of future litigation").

*to the client*[.]'") (citation omitted) (emphasis added).[7]

**Discovery parameters of Rule 26(b).** However, the lack of specific information on the privilege point does not dispose of the matter. The court finds that the Subpoena for MAC-Legal's internal pre-litigation documents should be quashed on the alternative ground that such information would be unreasonably cumulative and duplicative. *See* Rule 26(b)(2)(C)(i) (court may limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, No. 17-cv-00803-CMA-NYW, 2017 WL 4278494, at *6 (D. Colo. Sept. 27, 2017) ("Courts may quash a subpoena when the 'discovery sought is unreasonably cumulative or duplicative.'") (quoting *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 12-cv-7493, 2012 WL 6568226, at *2-3 (N.D. Ill. Dec. 14, 2012)).

The starting point for the court's analysis of the cumulative-and-duplicative question is its recognition that Standard Fire has produced *thousands* of pages of documents to Plaintiff in this case—including, significantly, all pre-litigation communications between Standard Fire and MAC-Legal concerning Plaintiff's claim, save for a few emails withheld on the basis of attorney-client privilege. Even the small excerpt of the document production before this court shows that

---

[7] The court recognizes that the internal documents might nonetheless contain or reflect (within an email chain, for instance) a communication with the client. *See Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, No. 20-cv-02352-WJM-SKC, 2023 WL 5042922, at *5 (D. Colo. Aug. 8, 2023) (attorney-client privilege applies to internal client communications "which either share or discuss legal advice which [clients] are attempting to implement, or which include or culminate in a request for legal advice"). But MAC-Legal has not suggested that its internal pre-litigation documents encompass such communications, and the extensive production of its external communications with Standard Fire suggests that its internal documents are likely to be duplicative of the communications it has already produced.

the documents reveal myriad details concerning the manner in which Plaintiff's claim was handled, including information about the scheduling and location of the pre-litigation IME that is integral to Plaintiff's allegations of bad faith and undue delay. To take just one specific example, those documents show that Mr. Burnham, the Standard Fire adjuster handling Plaintiff's claim, has specific knowledge concerning the timing of the IME. As Mr. Burnham told Plaintiff,

> *the timing of the IME will be an issue* and your requests for an IME in Chicago in the timeframe that you suggest will not be likely as we will make sure that we have all imaging, prior imaging, prior records and current records that are needed to have the IME doctor complete the review. I anticipate that it will take some time to make sure all the medical records are available to the IME doctor and do not suggest that you delay whatever personal plans you have. *If you move to Florida please advise so that the IME retention can be someone in that area.* Alternately, we may choose to retain a doctor for an IMR (independent medical record review) instead but have not made that decision.

ECF No. 84-2 at 6 (6/21/2021 Burnham email to Plaintiff) (further explaining that MAC-Legal "was retained to assist with getting the necessary records, priors, imaging, etc. to provide the medical expert for review, and that the firm will "assist in outlining the missing records and working with you to get the needed medical authorization and provider list to order those records") (emphasis added).

Considering the voluminous documentation that has been produced to Plaintiff, as well as her ability to depose Mr. Burnham to nail down the information on which her allegations of bad faith rest—including his explanation of why "the timing of the IME will be an issue" and how he viewed the documents in Standard Fire's possession indicating that Plaintiff has been treated for multiple sclerosis, a disease she now claims not to have, *id.* at 1, 18—any information that could be gleaned from probing MAC-Legal's internal pre-litigation files would be needlessly

cumulative and duplicative. Mr. Burnham is well-positioned to testify about the relevant details concerning the timing and reasoning underlying Standard Fire's evaluation of Plaintiff's claims. Put simply, Plaintiff can obtain (and has obtained) substantially the same information from other sources that are "more convenient, less burdensome, or less expensive." *See* Fed. R. Civ. P. Rule 26(b)(2)(C)(i). And for the same reasons, Plaintiff's demand for internal MAC-Legal documents is disproportional to the needs of this case.[8]

In making these findings, the court notes that it has located no decision in a similar context in which a court has taken the extraordinary step of approving a review of a law firm's internal documents, and Plaintiff points to no such authority. *See, e.g.*, *Menapace*, 2020 WL at *19 (ordering insurer to produce unredacted certain documents from its files); *Ivan v. AIG Prop. Cas. Co.*, No. 17-cv-01906-PAB-MEH, 2018 WL 11182728, at *2-3 (D. Colo. Feb. 13, 2018) (ordering insurer to redact portions of its claims notes, including "a detailed factual summary of . . . medical records" provided by the attorney to insurer); *Colorado Mills, LLC v. Phila. Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at *8 (D. Colo. Apr. 2, 2013) (directing insurer to produce its claim investigation file and certain communications with its counsel). The court respectfully declines to give its imprimatur to an unnecessary intrusion into a law firm's internal files under the circumstances present here.

---

[8] MAC-Legal also argues that complying with the Subpoena would pose an undue burden because it has undergone "two large technological transitions in the last six (6) months," and it therefore would be required to "hire an outside IT firm to audit the old and new systems to ensure compliance with Plaintiff's requests" at a cost ranging between three thousand and over nine thousand dollars. Motion at 10-11. Having found that MAC-Legal is not required to undertake this search, the court does not opine on whether the circumstances MAC-Legal describes would constitute an undue burden.

***Plaintiff's remaining arguments.*** Plaintiff tries to get at MAC-Legal's internal documents by several other paths. These arguments do not alter the court's decision that the Subpoena for these documents must be quashed.

First, the court finds that Colorado Division of Insurance Regulation 702 does not apply here and does not compel MAC-Legal to makes its internal files available to Plaintiff. *See* ECF No. 54 at 4. Plaintiff's argument hinges on this provision of Regulation 702:

> If an entity or person, as its regular business practice, places the responsibility for handling certain types of claims upon another entity's personnel other than its own claims personnel, the entity or person need not duplicate its records for maintenance by claims personnel. These claims records shall be maintained as part of the records of the entity's or person's operations and shall be readily available.

*Id.* (quoting C.C.R. § 702-1-1-7(5)(E)(4)). But Plaintiff has made no showing that Regulation 702 applies to a law firm like MAC-Legal, and this court has found no case in which a court has relied on that regulation to compel a law firm to produce the types of internal documents that Plaintiff seeks in the Subpoena. Neither has Plaintiff presented evidence that would allow this court to conclude that Standard Fire, as part of "regular business practice," has "place[d] the responsibility for handling certain types of claims" on MAC-Legal. The court is unpersuaded by the three letters Plaintiff has submitted as support for this argument, one of which relates to the case at hand. *See* ECF No. 54-7. This slim evidentiary showing does not allow this court to find that Standard Fire—an insurer with a national presence—has relegated claims handling responsibilities to MAC-Legal in Denver, and the excerpt from the claim file in the instant case further belies that proposition. *See generally* ECF No. 84-2 (claim file documentation emphasizing Burnham's responsibility as adjuster for Plaintiff's claim).

The court further rejects Plaintiff's argument that there is evidence of conduct by

Standard Fire that could be construed as "criminal" or "fraudulent" in the record here. *See* ECF No. 54 at 11; *see also Plaza Ins. Co. v. Lester*, No. 14-cv-01162-LTB-CBS, 2015 WL 3528336, at *7 (D. Colo. June 4, 2015) ("The attorney-client privilege and the protections afforded by Rule 26(b)(3) are vitiated by the crime-fraud exception when the communications between a client and attorney and the efforts of the attorney are for the purpose of furthering a crime or a fraud.") (citation omitted). Plaintiff invokes the "crime fraud exception" based on (1) the "reduction of [Plaintiff's] medical expenses" due to a "non-existent prior medical condition," (2) "misrepresenting that the policy required [Plaintiff] to fly to Chicago at her own expense," and (3) "setting up the IME with a doctor in Chicago *so as to set up the claim for secretly anticipated litigation*" against Plaintiff." ECF No. 54 at 10-11 (emphasis in original). The court perceives no evidence of a "fraud" or "crime" in these allegations, or in the record more broadly, nor is there any other evidence before the court "to support a good faith belief by a reasonable person" that Standard Fire "fraudulently misrepresented or concealed material information from [Plaintiff] in an effort to bar, or substantially constrain, any recovery of UIM benefits." *See Lester*, 2015 WL 3528336, at *16 (finding evidence that the insurer "and its counsel knowingly withheld information that was critical to [the insured's] decision-making on how best to preserve a future UIM claim that everyone agreed was meritorious").

Take for example the available evidence on the scheduling of the IME, which shows that at the time Standard Fire was trying to schedule the IME, Plaintiff was traveling back and forth between her home in Chicago and Florida, where her ill mother resided. ECF No. 64-11[9]

---

[9] ECF No. 64 is Standard Fire's response to Plaintiff's motion to amend her complaint to assert claims for punitive damages. The court takes notice of this filing in evaluating the alleged

(6/21/2021 email from Plaintiff to Burnham, stating that Plaintiff had told Burnham that she would "be in Chicago for a limited time before I needed to go back to Florida to with my ailing mother . . . I told you I want to go for the 'independent medical exam' ASAP WHILE IM HERE"). As Mr. Burnham informed Plaintiff, "your requests for an IME in Chicago in the timeframe that you suggest will not be likely as we will make sure that we have all imaging, prior imaging, prior records and current records that are needed to have the IME doctor complete the review." ECF No. 84 at 6 (6/21/2021 Burnham email to Plaintiff) (further requesting that Plaintiff advise Burnham if she moves to Florida "so that the IME retention can be someone in that area"). About a week later, Ms. Lidbury emailed Mr. Burnham and informed him that she had spoken with Plaintiff the day before: "I asked about her plans for moving to Florida. She clarified that she is not actually moving there, but will be spending a few weeks at a time there to assist her mother. I think we can probably keep the IME in Chicago, if you prefer and schedule it around when she is traveling." ECF No. 64-12 (6/30/2021 email from Lidbury to Burnham).

Nothing in these communications evinces an effort by Standard Fire to fraudulently misrepresent or conceal material information from Plaintiff in order to bar or constrain her from recovering UIM benefits. Nor does any other evidence before the court. At best, Plaintiff has made but a pro forma "invocation of the fraud exception [that] will not justify a 'groundless fishing expedition' in which the court acts as an 'unwitting (and perhaps unwilling) agent.'" *7 (citation omitted). And the court finds no justification to undertake an in camera review of internal MAC-Legal documents based on an unsubstantiated invocation of the exception. *Id.* (unsubstantiated assertion of the crime-fraud exception "should not obligate the court to review

_____

applicability of the crime-fraud exception.

*in camera* potentially voluminous records").

In sum, the Subpoena for MAC-Legal's internal communications is quashed, and those documents are not required to be produced.

### 2. MAC-Legal Invoices

The remaining documentary demand under the Subpoena is for MAC-Legal's invoices to Standard Fire for its pre-litigation work on Plaintiff's claim. As with MAC-Legal's internal communications, the court finds that the production of these billing records would be unnecessarily cumulative and duplicative and disproportional to the needs of this case. Plaintiff has received the near-total universe of pre-litigation communications between MAC-Legal and Standard Fire (with just a handful of such communications withheld as privileged), and she has had an opportunity to depose Mr. Burnham, who is in a position to further explain what tasks were undertaken by MAC-Legal, when, and for what purpose. Plaintiff therefore has no need for billing records that mirror the work reflected in those communications and that could be explained by Mr. Burnham.

The court therefore declines to impose on Standard Fire the undue burden of retrieving and culling potentially voluminous billing records for privileged communications. *Menapace*, 2020 WL 6119962, at *1 n.1 (recognizing that attorney billing records are not privileged "unless specific entries contain privileged communications") (citing *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 684 (D. Colo. 2008)). The court grants the Motion to Quash this remaining aspect of the Subpoena.

### 3. Depositions of MAC-Legal Personnel

While the Subpoena does not seek depositions of Ms. Lidbury and Ms. Garbowski,

18

Plaintiff made that demand in her supplemental briefing. *See* ECF No. 54 at 2. To the extent

Plaintiff intends to pursue those depositions,[10] the court denies that request.

Allowing a party to depose opposing counsel is an extreme measure which "disrupts the

adversarial system and lowers the standards of the profession" and "detracts from the quality of

client representation." *Boughton v. Cotter Corp.*, 65 F.3d 823, 829 (10th Cir. 1995) (quotation

omitted). "Counsel should be free to devote his or her time and efforts to preparing the client's

case without fear of being interrogated by his or her opponent." *Id.* Accordingly, a party may not

depose opposing counsel unless it has made a showing that: "(1) no other means exist to obtain

the information than to depose opposing counsel; (2) the information sought is relevant and

nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.*

To begin, the court rejects Plaintiff's argument that the *Boughton* factors do not apply in

a case of this type, including her contention that the court so found in the *Curtis Park* case. *See*

ECF No. 54 at 10; *see also Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-cv-

00552-CMA-NRN, 2021 WL 4438037, at *4 (D. Colo. Sept. 28, 2021) (finding that a special

master "*properly applied* the three-part test . . . adopted by the Tenth Circuit in *Boughton*")

(emphasis added). Applying the *Boughton* factors here, the court finds that Plaintiff fails to

---

[10] During the October discovery conference, Plaintiff's counsel appeared to acknowledge that if
he could depose Mr. Burnham and could rely on Standard Fire's disclosure of witnesses (which
does not include Ms. Lidbury or Ms. Garbowski), then he would not need to depose Ms.
Lidbury. ECF No. 95 at 48:1-12, 17-18. Counsel further stated that, what "makes best sense,
especially since we've got these extensions of time, [is] . . . to go ahead and depose Mr.
Burnham." *Id.* at 49:1-3. The parties' discovery statements submitted in advance of the
December conference confirm that Mr. Burnham was deposed on November 9, 2023, but neither
side briefed the question of whether Plaintiff still seeks to depose Ms. Lidbury and Ms.
Garbowski. Nor did the parties address that question during the December conference.

satisfy the first factor. As the court has discussed throughout this order, Mr. Burnham can

provide the substantive information that goes to Plaintiff's allegations of bad faith and delay—

including detailed information about the scheduling and location of Plaintiff's IME. And given

that Ms. Lidbury's and Ms. Garbowski's information would be duplicative of that which Mr.

Burnham can provide, it is also not "crucial to the preparation of [Plaintiff's] case." *Boughton*,

65 F.3d at 829; *see also Robinson v. Charter Oak Fire Ins. Co.*, No. 20-cv-01534-PAB-MEH,

2021 WL 1753468, at *1 (D. Colo. Mar. 22, 2021) (applying *Boughton* in disallowing deposition

of defense counsel where other sources of information existed and information was not crucial).

Plaintiff's request to depose Ms. Lidbury and Ms. Garbowski of MAC-Legal is denied.

## II.    TRAINING MATERIALS

Plaintiff asserts that she is entitled to the education and training history of Standard Fire's

claims adjusters James Burnham, Robert Hickman, and Julie Belletire. She argues those

materials are relevant to support her claim that Standard Fire violated the Unfair Claims

Settlement Practices Act, *see* Colo. Rev. Stat. § 10-3-1104(1)(h)(III), in allegedly "failing to

adopt and implement reasonable standards [for] the prompt investigation of claims under its

insurance policies." ECF No. 64 at 12. Standard Fire contends that it has already "produced

numerous categories of claim handling guidelines and training materials," including

> three years' worth of Travelers Auto Knowledge Guides; Colorado liability state
> highlights 2022; auto – UM/IM investigation checklist; auto self-review program;
> BIW/UMW damages evaluation quick guides for 2020 and 2021; bodily injury
> investigation checklist; Colorado specifics chart; Colorado coverage, liability,
> regulatory issue guide; Colorado jurisdictional resource; fact track claim handling
> guide; full vs. streamlined BIW quick guide 2021; recorded statement investigative
> guide; and streamlined BIW quick guide.

ECF No. 84 at 2. Even so, Plaintiff's counsel presses for a list of the trainings attended by Mr.

Burnham, Mr. Hickman and Ms. Belletire specifically—a list that he believes "[e]very single insurance company keeps[.]" ECF No. 95 (Oct. 18, 2023 Hrg. Tr.) at 78:2-7.[11]

To the extent Plaintiff seeks a list of all trainings attended by the adjusters assigned to Plaintiff's claim, the court understands, based on email correspondence from counsel for both parties, that Defendant has already produced this list to Plaintiff. Therefore, any dispute regarding the discoverability of the list is now moot.[12]

## III.    DISCOVERY CONFLICTS

Having dedicated many hours to evaluating the parties' discovery disputes (with significant more work to be done in that arena), this court cannot help but observe that Judge Neureiter's statements at the scheduling conference presaged the evolution of this case. Emphasizing that this "isn't the IBM antitrust case," but rather "a car accident case where there is one claimant, one injury," ECF No. 84-5 (Scheduling Conference Tr. 19:17-20), Judge Neureiter made clear that "we're not going to spend thousands and thousands and thousands of attorney dollars when it's not proportional[]." *Id.* 19:20-22; *see also id.* 19:23-20:4 (telling Plaintiff's counsel that depositions weren't necessary to make Plaintiff's points about the IME: "you don't need the facts of that. You just point out that they did it and then force them to try to defend it.").

Unfortunately, the case seems to have gone in the opposite direction. Like Judge Neureiter, this court does not minimize any injury Plaintiff may have suffered, *see id.* at 19:13-

_____

[11] Previously, Plaintiff wanted these materials only for Mr. Burnham, but Plaintiff expanded this request at the December conference to encompass Mr. Hickman's and Ms. Belletire's training.
[12] The court is aware that there are newly-raised discovery disputes surrounding the training list provided to Plaintiff. This order does not address the merits of those new disputes.

17, but the case appears to have tilted toward a drill-to-the-center-of-the-earth approach to discovery. Too, the court is deeply concerned about what MAC-Legal describes as harassing treatment during this litigation, *see* ECF No. 42 at 5-6, including a very targeted written statement by Plaintiff's counsel concerning a MAC-Legal attorney that is not supported by the record in this case. *Compare* ECF No. 42-3 at 2 (asserting that the MAC-Legal attorney "seemed to suggest, on the record in federal court, that he could require an insured to attend an IME in Guam if he wanted"), *with* ECF 42-2 at 2:17-21 (statement by the same MAC-Legal attorney agreeing with the court that such a ploy would be improper, while noting that Plaintiff "wasn't living in Guam. She was living in Chicago and traveling back and forth between Chicago and Florida."). The court very respectfully requests a renewal of the proper balance between "tactics and proportionality," *see* ECF No. 84-5, 19:12-13, as this litigation moves forward.

## CONCLUSION

Accordingly, for the foregoing reasons,

MAC-Legal's Motion to Quash (ECF No. 36) is **GRANTED**;

Plaintiff's request to depose MAC-Legal personnel Hayleigh Lidbury and Marta Garbowski is **DENIED**; and

Plaintiff's request for a list of all trainings provided by Standard Fire to Mr. Burnham, Mr. Hickman, and Ms. Belletire is **DENIED AS MOOT**.[13]

---

[13] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver

DATED: February 9, 2024        BY THE COURT:

_____

Susan Prose
United States Magistrate Judge

---

rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").