# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03287-RM-SBP

LJUBINKA STANISAVLJEVIC,

      Plaintiff,

v.

THE STANDARD FIRE INSURANCE COMPANY d/b/a TRAVELERS INSURANCE
COMPANY,

      Defendant.

---

## ORDER GRANTING MOTION TO AMEND

---

**Susan Prose, United States Magistrate Judge**

      Plaintiff Ljubinka Stanisavljevic has moved to amend her complaint to assert claims for
punitive damages against Defendant The Standard Fire Insurance Company, d/b/a Travelers
Insurance Company ("Standard Fire"). ECF No. 50 ("Motion to Amend" or "Motion"). The
undersigned considers the Motion pursuant to 28 U.S.C. § 636(b) and the Order Referring
Motion dated August 17, 2023. ECF No. 52. The court has reviewed the briefs, the entire docket,
and the applicable case law. For the reasons sets forth below, the court **GRANTS** the Motion to
Amend.[1]

---

[1] "Whether motions to amend are dispositive is an unsettled issue in the 10th Circuit." *Cano-
Rodriguez v. Adams Cty. Sch. Dist. No. 14*, No. 19-cv-01370-CMA-KLM, 2020 WL 6049595, at
*1 n.2 (D. Colo. July 23, 2020), *report and recommendation adopted*, 2020 WL 4593219 (D.

## BACKGROUND

The court begins by chronicling the events pertinent to its evaluation of the Motion. The litigation officially commenced on November 9, 2022, when Ms. Stanisavljevic filed the case in Denver District Court, prompting Standard Fire to remove the case to this court. ECF No. 1 at 1–2. In the operative complaint here, Ms. Stanisavljevic brings claims for underinsured motorist ("UIM") benefits, breach of contract, willful and wanton breach of contract, breach of the duty of good faith and fair dealing, and undue delay or denial of insurance benefits in violation of Colo. Rev. Stat. § 10-3-1116(1). Amended Complaint, ECF No. 45. Ms. Stanisavljevic alleges that, on July 31, 2020, she sustained severe injuries when the car in which she was a passenger was struck by another vehicle. *Id*. ¶¶ 5–6.

Ms. Stanisavljevic settled with the insurance carrier of the person who caused the accident for that individual's policy limit of $25,000. *Id*. ¶ 44. Ms. Stanisavljevic then sought to obtain $250,000 in UIM benefits under a Standard Fire policy on the vehicle in which Ms. Stanisavljevic was a passenger. *Id*. ¶¶ 12–13, 56. To date, Standard Fire has not paid the full policy limit that Ms. Stanisavljevic claims "she is legally entitled to collect and [is] owed under the policy." *Id*. ¶¶ 52, 109. Ms. Stanisavljevic claims that "at no point prior to her retention of

_____

Colo. Aug. 11, 2020). Courts in this District have treated orders granting motions to amend as non-dispositive, but "many courts have held that a recommendation to deny a motion to amend . . . should be viewed as a dispositive ruling because it precludes the filing of certain claims." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2021 WL 941828, at *2 n.1. (D. Colo. Mar. 11, 2021); *see also Bullock v. Daimler Trucks N. Am., LLC*, No. 08-cv-00491-PAB-MEH, 2010 WL 1286079, at *1 (D. Colo. Mar. 29, 2010) (observing that it "makes good sense" to distinguish between allowing and denying an amendment in considering whether to use an order or recommendation as a magistrate judge). Because this court finds that the Motion to Amend should be granted, this court proceeds by order rather than recommendation.

counsel did Standard ever ma[k]e her an offer," and after that point, Standard offered her $10,000. Reply at 14 (emphasis omitted).

In the Motion, Ms. Stanisavljevic seeks to amend her complaint to request relief in the form of punitive damages against Standard Fire. *See* Proposed Amended Complaint, ECF No. 50-28 ¶¶ 168. Standard Fire opposes the Motion. Response, ECF No. 64. Ms. Stanisavljevic has since replied. Reply, ECF No. 77.

## LEGAL STANDARD

Under the law of the United States Court of Appeals for the Tenth Circuit, the court ordinarily engages in a "single-tiered" analysis, assessing whether amendment is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240–42 (10th Cir. 2014); *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). Under this analysis, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). [2] Whether to allow amendment is within the trial court's discretion. *See Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996); *see also Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (trial court has "broad discretion to permit a party to serve a supplemental pleading").

However, the amendment at issue here concerns exemplary damages, which is governed by Colorado Revised Statute § 13-21-102. *Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023 WL 4408254, at *7 (D. Colo. July 7, 2023) (recognizing that "courts in this District have

---

[2] While this analysis typically applies when a party seeks to amend pleadings before the expiration of the deadline set in the scheduling order and the Scheduling Order deadline for joinder/amending pleadings passed on May 26, 2023, the Order carved out this kind of motion. ECF No. 30 at 15. As such, Fed. R. Civ. P. 15(a) applies.

held that § 13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary damages"). Courts in this district consistently have found that there is no direct conflict between this statute and the Federal Rules of Civil Procedure. *See, e.g.*, *id.* (finding that the application of § 13-21-102 "would not result in forum shopping or the inequitable administration of the law") (collecting cases). Even under Colo. Rev. Stat. § 13-21-102, "the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice"—which mirrors the Rule 15(a) standard. *Franklin D. Azar & Assocs., P.C. v. Executive Risk Indemnity, Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 7130144, at *2 (D. Colo. Oct. 10, 2023); *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) ("Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."); *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) ("A trial court may properly deny a motion to amend because of delay, bad faith, undue expense, or other demonstrable prejudice."). However, in this case, it appears that Standard Fire does not argue any of those grounds. *See* Response.

Under Colo. Rev. Stat. § 13-21-102(1.5), a plaintiff cannot seek exemplary damages in the initial pleading and may seek to amend the pleading to add an exemplary damages claim "only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." Exemplary damages are permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct[.]" Colo. Rev. Stat. § 13-21-102(1)(a). "Willful and wanton conduct

is conduct that is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(b); *see also Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) (citing *Tri-Aspen Const. Co. v. Johnson*, 714 P.2d 484, 486 (Colo. 1986); *Frick v. Abell*, 602 P.2d 852, 854 (Colo. 1979)).

In other words, conduct is willful and wanton if it is "'a dangerous course of action' that is consciously chosen 'with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result." *Stamp*, 172 P.3d at 449 (finding evidence that a snowmobile was traveling at so high a speed that it "lifted off of the ground as it crested the blind knoll" sufficient for a prima facie showing of willful and wanton conduct) (quoting *Steeves v. Smiley*, 354 P.2d 1011, 1014 (Colo. 1960) (holding that evidence of a driver's decision to travel at a high speed and to pass other cars at night on a single-lane highway, despite repeated warnings from his passengers that he was driving too fast, was sufficient to present the question of willful and wanton conduct to the jury in a wrongful death action)).

"Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors*, 112 P.3d at 66; *see also Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009) (same). "Simple negligence," however, cannot support an award of exemplary damages. *Blood*, 224 P.3d at 314. As for "malicious" conduct, *see* § 13-21-102(1)(a), such conduct refers to "'an intention or desire to harm another [usually] seriously through doing something unlawful or otherwise unjustified' or 'revengeful or unfriendly feelings.'" *Bonidy v. Vail Valley Ctr. for Aesthetic*

*Dentistry, P.C.*, 232 P.3d 277, 286 (Colo. App. 2010) (quoting *Webster's Third New Int'l Dictionary* 1367 (2002)).

As to the requirement of a prima facie showing, *see* Colo. Rev. Stat. § 13-21-102(1.5)(a), a plaintiff must demonstrate "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp*, 172 P.3d at 449 (quoting *Leidholt v. Dist. Ct.*, 619 P.2d 768, 771 n.3 (Colo. 1980)). "Prima facie proof, like a proffer, is merely a facial showing sufficient to prove a matter in the absence of contradictory evidence. It is akin to the showing required to survive motions brought under Fed. R. Civ. P. 12 and 50." *Rosania v. Grp. O, Inc.*, No. 13-cv-00398-MSK-BNB, 2014 WL 679884, at *3 n.4 (D. Colo. Feb. 20, 2014). "Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Id.* The evidence, which the court views in the light most favorable to plaintiffs, must only be enough for a prima facie showing of willful and wanton behavior, not enough to "defeat a motion for summary judgment or to result in a jury verdict in Plaintiff's favor." *Hendrickson v. Doyle*, No. 14-cv-02013-WJM-KLM, 2015 WL 2106225, at *3 (D. Colo. May 4, 2015). The plaintiff's evidentiary burden on a motion to amend pursuant to § 13-21-102 is "an admittedly low threshold." *Affordify, Inc. v. Medac, Inc.*, No. 19-cv-02082-CMA-NRN, 2020 WL 6290375, at *5 (D. Colo. Oct. 27, 2020).

## ANALYSIS

Ms. Stanisavljevic argues that she should be granted leave to add prayers for relief on exemplary damages under Colorado law. Ms. Stanisavljevic asserts that she has established a prima facie triable issue for an award of exemplary damages based on the following allegations and evidence:

1. **Email correspondence with Standard Fire and MAC Legal regarding the location of the Independent Medical Examination ("IME").**

Ms. Stanisavljevic alleges that she "detrimentally relied upon this misrepresentation [that her IME needed to occur in Chicago and not Florida] by in fact traveling from Florida to Chicago for this IME, at her own expense that has still not been reimbursed by Travelers to this very day." Motion at 6. Ms. Stanisavljevic alleges that Standard Fire "fraudulently convinced [her] to attend" the IME. *Id*. at 11.

Ms. Stanisavljevic emailed James Burnham, Auto Liability Senior Technical Specialist for Standard Fire, requesting that her IME take place as soon as possible since she would soon be relocating to Florida to care for her mother. ECF No. 50-2. Mr. Burnham replied, "If you move to Florida please advise so that the IME retention can be someone in that area." ECF No. 50-3. Hayleigh Lidbury, an attorney with Montgomery Amatuzio Chase Bell Jones, LLP ("MAC Legal"), outside counsel retained by Standard Fire, asked Ms. Stanisavljevic whether she was "still going back and forth between Chicago and Florida and what that schedule looks like for the next couple of months," to which Ms. Stanisavljevic replied that she would be in Florida in December 2021 and Illinois in January 2022. ECF No. 50-4. Marta Garbowski, a paralegal with MAC Legal, emailed Ms. Stanisavljevic to ask if select dates in January 2022 for an IME appointment in Illinois would work for her, and Ms. Stanisavljevic responded that she needed to be in Florida for a while longer and requested an IME in Florida. ECF No. 50-5. Ms. Grabowski then emailed Ms. Stanisavljevic to inform her that "per the policy we must base the IME off the residency of the claimant, therefore, the Chicago area. Do you have an idea of when you might be returning to Chicago?" ECF No. 50-6. Ms. Stanisavljevic replied that she would return to

Illinois "probably in late February/early March. If you can make an appointment for me, I will be sure to be there for it. Any day will work, and I prefer an afternoon appointment please." ECF No. 50-6. Separately, Standard Fire considered an IME located in Illinois as more "beneficial" if Ms. Stanisavljevic's claims were ultimately litigated, which it anticipated. *See* ECF No. 50-11; Response at 9; ECF No. 50-10.

In response, Standard Fire argues that Ms. Stanisavljevic "represented to Standard Fire she was already planning to be in Illinois, which is why the IME was set to occur there in March 2022" and that "she did not submit any request or receipts for reimbursement until after litigation commenced" and not until May 2023. Response at 8. Additionally, Standard Fire states that "while the language in the IME scheduling email could have been worded better, . . . Standard Fire can require that Plaintiff attend an IME in a location of its choosing." *Id.* at 9.

2. **Documentation alleging that Standard Fire failed to conduct a fulsome investigation of Ms. Stanisavljevic's claims arising under its policies by refusing to pay for a Functional Capacity Evaluation ("FCE").**

Ms. Stanisavljevic claims that Standard Fire required a note from a medical provider "placing her off work or providing work restrictions limiting her ability to work" in order to evaluate her alleged lost wages (*see* ECF No. 50-14 at 7) while at the same time refusing to pay for a Functional Capacity Evaluation (*see* ECF No. 50-3 at 2), which would have determined her capacity to work (*see* ECF No. 50-13 at 12). Ms. Stanisavljevic alleges that she attempted to obtain a note from her doctor regarding her capacity to work but was "told that she would have to get an FCE with an outside provider, and that FCE would not be covered under Plaintiff's Medicaid insurance thereby making it cost-prohibitive for Plaintiff to obtain it herself." Reply at

12.

In response, Standard Fire provides notes from a call with Ms. Stanisavljevic, during which an unnamed representative of the company advised her that "lost wages documentation is in [the] process of being reviewed by accountant," and Ms. Stanisavljevic stated that she "is going to contact her doctor" about medical documentation regarding her ability to work. ECF No. 64-7. Ms. Stanisavljevic contests this, claiming that "Standard never specifically requested she provide such a note" from a doctor regarding her ability to work. Reply at 11. Standard Fire also provides an email thread in which Ms. Lidbury requested a release from Ms. Stanisavljevic to obtain her Social Security Disability Insurance application (*see* ECF No. 64-18), which would have provided Standard Fire with documentation of her capacity to work. *See* Response at 11. Standard Fire claims that Ms. Stanisavljevic did not provide a release for her SSDI application. *Id.*

Ms. Stanisavljevic also alleges that Standard Fire failed to address her complaints of migraines and headaches from the accident (*see* ECF No. 50-15 at 1) because it employed Dr. Gregory Lopez, who is an orthopedic surgeon, not a neurologist, to conduct the IME and that "nowhere in Dr. Lopez's report does he address [her] complaints of migraines and headaches from the accident." Motion at 11. However, in the first page of the IME report, Dr. Lopez wrote, "She also has headaches located at the base of her skull. She has tried NSAID's without sustained relief. She has had therapy for her neck which did help her symptoms, but not fully alleviate them." ECF No. 50-9 at 1.

Standard Fire responds that Ms. Stanisavljevic "also alleges that her cervical spine suffered a lesion and caused numbness and tingling in her bilateral hands, which affects her

ability to work," presumably to demonstrate that it was appropriate for an orthopedic surgeon to conduct the IME, and argues that she "has provided no case law to support her position that a single expert must be retained to address every single complaint alleged by a plaintiff to satisfy requirements" for a fulsome investigation. Response at 11; ECF No. 64-20 at 3. Standard Fire also points to a Bodily Injury Worksheet to "show that Standard Fire did review and evaluate the effect of Plaintiff's claimed headaches on her claim for damages." Response at 11; *see* ECF No. 124-1 at 2, 8.

Ms. Stanisavljevic also alleges that Standard Fire's medical payments adjuster, Christopher Kirkbride, decided to close her MedPay claim[3] after "a few months of improperly trying to delegate" claim handling responsibilities to her, which "not only caused [Ms. Stanisavljevic] to be deprived of the MedPay benefits which she is owed, but he also caused substantial delay in the investigation of the UIM claim." Motion at 13–14.

In response, Standard Fire provides claim notes that say, "Discussed with [Ms. Stanisavljevic] that she is waiting on bills and records to finalize Med Pay claim. Agreed to close the claim for now. They/provider/IL Medicaid will send a demand for payment once Tx but timelines are unk. Due to this, I am closing the claim and notating BRT/setting reserve. I ADV that if anything changes to please let me know and I can reactive [sic] the claim. She understood." ECF No. 64-4 at 1.

### 3. A letter from Standard Fire's outside counsel, MAC Legal.

Ms. Stanisavljevic alleges that Standard Fire has refused to provide requested documents

---

[3] MedPay coverage insures the policyholder for any bodily injury "resulting from the ownership, maintenance, or use of [a] motor vehicle," regardless of fault. Colo. Rev. Stat. § 10-4-635(1)(a).

and that it could essentially "launder" its claim handling through its outside counsel, MAC

Legal, "and completely avoid having to follow the law." Motion at 14. She provides a letter from

MAC Legal, highlighting a section regarding a discovery dispute in which the law firm says,

"MAC-Legal is not subject to the requirements of 3 C.C.R. § 702-1:1-1-7(5)(E)(4) since the

statute applies to third-party administrators, title insurance, insurance agents, bail insurance,

companies or individuals that deal with issuance of insurance policies, and companies or

individuals that are subject to the authority of the insurance commissioner" and not the law firm.

ECF No. 50-21 at 2–3 (internal quotations omitted).

In response, Standard Fire asserts that MAC Legal was not acting as a claim adjuster and

that Ms. Stanisavljevic "did not cite to a single case where an insurer's decision to retain outside

legal counsel prelitigation served as a basis for punitive damages." Response at 13.

### 4. Statements regarding multiple sclerosis ("MS").

Ms. Stanisavljevic provides screenshots of emails and claim notes from Mr. Burnham and

Ms. Lidbury stating that Ms. Stanisavljevic underwent medical treatment and incurred costs from

a prior medical condition of MS, even though "Mr. Burnham had medical records in his direct

possession at the time unequivocally showing that [Ms. Stanisavljevic] did not have MS."

Motion at 16–17. Ms. Stanisavljevic alleges that these statements amount to an attempt to lower

the value of her claims. *Id.* An Independent Medical Examination dated March 4, 2022, included

Ms. Stanisavljevic's medical records, which show that a November 6, 2020 MRI scan of her

brain did "not have any lesions that are suggestive of MS." ECF No. 50-9 at 6. The medical

record with the MRI scans states, "Based upon the history and MRI findings of the brain, Ms.

Stanisavljevic does not have multiple sclerosis." ECF 50-22 at 1–2. Standard Fire's records

referred to this finding: "MRI of the brain did not indicate MS." ECF No. 50-12 at 3.

In response, Standard Fire claims that its payment to her included the cost of the MS evaluation and that it "did not consider the MS testing related to the subject [accident]." Response at 13–14. Standard Fire also points to a Bodily Injury Worksheet which refers to the MS evaluation as a "[l]ikely unrelated bill[] and associated with MS," at a cost of $5,000; the worksheet further notes that Standard Fire "[w]ill need priors and medical evaluation on reasonable care and issues with MS." ECF No. 124-2. It is unclear from this document whether Standard Fire actually made a payment to Ms. Stanisavljevic that included the cost of the MS evaluation. The document reflects that Standard Fire set a reserve of over $42,471 for Plaintiff's medical bills—which did *not* include the MS evaluation—deducted $25,000 (without any apparent explanation), and noted "net special damages" in the amount ($17,471) that Standard Fire asserts it paid to Plaintiff in a "*Fisher*" payment[4] that month. *Id.* at 5–7. This does not show that Standard Fire paid for the MS evaluation. To the contrary, a reasonable jury could find the document supports the opposite conclusion, that Standard Fire excluded the MS evaluation from the medical expenses that it paid in May 2021. More importantly, Standard Fire does not address why Mr. Burnham referred to Ms. Stanisavljevic receiving treatment for MS in claim notes and in correspondence with MAC Legal while he was in possession of medical records showing that she does not have MS, particularly when Standard Fire asserts that Plaintiff's alleged MS was

___

[4] In 2018, the Colorado Supreme Court held that "insurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may still be reasonably in dispute." *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018). Since that time, payments from insurers to insureds for amounts not in dispute are referred to as "*Fisher*" payments."

unrelated to the subject accident. *See generally* Response.

**5.   Testimony and correspondence regarding a nurse's medical review of Ms. Stanisavljevic's claims, first revealed to her during discovery.**

Ms. Stanisavljevic alleges that during discovery, she learned that the original UIM adjuster assigned to her claim, Julie Belletire, had obtained an expert opinion regarding her injuries from a nurse named Joan Redlinski. Motion at 18. Ms. Stanisavljevic alleges that she first learned of this review during discovery, as it "was nowhere to be found in the files conveyed by MAC," *id.*, when her counsel had previously requested "any other documents relevant to the claim they my client provided [*sic*] or that you obtained on your own that I have not listed, I would request those also" on June 14, 2022. ECF No. 50-23 at 2. Ms. Stanisavljevic provides an email response from MAC Legal with a link to "all documents received from Ms. Stanisavljevic and all medical records and billing previously received by [their] office" in regard to her claim, ECF No. 50-24 at 1, as well as the deposition transcript in which Ms. Belletire responds affirmatively to a question of whether she considered the nurse review to be material to her handling of Ms. Stanisavljevic's claim. ECF No. 50-13 at 4–5.

In response, Standard Fire claims that Ms. Stanisavljevic "fails to provide any legal support for her position and asks this Court to reach conclusions that are inapposite to what other courts in this jurisdiction have held when presented with the issue of whether an insurer is required to share its internal reports with claimants." Response at 14. Standard Fire contends that it was under no obligation to produce the nurse review in response to Ms. Stanisavljevic's counsel's June 14, 2022 letter, citing cases decided in this district. *Id.* at 14. As Standard Fire quotes, "Plaintiff does not cite any case which suggests that an insurance company has a duty to

share its engineer or adjuster reports with the insured as a matter of course. Likewise, the Court's independent research did not uncover such a case." *Id.* (quoting *2506 6th St., LLC v. WestGUARD Ins. Co.*, No. 21-cv-01673-WJM-MDB, 2022 WL 17335952, at *4 (D. Colo. Nov. 30, 2022)). However, the judge in that case granted the plaintiff's motion to leave to amend its complaint to add exemplary damages since "Plaintiff does not solely allege a failure to share adjuster reports. Plaintiff paints a broader picture that suggests Defendants intentionally slow-played the claim—whereby the failure to share reports was merely one facet of Defendants' questionable conduct." Here, too, Standard Fire's failure to share the nurse's medical report is just one facet of Ms. Stanisavljevic's claims.

**6.  Examples of Standard Fire's affirmative defenses that allegedly amount to "litigation gamesmanship" revealing "bad faith conduct."**

Ms. Stanisavljevic alleges that Standard Fire's failure to mitigate defense, with respect to the wage loss portion of Ms. Stanisavljevic's insurance claim; comparative fault defense, with respect to the vehicle collision; and assertion that her "claims are barred for an unexplained failure to meet or comply with one or more conditions of the policy" demonstrate "bad faith conduct" that warrants a trebling of punitive damages. Motion at 19–20. Ms. Stanisavljevic cites the traffic accident report, which says that she was a passenger in the vehicle, *see* ECF No. 50-26 at 4, and the deposition transcript, in which Ms. Belletire agrees that she would "put zero percent liability on Ms. Stanisavljevic" and Ms. Rosenblum, the driver of the vehicle in which Ms. Stanisavljevic was passenger. ECF No. 50-13 at 9. Ms. Stanisavljevic also cites two cases, *Am. Guarantee & Liab. Ins. Co. v. King*, 97 P.3d 161, 169 (Colo. App. 2003) (upholding trial court's finding of bad faith and awarding punitive damages where evidence demonstrated the insurer

14

engaged in improper litigation conduct aimed at putting more pressure on the insured), and *Tait v. Hartford*, 49 P.3d 337, 343 (Colo. App. 2001) (holding, in case where insurer's counsel "committed discovery violations in a manner that required the court to hold hearings to insure compliance," among other misconduct, that insured was not entitled to appellate attorney fees "because, although insurer's conduct prior to and during litigation has been found egregious, we cannot say that its pursuit of this appeal has been frivolous").

In response, Standard Fire rejects Ms. Stanisavljevic's assertion that its failure to mitigate damages defense is baseless because she "failed to provide any objective evidence of her inability to work." Response at 15; *see* ECF No. 64-7. With respect to the comparative fault defense, Standard Fire responds that it "ultimately agreed during the scheduling conference to withdraw the comparative negligence defense because it decided against filing a non-party at fault designation. This Court has already addressed this issue by having Standard Fire file an Amended Answer removing this defense." Response at 16. Standard Fire distinguishes the present matter from that in *King* by asserting that, among other things, the insurer in *King* "was aware of and sought to exploit King's vulnerable health; and that it joined the doctor as a defendant to trigger King's indemnification under the settlement agreement, thereby putting more pressure on him." Response at 16 (quoting *King*, 97 P.3d at 169).

Based on this evidence, Ms. Stanisavljevic argues, she has established prima facie proof of a triable issue. *See* Motion at 4, citing Colo. Rev. Stat. § 13-21-102(1.5)(a).

For its part, Standard Fire argues that Ms. Stanisavljevic has not made the threshold showing required by Colo. Rev. Stat. § 13-21-102 because she has not shown that she can establish "beyond a reasonable doubt" her entitlement to punitive damages. Response at 5, citing

Colo. Rev. Stat. § 13-25-127(2). However, that statute—which requires that "Exemplary damages against the party against whom the claim is asserted shall only be *awarded* in a civil action when the party asserting the claim proves beyond a reasonable doubt the commission of a wrong under the circumstances set forth in section 13-21-102"—does not pertain to the present matter, which is whether Ms. Stanisavljevic should be permitted leave to amend her complaint to add a claim for exemplary damages, not whether she should be awarded exemplary damages. Colo. Rev. Stat. § 13-25-127(2) (emphasis added). Ms. Stanisavljevic's ability to make a showing "beyond a reasonable doubt" is not the standard by which the court evaluates whether she may amend her complaint to seek exemplary damages. *See Hendrickson*, 2015 WL 2106225, at *3 (rejecting defendant's argument the plaintiff needed to show a jury could award exemplary damages against defendant beyond a reasonable doubt).

Rather, to meet the relatively low prima facie hurdle, Ms. Stanisavljevic need only demonstrate "a *reasonable likelihood* that the issue [of exemplary damages] will ultimately be submitted to the jury for resolution." *Stamp*, 172 P.3d at 449; *see also, e.g.*, *White v. Santomaso*, No. 10-cv-01224-REB-KLM, 2011 WL 486234, at *3 (D. Colo. Feb. 7, 2011) ("The Court's sole function now is to determine whether Plaintiff has provided a plausible basis for exemplary damages liability if her version of the facts and potential evidence are assumed to be true.") (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

The court agrees with Ms. Stanisavljevic that her evidence with respect to the correspondence about the IME location, the FCE denial, the statements regarding Ms. Stanisavljevic undergoing treatment for MS, and the delayed disclosure of the nurse's medical review of Ms. Stanisavljevic's claims suffices as prima facie evidence of willful and wanton

conduct under Colorado law. In so concluding, the court expressly states that it does **not** base this conclusion on the litigation decisions of counsel for Standard Fire, and explicitly rejects Plaintiff's assertion that counsel engaged in "litigation gamesmanship" demonstrative of "bad faith" conduct—assertions unsupported by the record here.

Taking the remainder of Ms. Stanisavljevic's evidence in the light most favorable to her, those allegations and documents could support a reasonable jury finding that Standard Fire was heedless of Ms. Stanisavljevic's rights under the policy and under Colorado law, in imposing requirements for her claims that arguably are inconsistent with the policy, Colorado law, or both, as well as in falsely concluding that she suffered from multiple sclerosis despite having documentation proving otherwise. *See Franklin D. Azar & Assocs.*, 2023 WL 7130144, at *3 (granting motion for leave to amend to add exemplary damages after plaintiffs submitted evidence that "Defendant has willfully ignored relevant and material policyholder communications."); *Stoker v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-03569-NYW, 2021 WL 681444, at *12 (D. Colo. Feb. 22, 2021) (granting leave to amend to add exemplary damages claim and finding that plaintiffs had established a prima facie case that an insurance company acted recklessly and/or heedlessly for purposes of exemplary damages, even though plaintiffs had not disclosed their treating provider or a cost estimate from a treating provider despite the insurance company's requests for such information); *Sands v. Integon Nat'l Ins. Co.*, No. 18-cv-00714-PAB-NYW, 2020 WL 8188184, at *7 (D. Colo. Mar. 9, 2020) (granting leave to amend to add exemplary damages and finding a prima facie case that the defendant's conduct in processing plaintiff's claim was willful and wanton when it provided plaintiff with false information), *report and recommendation adopted*, 2020 WL 8188168 (D. Colo. Mar. 25,

2020)); *Argo v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02059-RM-KMT, 2019 WL 4192110, at *3 (D. Colo. Sept. 4, 2019) (granting leave to amend to add exemplary damages claim and finding a prima facie case that the defendant insurance company improperly concluded that the plaintiff suffered from a pre-existing condition because "[t]here is no indication that Plaintiff acted in bad faith or with undue delay" and "Defendant has not shown, nor even argued, that unfair prejudice will result from the amendment"); *Cunningham v. Standard Fire Ins. Co*., No. 07-cv-02538-REB-KLM, 2008 WL 4371929, at *2 (D. Colo. Sept. 23, 2008) (granting motion for leave to amend to add exemplary damages claim after plaintiff argued, "Defendants' conduct was willful and wanton because they knew their own standards and the purpose for those standards, and they did not follow them. The standards encouraged reasonable claims handling. Defendants purposefully ignored the standards to the detriment of Plaintiff."); *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *4 (D. Colo. Jan. 17, 2007) (granting motion for leave to amend to add exemplary damages claim because the insurance company's "change of position demonstrates a prima facie case of heedless or reckless disregard to the consequences or the rights of the insured").

To be sure, Standard Fire has provided evidence giving rise to factual disputes between the parties on these issues, but the court need not resolve these disputed issues of fact at this juncture. *See Schimek v. Owners Ins. Co*., No. 16-cv-02197-PAB-STV, 2017 WL 3621833, at *6 (D. Colo. Aug. 23, 2017) ("Defendant thus, at best, has highlighted factual disputes between the parties with regard to Plaintiff's proposed claim for exemplary damages. The Court declines Defendant's invitation to resolve these disputed issues of fact.").

At present, the court is only concerned with whether the evidence, when viewed in the light most favorable to Ms. Stanisavljevic, is sufficient to make out a prima facie case of willful and wanton behavior for the purpose of allowing her to amend her "Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in [her] favor." *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018). *See also Am. Econ. Ins. Co.* 2007 WL 160951, at *4 ("I am concerned here only with the preliminary question of whether [the plaintiffs] have made a prima facie case under § 13-21-102(1.5)(a), not with summary judgment."). This is "a low burden relative to the burden of proof at trial." Reply, quoting *Am. Ins. Co. v. Pine Terrace Homeowners Ass'n*, 20-cv-00654-DDD-MDB, 2022 WL 5240648, at *3 (D. Colo. Oct. 6, 2022).

In addition to this low prima facie hurdle, Standard Fire has not asserted that Ms. Stanisavljevic's Motion is unduly delayed; indicative of undue prejudice, bad faith, or dilatory motive; a result of failure to cure deficiencies by amendments previously allowed; or is futile. *See, e.g., Frank*, 3 F.3d at 1365; *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).

In sum, having reviewed the evidence presented by Ms. Stanisavljevic and taking all reasonable inferences in the light most favorable to her, for the reasons stated above, the court finds that she has met her burden to assert a demand for exemplary damages, and therefore her Motion to Amend should be granted. In so finding, the court only answers the "preliminary question" of whether Ms. Stanisavljevic made a prima facie case, *Am. Econ. Ins. Co.*, 2007 WL 160951, at *4, and does not pass on the merits of her claims or demand for exemplary damages. Neither does the court pass on the merits of Standard Fire's defenses or counterclaims.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Plaintiff Ljubinka Stanisavljevic's Motion for Leave to Amend Complaint to Assert Claim for Punitive Damages, ECF No. 50, is **GRANTED**;

(2) Plaintiff is **ORDERED** to file a clean version of the proposed Amended Complaint, ECF No. 50-28, as a separate docket entry on or before **April 11, 2024**; and

(3) Defendant Standard Fire is **ORDERED** to file an answer to the Amended Complaint within fourteen days of service of the Amended Complaint and Jury Demand, **revised only to address Ms. Ljubinka Stanisavljevic's newly asserted requests for relief in the form of exemplary damages.**[5]

DATED: March 28, 2024

BY THE COURT:

_____

Susan Prose

United States Magistrate Judge

---

[5] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").