## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03287-RM-SBP

LJUBINKA STANISAVLJEVIC,

     Plaintiff,

v.

THE STANDARD FIRE INSURANCE COMPANY, d/b/a TRAVELERS INSURANCE COMPANY,

     Defendant.

---

## ORDER ON DECEMBER 14, 2023 DISCOVERY DISPUTES AND DEFENDANT'S MOTION FOR RULE 35 EXAMINATION

---

**Susan Prose, United States Magistrate Judge**

     This matter is before this court on discovery and clawback disputes that the court heard in a discovery conference of December 14, 2023. ECF No. 98 (minute entry); ECF No. 113 (transcript). On December 11, 2023, the parties emailed separate Discovery Statements concerning those disputes, per the court's then-practice standard. The court refers to those statements respectively as "Plaintiff's Discovery Statement" and "Defendant's Discovery Statement." Because a clawback dispute arose concerning Plaintiff's Exhibit 3 to that statement, the court also allowed both sides to email position statements on that issue, on December 21, 2023.

     The court has carefully reviewed the discovery and clawback statements, heard the arguments of counsel on December 14, 2023, reviewed the transcript of that conference (ECF No. 113), and reviewed the applicable law. As follows, the court largely grants Defendant's

discovery requests—including its clawback request—and largely denies Plaintiff's requests.

This court also has before it Defendant Standard Fire Insurance's Motion for Rule 35 Examination of Plaintiff Ljubinka Stanisavljevic, ECF No. 99, which the court GRANTS.

Finally, the court addresses the actions of Plaintiff and her counsel with respect to discovery in this case. As detailed below, Plaintiff is respectfully cautioned that the continuation of frivolous and disrespectful conduct may lead to future sanctions in this matter and/or the appointment of a special master, at her expense, to oversee discovery.

I.    *Background*

The court has already issued three lengthy rulings in this case on pre-trial issues, namely on Plaintiff's first motion (ECF No. 18) to strike the answer in part, a motion (ECF No. 36) to quash Plaintiff's subpoena to Defendant's then-litigation counsel in this case (Montgomery Amatuzio Chase Bell Jones LLP, "MAC-Legal"), and Plaintiff's motion (ECF No. 50) to amend the complaint to add a punitive damages request.

Plaintiff has also filed two additional motions to strike defenses of Defendant. ECF No. 129 (not referred, motion to strike the "Never-Plead Fraud Affirmative Defense and Request for Sanctions"); No. 154 (not referred, motion to strike the No. 147 answer and request for sanctions).

Plaintiff *also* filed another motion to compel discovery, ECF No. 148, which this court has denied without prejudice to refiling a motion that complies with this court's page limit for discovery motions.

And finally, Defendant has also filed two motions to restrict certain filings which were occasioned by Plaintiff's motions. ECF No. 159 (concerning Plaintiff's unredacted motion filed

at ECF No. 149); No. 160 (concerning Defendant's response to Plaintiff's motion No. 129).

In light of the ongoing, extensive motion practice, the court attempts to streamline the resolution of the matters addressed in this order.

This is a case concerning an underlying auto accident in which Plaintiff was injured as a passenger. She brings a breach of contract claim for underinsured motorist ("UIM") benefits from Defendant as the insurer of the vehicle's driver, and she brings claims for bad faith delay under Colorado statutory and common law. The court has outlined the factual and procedural history in prior orders. The court assumes familiarity with those orders here.

Plaintiff alleges that, on July 31, 2020, she sustained severe injuries when the car in which she was a passenger was struck by another vehicle. Amended Complaint, ECF No. 131. Plaintiff settled with the insurance carrier of the person who caused the accident for that individual's policy limit of $25,000. *Id.* ¶ 44. Plaintiff then sought to obtain $250,000 in UIM benefits under a Standard Fire policy on the vehicle in which Plaintiff was a passenger. *Id.* ¶¶ 12-13, 56. To date, Standard Fire has not paid the full policy limit that Plaintiff claims "she is legally entitled to collect and [is] owed under the policy." *Id.* ¶ 109.

The litigation officially commenced on November 9, 2022, when Plaintiff filed the case in Denver District Court, prompting Standard Fire to remove the case to this court. ECF No. 1 at 1-2. As noted, Plaintiff brings claims for UIM benefits, breach of contract, willful and wanton breach of contract, breach of the duty of good faith and fair dealing, and undue delay or denial of insurance benefits in violation of Colo. Rev. Stat. § 10-3-1116(1). On her bad faith claims, Plaintiff seeks up to two times the covered benefit—i.e., an additional $500,000—plus her attorney fees and costs. She also seeks exemplary or punitive damages. ECF No. 119 (Sixth

Claim for Relief).

II.    *Legal Standards for Discovery*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case, considering the importance of

the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.

Civ. P. 26(b)(1). And as also pertinent here:

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
> obtained from some other source that is more convenient, less burdensome, or
> less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the
> information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(b)(2)(C).

Relevance under Rule 26(b)(1) is "broadly construed" in relation to discovery, and a

request is considered relevant "if there is 'any possibility' that the information sought may be

relevant[.]" *Stanton v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2013 WL 2423094,

at *2 (D. Colo. June 4, 2013) (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377,

382 (D. Kan. 2005)); *Brackett v. Walmart Inc.*, No. 20-cv-01304-KLM, 2021 WL 1749975, at *3

(D. Colo. May 4, 2021) ("[R]elevance is not so narrowly construed as to limit a story to its final

chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to

be told."). "[T]he party resisting discovery has the burden to establish the lack of relevance by

demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule 26], or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (quotation omitted).

In considering proportionality, this court "weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 274 (D. Colo. 2022) (citing Fed. R. Civ. P. 26(b)(1)). The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1).

"[D]iscovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, Nos. 21-1353 & 21-1434, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (internal quotation marks omitted) (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)); *see also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion). Rule 26(b)(2)(C) allows a court to limit discovery on motion or on its own if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking

5

discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

### III.    Analysis

#### A.    Discovery Disputes Heard December 14, 2023

##### 1.    Plaintiff's Requests

###### a.    Plaintiff's Request for Post-Complaint Claims Handling Documents and Defendant's Request to Partially Clawback the One Post-Complaint UIM Worksheet it Inadvertently Produced

Plaintiff argues that because an insurer's duty to interact with insureds in good faith encompasses the entire relationship, both pre- and post-litigation, Plaintiff is therefore entitled to discovery of post-complaint claims handling information. Plaintiff relies on *U.S. General, LLC v. GuideOne Mut. Ins. Co.*, 22-1145, No. 2022 WL 17576353 (10th Cir. Dec. 12, 2022) (unofficially published). In that case, the Tenth Circuit recognizes that under Colorado law, the insurer's duty of good faith encompasses the entire relationship with the insured—including after a complaint is filed—and the insurer can therefore be held liable for post-complaint delay in paying an undisputed claim amount. *Id*. at *4-6. But even if the case had precedential value, which it does not, the opinion does not address the scope of discovery. The case does not support Plaintiff's contention in the slightest.

Federal Rule 26(b) does not ordinarily permit discovery of documents that Defendant or its representatives created for use in litigation. Fed. R. Civ. P. 26(b)(3)(A) (exempting from discovery "documents . . . prepared in anticipation of litigation or for trial" by a party or its representative). Under Rule 26(b), the obligation is on "the party seeking protection to show that

the requested materials were prepared in anticipation of litigation or for trial by or for the party

or the party's attorney." *Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020

WL 6119962, at *12-13 (D. Colo. Oct. 15, 2020). Defendant has met that burden here. The

information that Defendants asserts is work product for use in this litigation was added to the

document after Plaintiff filed this lawsuit and consists of notes for the Defendant's representative

to use and discuss with Defendant's attorney concerning questions of strategy and discovery to

undertake in this case.

The court also agrees with the caselaw that Defendant cites, which is directly on point

and which clearly rejects Plaintiff's position: *Johnston v. Standard Fire Insurance Co*., No. 20-

cv-02106-CMA-MEH, 2022 WL 1225311 (D. Colo. Apr. 25, 2022).

> [F]rom a practical standpoint, requiring production of post-litigation claim notes
> would necessarily result in inconsistent discovery obligations between parties.
> Once an insured files suit, insurers are required to defend against claims of breach
> of contract and bad faith, and they are subject to the discovery rules and deadlines
> set by courts. If insurers are required to continue to evaluate claims post-litigation
> and provide information to plaintiffs, plaintiffs could simply circumvent discovery
> rules and deadlines by submitting new information and demanding an insurer's
> post-litigation analysis. This is not what the law requires. To hold otherwise would
> incentivize plaintiffs to rush to the courthouse to file a lawsuit and then continue to
> submit records to insurers in an attempt to avoid the discovery process.

*Id.* at *4. *See also Stanley v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-00996-NYW-NRN, 2023

WL 2479953, at *13-14 (D. Colo. Mar. 13, 2023) (adopting *Johnston's* reasoning and granting

summary judgment to defendant on insured's common law bad faith claim); *Byron-Amen v. State

Farm Mut. Auto. Ins. Co*., No. 21-cv-02364-NYW-NRN, 2023 WL 2632783, at *2 (D. Colo.

Mar. 24, 2023) (stating that "*GuideOne* . . . did not address the issue of relevance at all," and

denying reconsideration of order that denied the insured's motion to compel post-litigation

claims notes as irrelevant to her breach of contract and bad faith claims). **In short, Plaintiff's request for this discovery, and her arguments in support thereof, are frivolous.**

For much the same reasons, Defendant's request to "clawback" the post-complaint claim analysis that it inadvertently produced—contained within the UIM Worksheet to which Plaintiff points as "cherry picking," Exhibit 3 to her Discovery Statement and bates numbered SFI__002665-73—is GRANTED. The information that Defendant has highlighted for clawing back is plainly protected work product for use in this litigation. Plaintiff has not shown that she has a "substantial need for the materials to prepare [her] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Although Plaintiff argues that at least some of this information is the "smoking gun" that Defendant improperly asserted the driver was at fault for purposes of comparative fault, Defendant notes that it had already determined by the time of the scheduling conference not to pursue that defense. And although Plaintiff *argued* Defendant's pursuit of this comparative fault theory as one of the facts supporting her request for punitive damages, that is one of the "litigation conduct" facts that the court expressly found *unpersuasive* in allowing her to add the punitive damages request. ECF No. 127 (Order of March 28, 2024) at 14, 17.

Accordingly, Plaintiff and her counsel shall immediately destroy every copy of the version of the document SFI__002665-73 (whether paper or electronic) that she used as Exhibit 3 to her Discovery Statement. Plaintiff's counsel shall certify compliance to Defendant within three business days of this order. Plaintiff and her counsel shall use only the further redacted version of that document that Defendant's counsel provided shortly before the December 14, 2023 discovery conference. Defendant shall add these redactions to its privilege log, if it has not

done so already, and provide the amended privilege log to Plaintiff's counsel within three

business days of this order.

> b.    *Plaintiff's Request for Defendant's "File Cabinet" Document Repository*

Plaintiff argues that Defendant has not produced a "File Cabinet" document repository

from its claim file, which Defendant uses to organize and date-stamp the documents received and

sent on an insured's claims. Defendant responds that it has produced the non-privileged portions

of its claim file already, and that the "File Cabinet" is an electronic platform like Outlook or

iManage for law firms, not a document that can be produced. At the hearing, Defendant

confirmed that it has already produced "the claim file cabinet printout. We've given them that."

ECF No. 113 (Hrg. Tr.) at 57. Plaintiff did not dispute this assertion at the hearing. Plaintiff has

not shown that she is entitled to further information from the "File Cabinet" repository, and as

such, this request is denied.

> c.    *Plaintiff's Interrogatory No. 3: Other Instances that Defendant Retained*
> *MAC-Legal for Claims Handling*

Plaintiff requests that Defendant identify other instances in which it retained MAC-Legal

for claims handling in the last seven years. Plaintiff's Discov. Stmt. at 10 (citing Ex. 9, at

Interrogatory No. 3). Plaintiff argues that Defendant's handling of her claim was unreasonable in

part because it delegated claims handling to an inexperienced lawyer and paralegal at MAC-

Legal. She cites a Colorado insurance regulation concerning the obligation to retain claims

records, for insurers and persons who have a "regular business practice" of claims handling.

C.C.R. § 702-1-1-7(5)(E)(4). Plaintiff also cites *Jewkes v. USAA Cas. Ins. Co.*, No. 13-cv-01673-

RPM, ECF No. 20 (slip op.) at 2 (D. Colo. June 26, 2014), as reflecting that an insurer's "track

record and history with any such consultant or assistance (such as a medical or engineering

consultant) is relevant to the reasonableness of Traveler's reliance on such claims advice." Plaintiff's Discovery Statement at 11.

Defendant opposes, arguing "[t]he general rule is that evidence regarding other insurance claims is not admissible in this District." Defendant's Discovery Statement at 15 (citing *Cunningham v. Standard Fire Ins. Co*., No. 07-cv-0538-REB-KLM, 2008 WL 2902621, at *9 (D. Colo. July 24, 2008); *Bituminous Cas. Corp. v. Monument Well Corp*., No. 06-cv-02294-WYD-MEH, 2007 WL 2712347, at *1 (D. Colo. 2007)).

Plaintiff's citations do not support her request. First, the insurance regulation only imposes a records retention obligation on persons whose regular business practice is to provide claims handling; it says nothing about whether an insurer must provide discovery of other instances in which it retained a particular vendor for claims handling. Plaintiff asserts that she is claiming that Defendant is "essentially, laundering their claim handling process through the lawyers who are not subject to these DOI regulations so that they don't have to comply with them," *id*. at 74 (*see* ECF No. 131, Am. Complaint ¶¶ 123-124), and she argues that Defendant "put it at issue in this case" in asserting that the regulations do not apply to MAC-Legal's work for Defendant. ECF No. 113 (Hrg. Tr.) at 73. But Plaintiff misconstrues the significance of that argument. Defendant has argued that this insurance regulation does not apply to MAC-Legal's work, but Defendant did not withhold non-privileged information on that basis. That was the subject of the court's order in February 2024. *See* ECF No. 109 (February 9, 2024 Order ) at 8. Defendant has already produced the discoverable claims-handling information from MAC-Legal's files.

Second, the slip opinion in *Jewkes* is not published (even unofficially), and the case does

not address the scope of discovery.[1] *Jewkes* simply notes that:

> USAA relies on [its claims adjuster]'s subjective evaluation of the plaintiff's claim [in which she relied on expert reports from an engineering firm and an environmental and industrial hygiene service company]. The issue is the reasonableness of the company's action, an objective standard. The veracity of the opinions expressed in those expert reports, the quality of the investigations done and the competence of the investigators are relevant issues and the plaintiff's initial response [to the insurer's summary judgment motion] demonstrates that these questions should be answered by a jury.

*Jewkes*, slip op. at 1, 2.

Certainly, the veracity and competency of experts' opinions and investigations on which a claims adjuster relies are relevant to whether an insurer acted reasonably or unreasonably in handling an insured's claim. But here, Plaintiff's claim is that the particular MAC-Legal lawyer and paralegal who were assigned to Plaintiff's claim were not experienced or competent in claims handling. Yet Plaintiff asks for every instance that Defendant retained the entire law firm for claims handling. This is overbroad.

Even as to the specific MAC-Legal lawyer and paralegal in question, Plaintiff does not articulate why their work for Defendant *on other insureds' claims* handling would be probative of their relative competence or incompetence in handling Plaintiff's claim. Even if Defendant answered this interrogatory and identified the other insureds' claims that the lawyer and paralegal handled for Defendant, how would Plaintiff (or a jury) evaluate the veracity or

---

[1] *Jewkes* is also in part no longer good law. *See Green Earth Wellness Center, LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836-37 (D. Colo. 2016) (disagreeing with *Jewkes'* denial of an insurer's summary judgment motion as having improperly placed the burden of proof on insurer to show its reliance on experts was reasonable, when the burden is instead on the insured to prove those actions were unreasonable).

competency of their handling unrelated claims? Plaintiff does not seek, and this court would reject as frivolous, any request for the complete claim files for those unrelated claims. In short, even if narrowed to just the lawyer and paralegal in question, Plaintiff's interrogatory seeks information that is not probative of the reasonableness or unreasonableness of Defendant's retention of MAC-Legal or the particular lawyer and paralegal in question, or at best seeks information that is only marginally relevant and which would be disproportional or unduly burdensome to produce. *See, e.g., Cunningham*, 2008 WL 2902621, at *9 (finding that the insurer's "conduct with regard to other claims" is not relevant). The disproportionality and undue burden are particularly apparent in the several subcategories of information that Plaintiff requests as to each instance of claims handling over the last seven years: the claim number, claimant's name, adjuster's name, and a description of all activities that MAC-Legal performed for Defendant.

Moreover, Plaintiff already has the deposition testimony of Defendant's claims adjuster (Mr. Burnham) that he has hired MAC-Legal before. Plaintiff's Discovery Statement at 10. In short, Plaintiff's request to compel Defendant to answer Interrogatory No. 3 is frivolous or very close to it, and it is denied.

        d.      *Plaintiff's Request for "Meaningful Organization of Medical Records and Knowledge Guide Materials Produced in Discovery"*

Plaintiff argues that Defendant produced over 1,700 pages of Plaintiff's medical records in no particular order despite the "File Cabinet" platform's ability to date-stamp when Defendant received the documents. Plaintiff further argues that in Defendant's response to Request for Production No. 1—requesting "various claim manual materials"—Defendant improperly refers to a range of over 600 pages (its "Knowledge Guide") without identifying which pages are

responsive to the nine discrete topics contained in that request. Plaintiff argues that this fails to comply with Rule 34(b)(2)(E)(i), which requires producing documents "as they are kept in the usual course of business or . . . organize[d] and label[led] . . . to correspond to the categories in the request."

It does not appear that Defendant specifically addressed this issue in its Discovery Statement; nor does it appear that either side addressed it at the hearing. The date of receipt for specific medical records is relevant and proportional to the bad faith claim. *To the extent* Defendant has not already done so, it shall review how it organized the medical and billing records to which Plaintiff refers as SFI_000091-1676 and SFI_001677-1720. If Defendant did not produce those documents in either of the two organizational formats permitted by Rule 34(b)(2)(E)(i), or if the "File Cabinet" printout it produced to Plaintiff does not make plain when the specific records were received, then Defendant shall either re-produce those documents in a sequence permitted by the rule or produce an index of the date Defendant received them.[2]

This is the only aspect of Plaintiff's many requests addressed at the December 2023 conference that has some merit. And as will be seen below, none of Plaintiff's arguments opposing Defendant's discovery requests has any merit.

2.      *Defendant's Requests*

a.      *Which Defenses Should the Court Consider for the Scope of Relevance?*

At the outset, the court addresses a preliminary issue concerning Defendant's discovery requests: which defenses the court should the court consider for determining relevance?

---

[2] As for Plaintiff's request for claim notes from MAC-Legal and for training logs (lists) of Defendant's adjusters, the court decided those issues in the February 9, 2024 Order.

In the December 14, 2023 conference, because Plaintiff's Discovery Statement purported to back away from seeking wage loss damages, and because Defendant understood at the time that Plaintiff was also withdrawing her assertion that she suffers from depression because of the accident, Defendant argued that the information sought in its discovery requests would support a defense that it noted at the time it would need to raise by amending its pleading: the Plaintiff's fraud or deception in making her claim under the policy. ECF No. 113 (Hrg. Tr.) at 34-35.

In the meanwhile, the court allowed Plaintiff to amend the complaint to add a punitive damages request. Defendant has answered the amended complaint and included therein the affirmative defense counsel had discussed in the December hearing: that Plaintiff engaged in fraud or deception in making her claim under the policy. ECF No. 147. Plaintiff twice moved to strike at least the new affirmative defense because Defendant did not file a motion to amend to support it. ECF No. 129 (before Defendant pleaded the defense); No. 154 (motion to strike the No. 147 answer). As noted above, those motions are not referred to this court.

It is a straightforward proposition that relevance must be determined in light of the claims and defenses currently pleaded in a case, not those which a party anticipates adding later. However, Plaintiff created unique circumstances at the December 14, 2023 discovery conference: her Discovery Statement clearly attempted to deflect the need for Defendant's discovery of her employment information by asserting that she does not seek wage loss damages, which was apparently the first time that Plaintiff communicated that significant change of position to Defendant. Plaintiff was, at best, cryptic in attempting to draw a distinction between wage loss and loss of the opportunity to continue pursuing the medical billing business that she had started before the accident. At the same time, it would be highly inefficient to ignore

intervening changes in the claims and defenses, such that a party would be required to reinitiate the discovery process simply because they later added a new claim or defense to which the discovery would have a more obvious relevance.

In this case, the court need not resolve those issues because Defendant's discovery requests at issue are relevant to defenses it had pleaded at the time. At the time Defendant propounded and argued the discovery requests that are at issue here, Defendant had an affirmative defense based on the terms and conditions of the policy:

> Plaintiff's claims are subject to, and limited by, the terms and conditions of the subject policy, including but not limited to the policy conditions, coverage limits, and exclusions to coverage, and the same are plead[ed] herein in extensor.

ECF No. 90 at 26 (Sixth Affirmative Defense).[3] The policy at issue provides, for instance, that Defendant has "no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us: * * * B. A person seeking any coverage must: 1**. Cooperate with us** in the investigation, settlement or defense of any claim or suit." ECF No. 50-7 at 4 (emphasis added, initial paragraphs in "Duties After an Accident or Loss," bates numbered SFI_000038, in copy of policy attached to Plaintiff's motion to add punitive damages request).

At the time of the December 14, 2023 discovery conference, Defendant also had at least three other affirmative defenses to which its discovery requests may be relevant:

> 8. Plaintiff has failed to submit evidence of and reasonable proof in support of those damages for which she claims a right to recovery in this action.
>
> * * *
>
> 12. Plaintiff's injuries or damages, if any, may be the result of pre-existing conditions and/or subsequent injuries.

---

[3] *See also* ECF No. 146 at 12 (PowerPoint presentation of December 14, 2023 hearing, quoting this affirmative defense as one to which the subject discovery requests were relevant).

* * *

14. While Standard Fire affirmatively disputes and denies that it has breached its contract of insurance with the Plaintiff, strictly arguendo and in the event a breach is otherwise found, Standard Fire asserts that any such breach was induced, caused, or contributed to by the acts, inaction and conduct of the Plaintiff, thereby relieving Standard Fire from any and all liability.

ECF No. 90 at 26 (Eighth, Twelfth, and Fourteenth Affirmative Defenses).

In short, the court analyzes the relevance of Defendant's pending discovery requests in light of the above affirmative defenses that Defendant had pleaded at the time of the December 14, 2023 conference. The court does not decide whether the subject discovery is also relevant to the new affirmative defenses that Defendant purports to add in ECF No. 147.

    b. *Defendant's Request for Releases of Plaintiff's Employment Information*

Defendant requests that Plaintiff be compelled to execute releases for her employment information. Defendant argues that "Plaintiff claimed approximately $400,000 in future lost wages at one point during the claim adjustment." Def. Discov. Stmt. at 1 (citing Def. Ex. 3, 04/30/21 Claim Note). Defendant further argues that documents produced to date "indicate[] that Plaintiff has struggled with keeping regular employment for years due to various reasons—all unrelated to the car accident." *Id*. at 1-2 (citing Def. Ex. 4, 2017 Pre-Accident Medical Record mentioning "extreme pain," loss of her job, and a "struggle[] with depression all her life"; Def. Ex. 5, 2018 Pre-Accident Medical Record reflecting Plaintiff was not employed at that time). Defendant further argues that the tax returns that Plaintiff has disclosed (which apparently do not include all five years that Defendant requests) "similarly show[] very low and inconsistent earnings that are incompatible with Plaintiff's claimed future lost wages." *Id*. at 2. Defendant seeks releases from Plaintiff so that it may subpoena her employment information from her prior

employers.

In Plaintiff's Discovery Statement (submitted the same day as Defendant's), Plaintiff notes that there are nine releases at issue. She argues that Defendant could have sought this information in adjusting her claim before litigation, and that by not doing so, Defendant is barred by "the doctrines of waiver, estoppel, laches, proportionality," and "various permutations of Colorado law standing for the notion that if an insurer foregoes obtaining some piece of information or documentation during its claim handling and evaluation, that it cannot later seek a 'do-over' when that claim handling and evaluation is called out as being deficient." Plaintiff's Discov. Stmt. at 19. Plaintiff cites several cases in support of that proposition. *Id*. at 18-20.

As for the allegedly disproportionate aspect of this discovery, Plaintiff notes that she

is claiming the inability to pursue the career/business venture of her choice and dreams, and the inability to work as she used to. Plaintiff has in fact continued to work and earn a living after the accident in a different employment capacity (as a real estate agent instead of pursuing and building her own medical billing business). To that end, Plaintiff has not presented in this litigation a computation of damages for wage loss, and does not intend to. Thus, these releases seek information that is wholly irrelevant to this litigation.

Plaintiff's Discov. Stmt. at 19 n. 6.

At the December 14, 2023 conference, Defendant stated that this was the first time it learned that Plaintiff was no longer pursuing the wage loss that she had claimed before litigation. The court notes that in the April 12, 2023 Scheduling Order, Plaintiff included "income loss and/or earning capacity" among the damages that she seeks in this case. ECF No. 30 at 7-8. Even Plaintiff's current amended complaint (filed April 11, 2024) reflects her wage loss claim without noting that she has withdrawn that request. ECF No. 131 ¶¶ 61-66. For instance, the current complaint alleges that "Travelers' requirement that Plaintiff get a work restriction letter from her

doctor to be able to evaluate her wage loss claim and failure to pay for her appointment to get

that record improperly dilutes Plaintiff's UIM benefits that she is owed under the policy." *Id.*

¶ 66. This allegation does not make plain that Plaintiff no longer seeks the wage loss that she

claimed before this litigation. To the contrary, it seems to imply that she does still seek wages

that she has lost due to the accident.

In addition, Plaintiff alleges:

> Also on March 3, 2021 Plaintiff sent to Ms. Belletire and Travelers a 9-page victim impact statement detailing her injuries from the accident and how they had affected her life, including issues with ongoing pain that precluded her from being able to earn a living to the same level that she did prior to the collision.
> In her March 3, 2021 victim impact statement Plaintiff explained to Travelers that since the accident she was experiencing recurring neck pain, headaches and numbness into her hands and fingers that she had never experienced before the July 31, 2020 collision.
> In her March 3, 2021 victim impact statement Plaintiff explained to Travelers that her neck pain, headaches and numbness in her upper extremities from the collision precluded her from being able to work for a full day at her computer like she had been able to do for decades prior to the July 31, 2020 collision.

ECF No. 131 (Am. Complt.) ¶¶ 36-38. *See also* ECF No. 146 (Defendant's PowerPoint

presentation) at 16-18 (quoting excerpt from the victim impact statement in question, bates

numbered SFI_1938-1946, "prevents me from being able to work at my computer for a full day

like I used to do. . . as I had done for 25 plus years;" "Before 7-31-2020 I worked at my

computer from 8 to 12 hours a day with no issues.").[4]

---

[4] At the December 14, 2023 conference, Defendant also asserted that Plaintiff's Discovery Statement was the first time it learned that Plaintiff has continued to work after the accident. The current record before the court is too limited for the court to fully that assertion, but Defendant does cite Plaintiff's victim impact statement wherein she asserted her injuries from the accident "have forced me into early retirement." ECF No. 146 at 17.

If Plaintiff's only claims in this case were for bad faith, then her opposition to this discovery would have merit. When the insurer has paid all benefits available under a policy before the insured sues, and there is no breach of contract issue in the case, then the reasonableness of the insurer's conduct in adjusting the claim is measured by what the insurer knew at the time. In a bad-faith-only case, the insurer cannot use civil discovery to shore up its earlier decisions with information that it could have sought at the time but did not. *Schultz v. Geico Casualty Co.*, 429 P.3d 844, 846 (Colo. 2018) (the reasonableness of an insurer's coverage decision "must be evaluated based on *the evidence before it when it made its coverage decision*").

But Plaintiff's case is not limited to bad faith claims; she also brings a breach of contract claim. ECF No. 131 (Am. Complt.) at 15 (Second Claim for Relief). It is undisputed that Defendant has not paid Plaintiff the full $250,000 policy limit for UIM benefits. Accordingly, the scope of discovery in this case is clearly not governed by *Schultz*. "Courts in this District routinely follow *Schultz*—**except in cases where an insured raises a breach of contract claim.**" *Rosen v. Nationwide Prop. & Cas. Ins. Co.*, No. 22-cv-01378-DDD-SBP, 2023 WL 11113895, at *7 (D. Colo. Oct. 18, 2023) (emphasis added, note omitted, collecting cases), *on reconsideration,* 2024 WL 2245174 (D. Colo. May 17, 2024).[5] *See, e.g.*, *Martinez v. Nationwide Affinity Ins. Co. of Am.*, No. 21-cv-02495-CNS-SKC, 2023 WL 3865717, at *3 (D. Colo. June 7,

---

[5] Later, when the insurer in *Rosen* filed its answer asserting as a defense that the insured failed to cooperate, the court granted its motion for reconsideration and compelled the discovery relating to the insured's medical history. *Id.*, 2024 WL 2245174 at *3 ("Because Nationwide's affirmative defenses now make Plaintiff's prior medical history directly relevant, the court concludes that *Schultz* does not apply to this case.").

2023) (holding that a subpoena from an insurer seeking bank records was not relevant to the plaintiff's bad faith claim under *Schultz*, but "that the information sought is relevant to the breach of contract claim and Nationwide's related defenses"); *Rowell v. Nw. Mut. Life. Ins. Co.*, No. 21-cv-00098-PAB-NYW, 2021 WL 5072064, at *5 (D. Colo. Aug. 23, 2021) (recognizing that "the question of reasonableness is not an element of a breach of contract claim," in holding that "an insurer's failure to seek certain information during the adjustment of a claim does not necessarily form a bar to further discovery once litigation commences for breach of contract") (collecting cases); *Sack v. Colo. Farm Bureau Ins. Co.*, No. 20-cv-2580-WJM-NYW, 2021 WL 4991180, at *3 (D. Colo. Oct. 27, 2021) (holding that a medical report that was not available to the insurer at the time of its decision was "inapposite to the bad faith analysis"), *motion to amend denied*, 2022 WL 1211583 (D. Colo. Apr. 25, 2022).

In short, because Plaintiff brings a breach of contract claim for additional UIM benefits, she relies on clearly inapplicable caselaw to oppose Defendant's discovery of her employment information. Nor is the discovery Defendant seeks disproportional to the needs of the case. Though there are nine former employers or clients of Plaintiff whom Defendant wishes to subpoena, Plaintiff seeks to recover significant damages: $232,000 remaining in the policy's limit that Defendant did not pay her; up to twice the covered benefit ($500,000) for bad faith; and her attorney's fees and costs—in other words, at least $732,000 *plus* attorney's fees and costs. *See, e.g.*, ECF No. 30 (Scheduling Order) at 8. Defendant has pointed to statements Plaintiff has made in her victim impact statement (and perhaps elsewhere) that the accident has markedly reduced her ability to work and to earn an income. Defendant now seeks to confirm the facts concerning Plaintiff's actual employment from her former employers, who are indisputably

the best objective source of that information. These facts bear directly on at least Defendant's

sixth, eighth, twelfth, and fourteenth affirmative defenses, as noted above, because Plaintiff's

prior and current employment is directly relevant to whether her statements during the claim

adjustment process were truthful and whether she was cooperative with Defendant's attempts to

investigate her claim. Plaintiff's filings to date also make plain that despite disclaiming a "wage

loss" claim, she nonetheless continues to seek economic damages for her future income potential

versus her pre-accident income potential. Her employment information is relevant to that issue as

well.

Neither are the specific details that Defendant seeks concerning Plaintiff's employment

disproportional, harassing, or otherwise objectionable. Defendant focuses on relevant

employment information, and since Defendant plans to subpoena the documents from others, not

Plaintiff, she lacks standing to object on the basis of undue burden. *See, e.g., Vyanet Operating

Group, Inc. v. Maurice,* No. 21-cv-02085-CMA-SKC, 2023 WL 3791458, at *1, 3 n.3 (D. Colo.

June 2, 2023) ("in this district, a party has no standing to quash a subpoena served on a third

party unless a claimed privilege or privacy interest is implicated," and "even where a party has

standing to quash a subpoena based on a privacy or personal interest, they lack standing to object

based on undue burden").

Plaintiff also complains that Defendant should have requested her employment

information first from Plaintiff under Rule 34, and only subsequently should Defendant be

allowed to subpoena that information from her former employers and clients. Plaintiff's Discov.

Stmt. at 17. If the court had before it motions to quash the subpoenas—which it does not—it *may*

find that a subpoena would be unduly burdensome to the non-party if the subpoena-issuer could

have, but did not, first seek the discovery from a party. *See, e.g.*, *Al Muderis v. Hernandez*, No. 20-mc-00090-RM, 2021 WL 119348, at *2, 5 (D. Colo. Jan. 13, 2021). However, Plaintiff simultaneously argues that if Defendant had issued her a discovery request for her employment information, she would have objected because the request would require her to create or prepare new documents only for the production. Plaintiff's Discov. Stmt. at 17. This argument is therefore at best only obstructive.

Accordingly, Defendant's request to compel Plaintiff to releases for her employment information is GRANTED.

      c.      *Plaintiff's Responses to Interrogatories 1, 3, 7, 8, 9, and 10: Generic References to Entire Disclosures*

Defendant asserts that Plaintiff has responded to several interrogatories by generically referring to thousands of pages or entire disclosures. Plaintiff does not appear to address this issue in her Discovery Statement, and neither side seems to have raised the issue at the conference. This issue is quite similar to Plaintiff's request, above, that under Rule 34(b), Defendant did not properly identify which manuals were responsive to each of the subtypes Plaintiff requested. Here, Rule 33 expressly provides the standard:

> **(d) Option to Produce Business Records.** If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> **(1)** specifying the records that must be reviewed, **in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could**.

Fed. R. Civ. P. 33(d)(1) (emphasis added).

The court could also cite extensive caselaw applying Rule 33(d). But here, the Rule itself suffices: if Plaintiff responded to any interrogatory by identifying an entire disclosure or a page range of thousands, this plainly does not comply with Plaintiff's obligations under Rule 33(d). She shall supplement her responses to interrogatories 1, 3, 7, 8, 9, and 10 to fully comply with the rule.

        d.      *Plaintiff's Response to Interrogatory 5: Healthcare Providers who Recommend Future Treatment*

Defendant argues that Plaintiff responded to this interrogatory merely by asserting her belief that she will need ongoing treatment, but that she did not identify therein any health care provider who has recommended such treatment. Plaintiff does not address this issue in her Discovery Statement, and neither side raised it at the conference. The identity of healthcare providers who have recommended future treatment for injuries or conditions that Plaintiff ascribes to the accident is directly relevant to all of Plaintiff's claims, and she does not argue that this discovery is objectionable. Plaintiff shall supplement her response to this interrogatory to provide a complete answer identifying all such healthcare providers.

        e.      *Plaintiff's Responses to Requests for Production 8, 13, and 14, and Request for Admission 13: Did the Parties Fully Confer?*

Request for Production No. 8 asks for Plaintiff's federal and state tax documents from the five years prior to the accident. Request for Production No. 13 seeks all of Plaintiff's medical records related to treatment for depression from 10 years prior to the date of the car accident to the present. Request for Production No. 14 requests all records and documentation regarding any mental status exam related to Plaintiff's application for social security disability.

Defendant notes that Plaintiff produced two years of tax records (for 2017 and 2018) and

that Plaintiff agreed to supplement, but she had not done so as of the date Defendant submitted its Discovery Statement. Defendant further explains that counsel attempted to confer on these discovery requests but had not heard back when the Discovery Statement was due. Discovery Statement at 10 n.1.

It is thus unclear to the court whether Defendant still needs a ruling on these requests. Although the court is loath to receive another discovery motion in this case, the parties shall fully confer on these responses if they have not already done so. Defendant may raise any issues that remain in a separate motion to compel.

B.      *Defendant's Motion for a Rule 35 IME of Plaintiff*

Rule 35 provides that "[t]he court where the action is pending may order a party whose … physical condition… is in controversy to submit to a physical … examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "The order … may be made only on motion for good cause." *Id.* Rule 35(a)(2)(A). "Rule 35 requires an affirmative showing by the moving party that each condition as to which the examination is sought is really and genuinely in controversy and good cause exists for ordering each particular examination." *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-01322-JLK-NYW, 2019 WL 11868519, at *10 (D. Colo. July 19, 2019) (citing *Schlangenhauf v. Holder*, 379 U.S. 104, 118 (1964)). In *Schlangenhauf*, the Supreme Court held:

> The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words '* * * good cause * * *,' the Rules indicate that there must be greater showing of need under Rule . . . 35 than under the other discovery rules.

*Schlagenhauf*, 379 U.S. at 118 (internal quotation marks omitted).

Rule 35's good cause standard thus acknowledges an individual's right to privacy. *Id.* at 112; *see also Schultz,* 429 P.3d at 847 ("a medical examination against [a litigant's] will . . . implicates her privacy interests in her body and her health"). "Rule 35, therefore, requires discriminating application by the trial judge, … [and] the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule":

> Of course, there are situations where the pleadings alone are sufficient to meet these requirements. **A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury**.

*Schlagenhauf*, 379 U.S. at 119 (internal citation omitted, emphasis added).

In this case, Defendant argues that there is good cause for an IME in that Plaintiff asserts that she incurred several types of injuries in the accident—with permanent, current, or lingering symptoms and impairments—for which she continues to seek UIM benefits in her breach of contract claim. Plaintiff opposes Defendant's request for an IME primarily because (1) in her view, the caselaw that restricts discovery in bad faith cases also applies to breach of contract cases, and (2) Plaintiff already underwent an IME at Defendant's request in March 2022— several months before she filed this action. Plaintiff also appears to take issue with having to travel to Colorado at her expense to attend the IME in Colorado Springs, where Defendant's chosen provider is located.

As noted above, the caselaw that limits an insurer in bad faith cases to the information it knew at the time of the alleged bad faith conduct does not apply when the insured also brings a breach of contract claim. *Anchondo-Galaviz*, for example, expressly rejected the position that an

insurer waives a Rule 35 examination by not pursuing a medical examination before litigation, when the plaintiff's condition remains at issue. *Anchondo-Galaviz*, 2019 WL 11868519, at *10 (citing *Morrison v. Chartis Prop. Cas., Co.*, No. 13-CV-116-JED-PJC, 2014 WL 1323743, at *2 (N.D. Okla. Apr. 1, 2014); *Ligotti v. Provident Life & Cas. Ins. Co.*, 857 F. Supp. 2d 307, 318–19 (W.D.N.Y. 2011)). And Plaintiff's claims put her present physical condition at issue.[6]

Plaintiff contends that the requested IME would be duplicative of the pre-litigation IME and, therefore, Defendant has not shown good cause. Plaintiff points to Judge Neureiter's question in the April 2023 scheduling conference to Defendant's former counsel, that "you're not going to take another Rule 35 exam, are you, after . . . having done an IME?" ECF No. 38 (Hrg. Tr.) at 23. Former counsel asserted they would if there were new issues, but not as to "the same issue that their IME already . . . related to." *Id*. at 23-24. Judge Neureiter did not purport to decide the question; rather, he said "you're going to have to convince me." *Id*. at 24. One IME does not by definition exclude a second:

> When permanent injuries are claimed or under other appropriate circumstances, the court may allow a second examination just before trial. *Galieti v. State Farm Mut. Auto. Ins. Co.,* 154 F.R.D. 262 (D. Colo. 1994). A stronger showing of necessity is usually required for a second examination. *Furlong v. Circle Line Statue of Liberty Ferry, Inc.,* 902 F. Supp. 65 (S.D.N.Y. 1995).

*Dillon v. Auto-Owners Ins. Co.*, No. 14-cv-00246-LTB-MJW, 2014 WL 4976315, at *2 (D. Colo. Oct. 6, 2014). It also bears noting that "the Rule 35 decision is intensely fact-specific, and no general rules can be set out." 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2234.1 (3d ed.).

---

[6] It appears Plaintiff also still seeks non-economic damages for alleged impairment of quality of life and emotional distress (ECF No. 30, Scheduling Order at 8), but it does not appear that Defendant seeks an IME of Plaintiff's mental or emotional condition.

Consistent with the early discussion at the April 2023 Scheduling Conference, the parties continue to vigorously dispute whether, before this litigation, Plaintiff asserted all of the conditions that she now alleges stem from the accident—particularly whether she suffered a concussion or other head injury in the accident. But unlike at the time of the Scheduling Conference, Plaintiff's March 2022 IME is now over two years old, and the parties have in the meantime undertaken significant discovery. In the summer of 2023, Plaintiff underwent an examination with her own medical expert (Dr. Hurst) who opines that Plaintiff suffered a concussion in the 2020 car accident. ECF No. 100-1 at 3. Dr. Hurst also notes that Plaintiff "continues to experience debilitating symptoms on a daily basis." *Id.* at 7. The very fact that *Plaintiff* has obtained a more recent examination herself—and claims that she has ongoing debilitating symptoms—highlights why Defendant should be allowed to conduct an updated IME to fully explore the conditions and injuries for which Plaintiff now seeks damages. Dr. Hurst's report is a new fact that allows Defendant to make the strong showing required to obtain an updated IME of Plaintiff on the subjects identified in the notice. ECF No. 99-3.

This leaves the question of the location for the IME, and who should be responsible for Plaintiff's travel expenses if it is to be held in Colorado as Defendant has specified.[7] The court is persuaded that Plaintiff, having chosen to bring her suit in Colorado, has assumed the responsibility to travel to this state at her own expense to attend the IME:

---

[7] Defendant notes that instead of the originally-noticed location in Colorado Springs, Dr. Rauzzino has since moved to Lone Tree, Colorado. ECF No. 138. Lone Tree, of course, is much closer to the Denver metropolitan area, and therefore the court does not need to address Plaintiff's arguments complaining of needing to drive from Denver International Airport to Colorado Springs.

> "The general rule" regarding the location of Rule 35 examinations is that a plaintiff who brings suit in a particular forum may not avoid appearing for an examination in that forum. Courts have developed a general rule that plaintiffs should submit to the examination in the forum in which they chose to bring suit. This rule ensures that the examining specialist is available as an expert witness at trial, and accounts for the fact that the facilities and equipment an examiner needs are likely at his place of practice.
>
> To be excepted from this general rule, a plaintiff must show that traveling to the examination poses undue burden or hardship.

*Cameron v. Gutierrez*, No. CV 19-841 GJF/KK, 2020 WL 5326946, at *3 (D.N.M. Sept. 4, 2020) (note omitted; cleaned up, citing *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 399-400 (S.D. Tex. 2013); *Sanchez v. Swift Transp. Co. of Ariz., L.L.C.*, No. PE: 15-cv-15, 2016 WL 10588049, at *3 (W.D. Tex. June 22, 2016); *Mansel v. Celebrity Coaches of Am., Inc.*, No. 2:13-cv-01497-JAD, 2013 WL 6844720, at *1 (D. Nev. Dec. 20, 2013)). And "[t]he general rule is [also] that plaintiffs are required to bear the costs and difficulties of travel, including travel from other forums." *Pepe v. Casa Blanca Inn & Suites, LLC*, No. 18-cv-476 JCH/JFR, 2019 WL 10960399, at *1 (D.N.M. July 11, 2019) ("Although exceptions may be made due to financial hardship, Plaintiff has made no argument that she is financially unable to travel. The Court, therefore, denies Plaintiff's request for travel costs associated with the IME.") (cleaned up).[8] *See also Wagner v. Apisson*, No. 2:13-cv-937, 2014 WL 5439592, at *3 (D. Utah Oct. 24, 2014)

---

[8] *Pepe* cites *Jones v. Greyhound Lines, Inc.*, No. 08-1185-MLB-DWB, 2009 WL 1650264, *5 (D. Kan. Mar. 8, 2011) ("Absent a clear showing that plaintiff is indigent, Plaintiff will be required to pay for his own transportation to the [IME] examination."); *Maes v. Progressive Direct Insur. Co.*, Civ. No. 18-1038 KBM/KK, 2019 WL 998811, *3 (D.N.M. Feb. 27, 2019) (concluding that travel expenses were not reimbursable); *Hatchett v. United Parcel Serv. Inc.*, No. 13-cv-1183 MCA/SMV, 2014 WL 12792348, *2 (D.N.M. June 12, 2014) (requiring out of state plaintiff to travel to Albuquerque for IME where there was no evidence of financial hardship or physical inability to travel).

("The travel costs Plaintiff will incur in his trip to Utah are ordinary litigation expenses and should have been reasonably anticipated when Plaintiff brought suit in this district. Therefore, Plaintiff is responsible for all costs associated with traveling to Utah for the above ordered deposition and IME."). Plaintiff initiated this lawsuit and put her physical condition at issue. She must now submit to discovery, including an IME and a deposition, and will necessarily incur expenses and costs in the process. *See Pearson v. Progressive Direct Insur. Co.,* CIVIL NO. 10-130 JC/LFG, 2010 WL 11622781, *2 (D.N.M. June 7, 2010) (Defendant employer did not need to pay plaintiff for attending IME, recognizing "[a] party is not entitled to file a lawsuit and then object to the discovery process because it will be inconvenient or because participation in discovery will cause him to lose money.").

Much as in *Pepe*, Plaintiff complains of the inconvenience and expense of traveling from Florida to Colorado. Unique to this case, Plaintiff also points out that Defendant already required her to travel from Florida to Chicago for the 2022 IME, at her expense. That is one of the facts on which Plaintiff bases her bad faith claim, asserting that the policy did not require her to pay those travel expenses. But Plaintiff does not assert that she is financially unable to travel from Florida to Colorado for the IME. That is an ordinary litigation expense Plaintiff should have anticipated when she filed this action in Colorado—where the accident occurred—instead of Florida, where she lives. And it would be premature for this court to take a side on the parties' underlying dispute of whether the policy required Plaintiff to travel out of state at her expense for the 2022 IME. The court therefore will not shift the cost of Plaintiff's travel to Defendant.

Nor is the court persuaded that the IME should be videotaped or audiotaped, as Plaintiff suggests in her response brief. Defendant argues that such recordings are disfavored and objects,

citing *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 397 (S.D. Tex. 2013). The party requesting that an IME be recorded has the burden of showing that the recording—as a form of protective order under Rule 26(c)—is necessary. *See, e.g.*, *Dillon v. Auto-Owners Ins. Co.*, No. 14-cv-00246-LTB-MJW, 2014 WL 4976315, at *2 (D. Colo. Oct. 6, 2014); *Byron-Amen v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-02364-NYW, *slip. op.* ECF No. 28 (D. Colo. Jan. 25, 2022); *Byron-Amen*, 2022 WL 1567563, at *2 (D. Colo. May 18, 2022), *reconsideration denied,* 2023 WL 2632783 (D. Colo. Mar. 24, 2023) (both orders reflecting that the court had found the insured did not show that recording the IME was a necessity). *See also Douponce v. Drake*, 183 F.R.D. 565, 567 (D. Colo. 1998) (declining to permit a third party's presence and tape recording of IME). Showing that recording is necessary requires more than a general distrust of Defendant or its counsel; it requires facts to support that the examiner will use inaccurate or unreliable techniques. *See, e.g.*, *Byron-Amen*, Jan. 25, 2022 order at 14. Plaintiff has not met that burden here.

Accordingly, Defendant's motion for Rule 35 examination is GRANTED. The parties shall promptly confer concerning a date and time for the IME.

### C.    Caution to Plaintiff Concerning Frivolous Arguments and Incendiary Rhetoric

In the February 9, 2024 order—denying Plaintiff's request to depose MAC-Legal personnel and granting MAC-Legal's motion to quash Plaintiff's subpoena—this court noted the inordinate amount of discovery disputes in this case. The court further noted that Judge Neureiter's comment (to Plaintiff's counsel) in the Scheduling Conference presaged the evolution of this case. As Judge Neureiter emphasized, this isn't the IBM antitrust case, and we shouldn't spend thousands of dollars on discovery as though it were. ECF No. 109 at 21-22.

Most of this court's February 9, 2024 criticism of the "drill to the center of the earth approach" was directed to Plaintiff's counsel. *Id*.

Obviously, the parties submitted their respective Discovery Statements for the December 2023 conference *before* the court issued that ruling. Nevertheless, **the court observes that the great majority of Plaintiff's arguments on the informal discovery disputes here were frivolous**. In addition, Plaintiff's Discovery Statement contains many instances of disrespectful attacks on Defendant or its counsel. *See, e.g*., Plaintiff's Discovery Statement at 9 n.4 ("Of course, both of these propositions [of Defendant] are ridiculous and disingenuous."). It is also marked by inflated rhetoric, including that if Defendant did not identify every instance that it retained MAC-Legal for claims handling, it would "likely [be] a due process violation." *Id*. at 9. Such language has not been employed by Defendant in its Discovery Statement or its other filings that have been referred to this court.

In addition, while Plaintiff's response to the Rule 35 motion also predates the February 9, 2024 order, that brief is rife with inappropriate hyperbole and insistence that the court should see every instance in which Defendant or its counsel have not acceded to Plaintiff's discovery demands in this litigation as another example of bad faith. *See, e.g.*, ECF No. 105-1 at 1-3, 19.[9]

---

[9] Plaintiff argues for instance that "[s]uch dishonest gamesmanship should not be rewarded by granting Travelers a 'do-over' of their substandard claim investigation, particularly in light of the context of the prior request for an IME wherein Travelers fraudulently misrepresented the terms of the policy to the brain-injured insured so as to coerce her to travel across the country to attend an IME that it was setting up for secretly anticipated litigation in Chicago. Travelers already obtained one IME under false pretenses, and they must be precluded from doing it again"; "Travelers waited fourteen (14) months after suit was filed to finally decide to demand a Rule 35 examination, all in a transparent attempt to expert shop and obtain a 'do-over' of its pre-litigation, specifically selected, independent medical examination that Travelers obtained by

For example, Plaintiff argues therein that Defendant obtained Plaintiff's pre-litigation IME by fraud, or fraudulently. But the policy expressly provides that after an accident, the insured has an obligation to **"[s]ubmit, as often as we reasonably require . . . [t]o physical exams by physicians we select. We will pay for these exams."** ECF No. 99-9 (the policy) at 2 ¶ 3.a (bates numbered SFI_000038). Plaintiff clearly had an obligation under the policy to attend the pre-litigation IME, if she wished to obtain benefits thereunder. While she certainly can argue that Defendant misrepresented that the policy required her to travel to Chicago at her own expense for the IME, that is a far cry from saying the entire IME was obtained by fraud. Yet Plaintiff ignores this obvious distinction.

*After* the February 9, 2024 order, in a February 14, 2024 filing, Plaintiff's counsel "withdr[e]w any and all references to purported discovery and/or rule violations, misrepresentations, or sanctions etc. from ECF No. 104 as it is agreed that such commentary is unnecessary and detracts from the merits of the case. Undersigned counsel commits to move forward in a more conciliatory, less abrasive manner." ECF No. 112 at 2. But notably, Plaintiff has since filed three motions that seek sanctions: ECF No. 129 (not referred, seeking sanctions under 28 U.S.C. § 1927), No. 154 (same), and No. 148 (seeking exclusion of evidence and arguments under Rule 37).

**The court cautions Plaintiff and her counsel that <u>if any of her additional filings referred to this court include similarly frivolous arguments, deliberately inciting rhetoric, or language reflecting disrespect toward Defendant or its counsel</u>, this court may award monetary sanctions against Plaintiff or her counsel. The court will also consider appointing**

---

fraud"; and "Travelers takes the ridiculous position. . ."

**a special master to govern discovery, at the expense of Plaintiff, as the "party . . . more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3).** To date, Plaintiff has been more responsible than Defendant for an inordinate number of disputes in a case involving a single claimant injured in an auto accident. *See, e.g.,* ECF No. 53 (minutes setting motion hearing and allowing supplemental briefing at Plaintiff's request); ECF No. 75 (order overruling Plaintiff's opposition to the withdrawal of Defendant's former counsel, which Plaintiff occasioned); ECF No. 91 (two-hour discovery conference and hearing on the motion to quash Plaintiff's subpoena); ECF No. 98 (90-minute discovery conference); ECF No. 137 (order overruling Plaintiff's opposition to Defendant's request to extend the schedule so the discovery disputes—on which Defendant has mostly prevailed—could be resolved). If the court deems a special master is warranted, the parties will have an opportunity to be heard before the appointment of such. Fed. R. Civ. P. 53(b)(1). The court also may consider any other form of sanctions authorized under its inherent powers or the Federal Rules of Civil Procedure that it deems necessary to deter conduct that has needlessly complicated this matter.

IV.    *Conclusion*

Accordingly, for the foregoing reasons, the parties' discovery disputes heard at the December 14, 2023 conference are resolved as stated above. Defendant's motion (ECF No. 99) for a Rule 35 examination is GRANTED.[10] The parties shall promptly confer to set a mutually

---

[10] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver

convenient date for the Rule 35 examination to occur at Dr. Rauzzino's offices.

DATED: June 4, 2024                         BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").