IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03287-RM-SBP

LJUBINKA STANISAVLJEVIC,

Plaintiff,

v.

THE STANDARD FIRE INSURANCE COMPANY d/b/a TRAVELERS INSURANCE
COMPANY,

Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION (ECF No.
263) AND DEFENDANT'S MOTION TO ENFORCE ATTORNEY-CLIENT PRIVILEGE
(ECF No. 262)**

**Susan Prose, United States Magistrate Judge**

This matter is before the court on two motions filed by Defendant The Standard Fire

Insurance Company ("Standard Fire"") following the court's Order on Motions issued August 5,

2025 (ECF No. 258): (1) Standard Fire's Motion to Enforce the Attorney-Client Privilege (ECF

No. 262), filed September 19, 2025, and (2) Standard Fire's Motion for Partial Reconsideration

of that Order (ECF No. 263), also filed September 19, 2025. Plaintiff Ljubinka Stanisavljevic

filed her Response to the privilege motion (ECF No. 267) and her Response to the

reconsideration motion (ECF Nos. 269[1], 270-1) on October 10, 2025. Standard Fire filed its

Reply in support of the privilege motion (ECF No. 278) and its Reply in support of the

---

[1] Plaintiff subsequently filed a Notice of Errata (ECF No. 279) correcting certain pin citations in
ECF No. 269. The corrections do not affect the court's analysis.

1

reconsideration motion (ECF No. 277) on November 3, 2025. Both motions are fully briefed and ripe for decision.

These motions have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). *See* ECF No. 25; ECF No. 272. Both motions arise from a discovery dispute and are appropriately resolved by Order. The undersigned has presided over extensive discovery proceedings in this case, including numerous discovery conferences, multiple motions to compel, and related briefing spanning several years, and is familiar with the full record.

For the reasons set forth below, Standard Fire's Motion for Partial Reconsideration (ECF No. 263) is respectfully **DENIED**, and Standard Fire's Motion to Enforce the Attorney-Client Privilege (ECF No. 262) is **TAKEN UNDER ADVISEMENT** pending an in camera review of the contested materials as directed herein.

## BACKGROUND

The court assumes the parties' familiarity with the extensive procedural history of this case and recounts here only those facts pertinent to the two pending motions.

On August 5, 2025, the court issued its Order on Motions (ECF No. 258), resolving, among other things, Plaintiff's Motion to Compel Adjuster Training Materials (ECF No. 194). The court ordered Standard Fire to produce course materials for fifteen specific courses completed by one or more of its claims adjusters during the period January 1, 2020, through November 9, 2022—the date Plaintiff initiated this action in Denver District Court. ECF No. 258 at 24. The court found those courses relevant because they "could show how [the adjusters] were instructed to investigate, evaluate, and process a claim like Plaintiff's, and thus are relevant to

2

the question of whether Standard Fire failed to conduct a reasonable investigation." ECF No. 258 at 24–25. Standard Fire was directed to produce responsive documents within forty-five days. *Id.* at 25.

Following the court's order, Standard Fire's counsel complied and reviewed the potentially responsive materials for the fifteen ordered courses. That review prompted two distinct grounds for Standard Fire's post-order relief:

First, concerning the Motion for Partial Reconsideration (ECF No. 263): Standard Fire's counsel determined that several of the fifteen ordered courses—specifically, the courses addressing negotiation with unrepresented parties, "Know Your Opponent," and the "Module Three Right Counsel Engagement Playbook"—contain materials that Standard Fire contends pertain solely to the handling and litigation of third-party liability claims against Standard Fire's insureds, not to handling of first-party underinsured motorist ("UIM") claims. ECF No. 263 at ¶ 5.

Second, concerning the Motion to Enforce Attorney-Client Privilege (ECF No. 262): Standard Fire's counsel determined that one of the fifteen ordered courses—"Claim—Principles of Good WDL Ready Faith Claim Handling" (the "Good Faith Slides")—is a confidential presentation created and maintained exclusively by Travelers' in-house legal department that Standard Fire asserts is protected by the attorney-client privilege. ECF No. 262 at ¶¶ 4–5. The court granted a partial stay of the production order as to the Good Faith Slides on September 17, 2025. ECF No. 261. On September 19, 2025, Standard Fire produced all other ordered course materials not subject to the stay and filed the instant motions together with a privilege log (ECF No. 262-2) and the declaration of William Kobokovich, Travelers' Vice President and Associate

3

Group General Counsel (ECF No. 262-1).

## ANALYSIS

### I.    Defendant's Motion for Partial Reconsideration (ECF No. 263)

By its Motion for Partial Reconsideration, Standard Fire asks the court to narrow its

August 5, 2025 Order on Motions (ECF No. 258) to exclude from production certain training

courses that, Standard Fire contends, pertain solely to the handling of third-party liability claims

rather than first-party UIM claims like Plaintiff's. Standard Fire argues that this limitation is

warranted by newly discovered information—specifically, the content of the training materials

themselves, which counsel reviewed for the first time after the court's order issued. Plaintiff

opposes, arguing that the motion is an improper attempt to relitigate issues already resolved and

that the materials at issue are squarely within the scope of the court's order. Plaintiff further

argues that Standard Fire cannot satisfy the "new evidence" standard because the materials at

issue were always within its possession, custody, and control, and that counsel's failure to review

those materials prior to the court's order does not render them newly discovered or previously

unavailable. Plaintiff also contends that Standard Fire's attempt to distinguish between first-party

and third-party claim handling is immaterial in this case, because the adjusters who handled

Plaintiff's claim were trained to handle both types of claims and their training was not segregated

by claim type. *See* ECF No. 270-1 at 1–3, 9–11. For the reasons that follow, the motion is

denied.

### A. Legal Standard

The Federal Rules of Civil Procedure do not recognize a "motion to reconsider." *Van

Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Nevertheless, such motions are

routinely entertained by federal courts. *United States ex rel. Superior Steel Connectors Corp. v. RK Specialties, Inc.*, No. 11-cv-01488-CMA-MEH, 2012 WL 3264296, at *1 (D. Colo. Aug. 10, 2012). The grounds for granting reconsideration are, however, extremely limited: (1) an intervening change in controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Reconsideration is appropriate where the court has "misapprehended the facts, a party's position, or the controlling law[,]" but it is not a vehicle to revisit issues already addressed or to advance arguments that could have been raised in prior briefing. *Id*.

Where a party invokes the "new evidence" ground, the evidence must have been genuinely unavailable at the time of the original briefing and not merely unreviewed. *See Weingarten v. Auto-Owners Ins. Co.*, No. 17-cv-01401-MEH, 2018 WL 2561042, at *2 (D. Colo. Apr. 17, 2018) (finding new evidence previously unavailable only where counsel submitted an affidavit establishing the evidence was held in a government criminal prosecution file and thus inaccessible to the parties, and noting that "an unexcused failure to present evidence available at the time . . . provides a valid basis for denying a subsequent motion for reconsideration") (quoting *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). The critical distinction is between evidence that could not have been obtained and evidence that a party simply chose not to gather. *Id*.

**B. Analysis**

Standard Fire's motion does not identify an intervening change in controlling law, and it does not establish clear error or manifest injustice. Its sole asserted basis for reconsideration is

that counsel reviewed its own training materials after the court's order and now characterizes

certain of them as irrelevant to Plaintiff's UIM claim. That is not new evidence previously

unavailable within the meaning of *Servants of the Paraclete*. *See Silverstein v. Wolf*, No. 22-cv-

01817-PAB-NRN, 2026 WL 571884, at *2 (D. Colo. Mar. 2, 2026) (denying reconsideration

where movant "d[id] not identify any intervening change in controlling law or any new evidence

that was previously unavailable" and "d[id] not identify any 'clear error' or 'manifest

injustice'"); *Servants of the Paraclete*, 204 F.3d at 1012.

The premise of the motion is not that new evidence has come to light. Rather, Standard

Fire's argument is based entirely on the content of its own internal training materials—materials

that have been in its possession throughout this litigation. Standard Fire made a deliberate

tactical choice not to review or compile those materials prior to the court's order, based on its

position that Plaintiff's request was overbroad and disproportional. ECF No. 263 at 2–3. That

choice had consequences. The information underlying this motion was not "previously

unavailable" within the meaning of *Servants of the Paraclete*; it was available, and Standard Fire

simply chose not to access it. As this court has recognized, there is no valid excuse for failing to

review potentially responsive discovery materials where that evidence was accessible to the party

at the time of the original briefing. *Weingarten*, 2018 WL 2561042, at *2. Unlike the movant

in *Weingarten*, where reconsideration was granted only because the evidence was locked in a

government criminal prosecution file and was genuinely beyond the party's reach, Standard Fire

has no such excuse. The materials were in its own custody and control at every stage of this

litigation.

Furthermore, the motion advances arguments that could and should have been raised

earlier. Standard Fire's relevance argument—that certain courses pertain only to third-party liability claims—was available to it at every stage of the briefing on the motion to compel. Standard Fire chose not to raise that argument, presumably because doing so would have required the very document review it was simultaneously arguing was disproportional to the needs of the case. That strategic choice does not now entitle Standard Fire to a second bite at the apple. A motion for reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012; *accord Silverstein*, 2026 WL 571884, at *2 ("There is . . . no reason that [the movant] could not have raised this issue as part of his response to [a prior] motion or at oral argument on the motion. A motion for reconsideration is not an appropriate vehicle to advance arguments that could have been raised before.").

Standard Fire's relevance arguments also do not establish clear error or manifest injustice. The court's August 5 order was careful and deliberate. It did not blindly grant Plaintiff's request for fifty-eight sets of course materials spanning a decade. Rather, it specifically identified fifteen courses completed by the adjusters who worked on Plaintiff's claim within the relevant time period, and it grounded its ruling in the well-established principle that relevance under Rule 26(b)(1) is broadly construed at the discovery stage. ECF No. 258 at 22–25. The court explicitly found that the ordered courses "could show how [the adjusters] were instructed to investigate, evaluate, and process a claim like Plaintiff's." *Id.* at 24–25. Standard Fire now asks the court to perform a second-layer relevance analysis on specific subsets of those courses, based on characterizations of their content provided exclusively by Standard Fire itself. The court declines to do so on a reconsideration motion. Standard Fire's contention that certain

negotiation-training materials are categorically irrelevant to a UIM bad faith case—where the core questions include how adjusters were trained to evaluate, negotiate, and resolve claims like Plaintiff's—is a merits argument about the utility of evidence, not a showing of clear error or manifest injustice. Standard Fire's proportionality concerns were considered and accounted for at the time of the original order. Revisiting the court's judgment about those issues is not warranted.

Standard Fire's Motion for Partial Reconsideration (ECF No. 263) is **DENIED**. Standard Fire shall produce all training materials for the courses identified in the court's August 5, 2025 Order (ECF No. 258)—**other than the Good Faith Slides**, for the reasons explained below— within fourteen (14) days of the date of this Order, to the extent not already produced.

## II.    Defendant's Motion to Enforce the Attorney-Client Privilege (ECF No. 262)

By its Motion to Enforce Attorney-Client Privilege, Standard Fire seeks an order permitting it to withhold from production one of the fifteen courses identified in the court's August 5, 2025 Order—the 196-slide presentation this court refers to here as the "Good Faith Slides"—on grounds that it is a confidential attorney-client privileged communication created and maintained exclusively by Travelers' in-house legal department. Plaintiff opposes on three grounds: (1) the Good Faith Slides are not entitled to attorney-client privilege protection because they function as operational claims guidance, not legal advice; (2) Standard Fire waived any privilege by failing to assert it for over two and a half years; and (3) Standard Fire further waived any privilege by placing the subject matter at issue through its affirmative defenses. For the reasons that follow, the court finds that Standard Fire has made a facially substantial privilege showing, and concludes that the waiver arguments raised by Plaintiff present questions that are

8

best addressed after, and in light of, the court's in camera review of the Good Faith Slides. A final ruling on the motion will follow that review.

### A. Legal Standard

In a diversity action, attorney-client privilege is governed by the law of the forum state. *Martensen v. Koch*, 301 F.R.D. 562, 572 (D. Colo. 2014) ("Where, as in this case, subject matter jurisdiction is premised on diversity, the court must apply Colorado's law governing attorney-client privilege." *White v. American Airlines, Inc.,* 915 F.2d 1414, 1424 (10th Cir. 1990) ("In a civil action based upon a state cause of action, state law controls the determination of privileges.")); Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Colorado's attorney-client privilege is codified at Colorado Revised Statute § 13-90-107(1)(b) and protects matters communicated by or to the client "in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000). The privilege applies only where the communication was made "in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *Alliance Constr. Sols., Inc. v. Dep't of Corr.*, 54 P.3d 861, 870 (Colo. 2002) (quoting *Gordon*, 9 P.3d at 1123; quoting *Lanari v. People*, 827 P.2d 495, 499 (Colo. 1992)).

The privilege extends to corporate entities. *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 462 (Colo. App. 2003). For corporate-privilege claims, the Colorado Supreme Court applies the four-factor test articulated in *Upjohn Co. v. United States*, 449 U.S. 383 (1981): (i) the information was given by or to counsel acting as counsel for the corporation; (ii) the purpose of the communication was to allow counsel to provide legal advice; (iii) the employees

were made aware that the purpose was to give or receive legal advice; and (iv) the employees were informed the communication was highly confidential. *National Farmers Union Prop. & Cas. Co. v. Dist. Ct. for City & Cnty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986). The party asserting the privilege bears the burden of establishing each element. *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998).

A court may, in its discretion, conduct an in camera review of allegedly privileged materials where the party opposing the privilege has made a threshold showing sufficient to support a reasonable belief that such review may reveal evidence bearing on the applicability of the privilege. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) (authorizing in camera review to assist courts in resolving privilege disputes); *accord Wesp v. Everson*, 33 P.3d 191, 196 (Colo. 2001) (explaining that the attorney-client privilege applies to confidential communications between attorney and client relating to legal advice).

### B.  Analysis

#### 1.    Standard Fire Has Made a Facially Substantial Privilege Showing

Standard Fire has offered a detailed, sworn declaration from William Kobokovich, Travelers' Vice President and Associate Group General Counsel, asserting that the Good Faith Slides satisfy all four *National Farmers Union* factors. Mr. Kobokovich attests that: (1) the Good Faith Slides were created by him and other members of Travelers' in-house legal department; (2) they were created and are presented to Travelers employees for the purpose of providing legal advice, counsel, direction, and assistance with respect to Travelers' legal rights and obligations in adjusting and handling insurance claims, including an analysis of legal authority and case law; (3) Travelers employees are expressly informed at the outset of each presentation

10

that the materials are confidential and attorney-client privileged and are not to be disseminated;

(4) the slides are not distributed to claims employees in hard copy, electronic, or any other form;

and (5) the slides are kept and maintained exclusively within the in-house legal department. ECF

No. 262-1 at ¶¶ 6–10. Plaintiff does not directly dispute these factual representations, but instead

argues that the materials constitute operational claims guidance and that any privilege has been

waived. ECF No. 278 at 1.

On this record, Standard Fire has made a facially substantial privilege showing. Standard

Fire represents that the Good Faith Slides differ categorically from its Knowledge Guides and

other claims-handling manuals already produced in this litigation—materials that are accessible

to adjusters as operational resources during the claim-adjustment process. ECF No. 278 at 2.

According to the Kobokovich declaration, the Good Faith Slides are legal presentations created

within the in-house legal department, shown only during in-person sessions accompanied by an

express assertion of privilege, and never placed in adjusters' hands in any form. ECF No. 262-1

at ¶¶ 6–10. If those representations are accurate, the distinction is legally significant

under *National Farmers Union* and *Upjohn*. Moreover, the mere fact that the subject matter of a

legal presentation touches on claims handling does not strip the communication of its privileged

character. The Colorado Supreme Court adopted the *Upjohn* four-factor test in the specific

context of an insurer's privilege claim in a bad faith insurance case, *National Farmers Union*,

718 P.2d at 1049, and this District has consistently applied the privilege in bad faith UIM

actions. *See, e.g.*, *Ivan v. AIG Prop. Cas. Co.*, No. 17-cv-01906-PAB-MEH, 2018 WL 11182728,

at *1 (D. Colo. Feb. 13, 2018). Plaintiff's reliance on out-of-state decisions for the proposition

that the attorney-client privilege categorically does not apply in bad faith cases is unavailing in

this diversity action governed by Colorado law.

That said, the court is mindful that the privilege protects only those communications made for the primary purpose of facilitating legal advice and not communications that are of a business nature, even if an attorney authored, presented, or was copied on them. *Byrnes v. St. Catherine Hosp.*, No. 21-2086-DDC-ADM, 2023 WL 2734229, at *14 (D. Kan. Mar. 31, 2023) ("Where a communication contains both legal advice and business advice, attorney-client privilege only applies if the legal advice predominates over the business advice."); *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-PRW, 2019 WL 1937596, at *3 (W.D. Okla. May 1, 2019) ("If the communication involves both business and legal issues, the Court must determine the primary or predominant purpose of the communication . . . . If primarily a business purpose, the privilege does not attach and the document must be produced.") (quoting *Lindley v. Life Inv'rs Ins. Co. of Am.*, 267 F.R.D. 382, 391–92 (N.D. Okla. 2010) (alteration in original)); *accord Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."). Where a presentation serves both legal and operational purposes, "the entire communication is privileged only if the legal purpose outweighs the business purpose." *Curtis*, 2019 WL 1937596, at *3 (quoting *Lindley*, 267 F.R.D. at 392). It is precisely this question—whether the Good Faith Slides, in whole or in part, were primarily legal rather than operational in purpose—that in camera review is designed to answer. The court turns next to Plaintiff's waiver arguments.

### 2. Waiver

***Timeliness.*** Waiver of attorney-client privilege "is a serious sanction most suitable for

12

cases of unjustified delay, inexcusable conduct, and bad faith." *Byrnes*, 2023 WL 2734229, at \*19 (quotation omitted); *accord Design Basics, LLC v. ProBuild Co. LLC*, No. 10-cv-02274-REB-BNB, 2011 WL 2600980, at \*5 (D. Colo. June 30, 2011). "Where a party has identified the claimed privileged documents and actually established the privilege applies, albeit in an untimely manner, [the] court is reluctant to find waiver[.]" *Byrnes*, 2023 WL 2734229, at \*19. Courts in this District have consistently declined to find waiver based merely on an untimely assertion of privilege where good cause for the delay exists. *See, e.g.*, *Skratch Labs LLC v. Delivery Native, Inc.*, No. 20-cv-1565-WJM-STV, 2022 WL 124753, at \*3 (D. Colo. Jan. 13, 2022); *Fann v. Hartford Underwriters Ins. Co.*, No. 11-cv-03156-CMA-BNB, 2012 WL 5363791, at \*1 (D. Colo. Oct. 31, 2012).

Standard Fire contends that its timing is justified. It notes that it included a general privilege preservation clause in its April 2023 discovery response and that Plaintiff's motion to compel dramatically expanded the original request to fifty-eight courses spanning more than a decade—a scope this court itself described as "exceedingly broad." ECF No. 258 at 23–24. Standard Fire further states that, once the court narrowed the order to fifteen specific courses, counsel promptly reviewed those materials, identified the Good Faith Slides as privileged, obtained a partial stay, and filed a compliant privilege log and declaration. Standard Fire further represents that no breach of confidentiality has occurred.

The court need not, and does not, decide at this juncture whether these circumstances constitute good cause sufficient to avoid a finding of waiver. The privilege motion remains pending, and the court has not yet reviewed the Good Faith Slides themselves. The ultimate waiver question will be addressed after an in camera review.

Plaintiff's principal authority, *United States v. Ary*, 518 F.3d 775 (10th Cir. 2008), is inapplicable for two independent reasons. First, *Ary*, a criminal case, was decided under federal common law, not Colorado privilege law, which governs here. *See Martensen*, 301 F.R.D. at 572. Second, *Ary* concerned waiver arising from the involuntary disclosure of materials seized by the government pursuant to a criminal search warrant, a factual context with no analogue here, where the Good Faith Slides have never been disclosed to any adverse party. The concern animating *Ary*'s waiver analysis—preventing continued adverse use of material whose confidential character had already been compromised—simply does not apply.

*At-Issue/Implied Waiver.* Plaintiff argues that Standard Fire placed the Good Faith Slides at issue by asserting in its fourth and fifth affirmative defenses that all of its conduct was undertaken in good faith and attended by a reasonable belief in its propriety. ECF No. 267 at 9–10. This argument raises a question the court will address more fully following an in camera review. However, the court notes at the outset that, under controlling Colorado authority, implied waiver of the attorney-client privilege requires a party to affirmatively rely on privileged communications as the basis for a claim or defense, not merely that such information may be relevant to a defense. *See State Farm Fire & Cas. Co. v. Griggs*, 419 P.3d 572, 575 (Colo. 2018). The Colorado Supreme Court explained that the mere denial of an allegation does not waive the privilege. *Id*. Standard Fire's fourth and fifth defenses—that its conduct was undertaken in good faith and attended by a reasonable belief in its propriety, ECF No. 147 at 29—appear on their face to be denials of Plaintiff's allegations rather than affirmative reliance on the content of specific attorney advice. The court will consider whether that characterization holds after reviewing the content of the Good Faith Slides themselves, as the nature and substance of the

slides may inform whether Standard Fire has in fact placed their contents at issue in this litigation.

### 3. In Camera Review

Notwithstanding the facial strength of Standard Fire's privilege showing, the court will conduct an in camera review of the Good Faith Slides before entering a final ruling. The Good Faith Slides are a 196-slide presentation created in 2005. ECF No. 262-2. The Kobokovich declaration establishes that different subsets of slides are shown to different audiences at different presentations, that Travelers does not record which specific slides are shown on any particular occasion, and that there is no way to confirm which specific slides adjuster Julie Belletire viewed during her January 20, 2022 completion of the course. ECF No. 262-1 at ¶¶ 11–12. A 196-slide deck created over two decades ago and selectively used across varied presentations may well contain a mix of content—some squarely constituting legal advice protected under *National Farmers Union*, and some potentially amounting to operational guidance of the kind that courts have found unprotected even where an attorney was involved in its creation. *See Motley*, 71 F.3d at 1550–51 (recognizing that an attorney's involvement "in a communication does not automatically render the communication subject to the attorney-client privilege"); *Menapace v. Alaska National Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL 6119962, at *7 (D. Colo. Oct. 15, 2020) (holding that communications related to claims-handling functions are not privileged where counsel acts in the role of a claims adjuster rather than legal advisor).

In conducting its review, the court will apply the primary purpose standard: slides that primarily convey legal advice, strategy, or legal analysis from in-house counsel are protected;

slides that primarily convey operational guidance or business decisions—even if authored or presented by an attorney—are not. *Byrnes*, 2023 WL 2734229, at \*14; *Curtis*, 2019 WL 1937596, at \*3–4; *Lindley*, 267 F.R.D. at 391–92. Where legal and business purposes are inextricably intertwined within a given slide, the court will assess whether the legal purpose outweighs the business purpose. *Curtis*, 2019 WL 1937596, at \*3. The court will also consider, in light of its review of the actual content of the slides, whether Standard Fire has affirmatively relied on any portion of the Good Faith Slides as a basis for its good faith defenses such that implied waiver may apply. *Griggs*, 419 P.3d at 575.

The court emphasizes that ordering an in camera review does not reflect doubt about the good faith of Standard Fire's privilege claim or any skepticism about the Kobokovich declaration. It reflects the court's independent obligation to satisfy itself that a blanket privilege ruling protecting 196 slides in their entirety is warranted, and to ensure the court is best positioned to resolve all pending privilege and waiver questions with the benefit of having reviewed the materials themselves. *Zolin*, 491 U.S. at 569–70. An in camera review is particularly appropriate here given the volume of the withheld materials, the variable nature of how different subsets of slides have been used across different presentations over time, and the unresolved question of which slides, if any, adjuster Belletire actually viewed. ECF No. 262-1 at ¶¶ 11–12.

Standard Fire's Motion to Enforce Attorney-Client Privilege (ECF No. 262) is **TAKEN UNDER ADVISEMENT** pending an in camera review by this court. The partial stay entered at ECF No. 261 is **LIFTED** as to all materials other than the Good Faith Slides and remains in full force and effect solely as to the Good Faith Slides pending the court's final ruling on the

16

privilege motion.

### III.    Plaintiff's Request for Sanctions (ECF No. 267, at 12–13)

Plaintiff requests sanctions pursuant to Federal Rule of Civil Procedure 37(a)(4) on the ground that Standard Fire's original April 28, 2023 response to Request for Production No. 1 was "incomplete and evasive" in failing to identify or produce the Good Faith Slides, which were directly responsive to Plaintiff's request. ECF No. 267, at 12–13. Plaintiff argues that this failure, compounded by Standard Fire's silence throughout subsequent conferrals, oral arguments, and a fully-briefed motion to compel, warrants sanctions as a matter of course.

The court declines to impose sanctions at this time for the following reasons.

### A.  Rule 37(a)(5) Standard

Rule 37(a)(5)(A) provides that when a motion to compel is granted—or when the disclosure or discovery is provided after the motion is filed—the court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, unless one of three exceptions applies: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). Rule 37(a)(5)(B) states that if the motion is denied, the court must require the movant to pay the respondent's reasonable expenses. And Rule 37(a)(5)(C) provides that if the motion is granted in part and denied in part, the court may apportion the reasonable expenses for the motion.

Here, Plaintiff does not predicate her sanctions request on Rule 37(a)(5) in connection

17

with a pending motion to compel. Instead, she relies on Rule 37(a)(4), which she invokes as a

general authorization for sanctions based on evasive or incomplete disclosures in connection

with Standard Fire's response to Request for Production No. 1 in April 2023. *See* ECF No. 267,

at 12–13 (citing Fed. R. Civ. P. 37(a)(4)). Rule 37(a)(4) is a definitional provision, not an

independent source of sanctions authority. It provides that an evasive or incomplete response is

treated as a failure to respond for purposes of a motion to compel under Rule 37(a), which may

in turn support sanctions under Rule 37(a)(5) or Rule 37(b)(2). *See* Fed. R. Civ. P. 37(a)(4)–(5).

The governing sanctions framework thus is set forth in Rule 37(a)(5).

### B.  The Sanctions Question Is Deferred

The court declines to impose sanctions at this time. A position is "substantially justified"

if it is "justified to a degree that could satisfy a reasonable person" or has "a reasonable basis

both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The court need not, and

does not, decide at this juncture whether Standard Fire's conduct ultimately meets that standard.

The privilege motion remains pending, and the court has not yet reviewed the Good Faith Slides.

Resolution of the privilege claim will directly inform whether Standard Fire's prior withholding

was substantially justified. Imposing sanctions at this stage would therefore be premature. *See*

Fed. R. Civ. P. 37(a)(5)(A)(iii) (requiring the court to decline an award of expenses where "other

circumstances make an award of expenses unjust").

For these reasons, Plaintiff's request for sanctions i**s DENIED WITHOUT**

**PREJUDICE**. Rule 37(a)(4) provides that an evasive or incomplete response must be treated as

a failure to respond for purposes of a motion to compel, but any resulting award of expenses is

governed by Rule 37(a)(5), which requires that the court determine whether the nondisclosure

was substantially justified or whether other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(4)–(5). Because that determination turns in part on the validity of Standard Fire's privilege claim, the court will consider the issue of fees and expenses incurred in connection with the privilege dispute—including, if relevant, Standard Fire's initial failure to identify the Good Faith Slides in its April 2023 discovery responses—after issuing its final ruling on the privilege motion. If, following its in camera review, the court determines that Standard Fire's privilege claim lacks merit in whole or in substantial part, it will entertain a renewed motion for fees and expenses, supported by appropriate billing records, at that time. *See* Fed. R. Civ. P. 37(a)(5)(C).

## CONCLUSION

For the foregoing reasons, the court respectfully **ORDERS**[2] as follows:

1. Standard Fire's Motion for Partial Reconsideration (ECF No. 263) is **DENIED**. The partial stay entered at ECF No. 261 is **LIFTED** as to all materials other than the Good Faith Slides. Standard Fire shall produce all training materials for the courses identified in the court's August 5, 2025 Order on Motions (ECF No. 258)—other than the Good Faith Slides—within

---

[2] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

fourteen (14) days of the date of this Order, to the extent not already produced.

2. **Standard Fire's Motion to Enforce Attorney-Client Privilege (ECF No. 262) is TAKEN UNDER ADVISEMENT** pending an in camera review. The partial stay entered at ECF No. 261 shall remain in full force and effect as to the Good Faith Slides pending the court's final ruling. Standard Fire shall deliver one copy of the Good Faith Slides directly to chambers **within seven (7) days** of the date of this Order:

> Chambers of Magistrate Judge Susan Prose
> Alfred A. Arraj United States Courthouse
> 901 19th Street, Room A532
> Denver, Colorado 80294

   The materials **shall not be filed on the court's docket** and **shall not be served on Plaintiff's counsel**. Standard Fire shall file a Notice of Compliance on the docket within one business day of delivery confirming submission without describing the contents. The court will issue a final ruling on ECF No. 262 following its in camera review.

3. **Plaintiff's Request for Sanctions (ECF No. 267, at 12–13) is DENIED WITHOUT PREJUDICE** to renewal following the court's final ruling on ECF No. 262, as set forth in Section III, *supra*. If the court concludes following its in camera review that Standard Fire's privilege claim lacks merit in whole or in substantial part, the court will entertain a renewed motion for fees and expenses, supported by appropriate billing records, at that time.

DATE: April 27, 2026

BY THE COURT:

_____
Susan Prose
United States Magistrate Judge