IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03287-RMR-SBP

LJUBINKA STANISAVLJEVIC,

      Plaintiff,

v.

THE STANDARD FIRE INSURANCE COMPANY, d/b/a TRAVELERS INSURANCE
COMPANY,

      Defendant.

_____

ORDER ON DEFENDANT'S MOTION
TO ENFORCE THE ATTORNEY-CLIENT PRIVILEGE (ECF No. 262)
_____

**Susan Prose, United States Magistrate Judge**

      This matter is before the court on Defendant The Standard Fire Insurance Company's

("Standard Fire") Motion to Enforce the Attorney-Client Privilege. ECF No. 262 (the "Motion").

The court took the Motion under advisement pending an in camera review of a PowerPoint slide

presentation generated by the in-house legal department of Travelers Insurance Company

("Travelers"), the entity name through which Standard Fire conducts business. The court has

now completed that in camera review and concludes that the PowerPoint presentation is shielded

in its entirety from discovery by the attorney-client privilege, and so the Motion is respectfully

**GRANTED**.

**DISCUSSION**

      Plaintiff Ljubinka Stanisavljevic contests Standard Fire's invocation of the attorney-client

privilege over a PowerPoint slide presentation entitled "Claim—Principles of Good WDL Ready

Faith Claim Handling," which the parties and court have come to refer to as the "Slides" or

"Good Faith Slides." The court begins by incorporating the analysis of the Motion previously set forth in the order issued on April 27, 2026, ECF No. 313 at 8-17, in which the court determined that Standard Fire had come forward with sufficient information to show, as a preliminary matter, that the Good Faith Slides are protected by the attorney-client privilege. *See id.* at 10-12 (discussing information about the Slides provided in a declaration submitted by Travelers Vice President and Associate Group General Counsel William Kobokovich). Although Standard Fire had made a facially strong privilege showing, the court deemed it appropriate to verify the applicability of the attorney-client privilege by conducting an in camera review. *Id.* at 15-16.

In response to this court's directive, Standard Fire submitted for the court's review the Good Faith Slides, a PowerPoint presentation consisting of 196 slides. The undersigned has examined the content of each Slide. *See, e.g.*, *National Farmers Union Prop. & Cas. Co. v. Dist. Ct. For City & Cnty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986) (observing that the trial court "reviewed the documents *in camera* . . . and correctly determined which document or portions thereof needed to be disclosed"); *Plaza Ins. Co. v. Lester*, No. 14-cv-01162-LTB-CBS, 2015 WL 3528336, at *5 (D. Colo. June 4, 2015) (conducting a document-by-document review and concluding "that most, but not all of the documents submitted for [the court's] *in camera* review fall within the attorney-client privilege," but that other communications "were often investigative and non-legal in nature"). Based on this review, the court finds that the Good Faith Slides fall squarely within the realm of privileged legal advice.[1]

---

[1] The court notes its respectful, but adamant, disagreement with Plaintiff's argument, based on cases from outside Colorado and this District, that the attorney-client privilege does not apply in an insurance bad faith case like this one. *See* ECF No. 267 at 4 (citing cases). Colorado law is to the contrary. *See, e.g.*, *Frias v. Auto-Owners Ins. Co.*, No. 19-cv-00903-WJM-SKC (D. Colo.

### A.    The Good Faith Slides Are Privileged

As the court explained in its April 27, 2026 order, in diversity cases such as this one, Colorado law governs the question of what is protected by the attorney-client privilege. Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). The attorney-client privilege is codified at Colorado Revised Statute § 13-90-107(1)(b), which states that "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment[.]" The privilege protects matters communicated by or to the client "in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000). In determining whether the privilege applies to corporate entities, courts consider (1) whether the information was given by or to counsel acting as counsel for the corporation; (2) whether the purpose of the communication was to allow counsel to provide legal advice; (3) whether the employees were made aware that the purpose was to give or receive legal advice; and (4) whether the employees were informed that the communication was "highly confidential." *National Farmers Union*, 718 P.2d at 1049. The Good Faith Slides satisfy each of the *National*

---

Sept. 15, 2020) (ECF No. 67) (applying attorney-client privilege to outside counsel's legal advice letter in first-party bad faith uninsured motorist case); *Ivan v. AIG Prop. Cas. Co.*, No. 17-cv-01906-PAB-MEH, 2018 WL 11182728, at *2-3 (D. Colo. Feb. 13, 2018) (holding that counsel's use of factual information to provide legal analysis of an uninsured motorist claim was protected by attorney-client privilege); *see also National Farmers Union*, 718 P.2d at 1049 (distinguishing between unprotected factual investigation and protected legal conclusions in a memorandum generated by legal counsel, and affirming the protection of the attorney-client privilege over the latter). Insurers are entitled to the attorney-client privilege in bad faith cases under Colorado law, and this court will assess whether the privilege should be applied to the Good Faith Slides.

*Farmers Union* factors.

Mr. Kobokovich averred that he and other members of Travelers in-house legal department created the Slides, ECF No. 262-1 ¶¶ 3-4, 6; that the Slides are presented to Travelers employees by Mr. Kobokovich and his attorney colleagues in their capacities as legal counsel for the company, *id.* ¶ 8; and that no one outside the Travelers legal department has custody of any form of the Slides, *id.* ¶ 7. A careful examination of the Slides gives the court no reason to doubt the veracity of these representations. Indeed, the opening Slide in the PowerPoint presentation includes a footer stating that "[t]his document contains confidential communications between employees of The Travelers Companies, Inc. and counsel, and is protected by the attorney-client privilege and/or the work-product privilege."[2] The court's review of the Slides thus corroborates the conclusion that the information contained in them was disseminated from Travelers counsel, acting as counsel for the corporation, to Travelers employees.

Moreover, the Slides unequivocally demonstrate that they were created for the purpose of counsel providing legal advice to Travelers employees concerning the adjusting and handling insurance claims. Without exposing the precise nature of the privileged content, the court can say that the appellation "Good Faith Slides" generally describes their *raison d'etre*: to serve as a mechanism for in-house counsel to explain to Travelers employees what the law requires to satisfy the good faith standard, including by the use of specific examples derived from caselaw; to promote the employees' understanding, based on the governing law, of the difference between

---

[2] Standard Fire has not asserted that the Slides constitute protected work product, *see generally* ECF No. 262, and so the court limits its analysis here to an assessment of the attorney-client privilege question.

practices undertaken in "good faith" and those that might be deemed to constitute "bad faith";
and to guide Travelers employees in implementing "good faith" practices in their work.

Importantly, conveying legal advice is the *only* purpose that may be discerned from the
Slides. Nothing in them suggests any attorney involvement, even tangentially, in executing
"ordinary business activities of the insurance company typically handled by an adjuster or
investigator," so as to deprive some or all of their content of the protection of the attorney-client
privilege. *See Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL
6119962, at *7 (D. Colo. Oct. 15, 2020). The Slides exclusively reflect "the actual provision of
legal advice"—the quintessential attorney-client privileged communication. *See id.*; *see also,
e.g.*, *Ivan*, 2018 WL 11182728, at *3 (finding that "documents or communications detailing
counsel's efforts to obtain the claimant's medical records and counsel's discussion of the
relevant factual findings of such efforts" were not protected by the attorney-client privilege, but
that "communications the insurer made for the purpose of obtaining legal advice or discussions
detailing counsel's legal analysis of the case" were privileged) (citation modified); *Colorado
Mills, LLC v. Philadelphia Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at
*4-5 (D. Colo. Apr. 2, 2013) (rejecting privilege assertion with regard to communications
involving the type of "factual information and . . . evaluation concerning whether [the
claimant's] claims were covered" that is typically performed by claims adjusters, but allowing
insurer to withhold communications related to specific legal advice); *National Farmers Union*,
718 P.2d at 1049 (concluding that the attorney-client privilege did not protect the portion of a
legal memorandum addressing the investigation into the claim, but that "[t]he portion of the
memorandum which contain[ed] legal conclusions" was properly withheld).

5

Based on its in camera review, the court is obliged to respectfully disagree with Plaintiff's likening of the Slides to insurance "claims manuals" that courts routinely order produced. ECF No. 267 at 3; *id.* (asserting that the Travelers' "best practices manual" "seems like the same or similar" to the Good Faith Slides). Plaintiff has not provided the "Best Practices Manual" for the court's review, and the undersigned has never seen it. Regardless, whether any aspect of that unknown document may be privileged has no bearing on the court's analysis of the privilege question with respect to the content of the Good Faith Slides, which patently reflect the provision of legal advice by Travelers in-house counsel to its employees.

Turning then to the third and fourth considerations under *National Farmers Union*— whether the employees were made aware that the purpose was to give or receive legal advice and informed that the communication was "highly confidential," *see* 718 P.2d at 1049—the Slides are labeled as privileged, and that status is emphasized by the fact that they are never distributed to employees for their own keeping in any form: not as handouts, not as electronic files, and not as reference materials. ECF No. 262-1 ¶ 7. The Slides thus are overtly distinguishable from an operational training resource that employees are directed to utilize in their daily work. The *only* context in which an employee sees any of the content of the Good Faith Slides is during the live legal presentation delivered by in-house counsel. The moment the presentation ends, the employee has no access to any of it. The court views this absence of distribution as not incidental, but rather as a structural hallmark of a confidential attorney-client communication distinct from an operational resource. Given these restrictions, the Travelers employee has no basis to question his employer's view of the Slides as "highly confidential."

In sum, the Good Faith Slides satisfy all of the *National Farmers Union* factors, and

6

Standard Fire has met its burden to establish the applicability of the attorney-client privilege. *Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, No. 20-cv-02352-WJM-SKC, 2023 WL 5042922, at *4 (D. Colo. Aug. 8, 2023), *objections overruled*, 2024 WL 3963505 (D. Colo. Aug. 16, 2024) ("The burden of establishing applicability of the attorney-client privilege is on the party claiming the privilege, and the burden of establishing a waiver of the privilege is on the party attempting to overcome the privilege.") (citing *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. App. 2003); *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999)). The Good Faith Slides are shielded from discovery by the attorney-client privilege.

### B.    Standard Fire Has Not Waived the Privilege

Plaintiff asserts that, even if the Slides are privileged, Standard Fire has waived the privilege for two reasons: first, by failing to timely raise the privilege, and second, by placing Travelers' good faith claims-handling practices at issue through its purportedly "affirmative" defenses. ECF No. 267 at 5-13. The court finds no justification for imposing the serious sanction of waiver based on either theory. *See* ECF No. 313 at 13 (stating that the court would address the waiver question following its in camera review of the Slides); *see also, e.g.*, *Jordan v. Wiley*, No. 07-cv-00498-MSK-KLM, 2009 WL 2913231, at *2 (D. Colo. Sept. 8, 2009) (recognizing that a court should find waiver of a privilege only in "the presence of unjustified delay, inexcusable conduct, or bad faith") (quotation omitted).

***Waiver based on alleged untimeliness.*** Plaintiff's contention that Standard Fire failed to assert the privilege "for over a year," ECF No. 267 at 5, mischaracterizes the purported delay. To place the question in context, the court begins by taking note of the expansive breadth of the request for production ultimately found to encompass the Good Faith Slides:

> Please produce any and all **DOCUMENTS** consisting of or relating to any standards, protocols, rules, guidelines, suggestions, instructions, emails, bulletins, advisories, claim manuals, training, (including without limitation any standards adopted or implemented for the handling of claims as required by Colorado law) used or available to or by Travelers claim employees adjusting Colorado first-party and/or uninsured/underinsured motorist claims from 2020 to the present (or applicable elsewhere but also used for claims in Colorado).

ECF No. 267-4 at 2 (Request for Production No. 1). Standard Fire asserts that, when it responded to this request for production on April 28, 2023, it "never interpreted" the request "as calling for production of the 58 [training] courses Plaintiff's counsel later demanded" (including the Good Faith Slides), ECF No. 262 at 7—which apparently came to light after Standard Fire agreed to produce certain "training logs" for four Travelers employees. ECF No. 195 at 8. This court finds no basis in the record to question that assertion.

Instead, as the record demonstrates, this court concluded that the Good Faith Slides (and fourteen other training courses) properly were encompassed within the scope of request for production number 1, but the court made that determination only after a careful examination of vigorously-contested briefing on Plaintiff's motion to compel and after hearing oral argument on the dispute. *See* ECF No. 258 at 20-25 (August 5, 2025 order granting Plaintiff's motion to compel to this extent). In ordering production of these training materials, the court respectfully disagreed with what it deemed to be Standard Fire's "overly-circumscribed view of relevance for discovery purposes," *id.* at 23, but it found no reason to doubt Standard Fire's good faith in taking the position that the production of these materials was overbroad and disproportional to the needs of the case. *See generally* ECF No. 218 (Defendant's Response to Plaintiff's Motion to Compel Adjuster Training Materials). Indeed, the court itself found good cause to narrow the "exceedingly broad" scope of the training materials Plaintiff sought, restricting "the timeframe

for Plaintiff's Request for Production No. 1 to the period commencing on January 1, 2020 (the

beginning date originally articulated in the request for production) to November 9, 2022, the date

Plaintiff initiated this action in Denver District Court." ECF No. 258 at 24.

This record establishes that Standard Fire was not definitively apprised of its obligation

to construe the Good Faith Slides as falling within the parameters of Plaintiff's first request for

production until this court issued an order on the discovery dispute on August 5, 2025. No

"unjustified delay," then, may be found in Standard Fire's formal assertion of the attorney-client

privilege on September 19, 2025, as it worked to timely comply with the court's order to produce

that document. *See* ECF No. 262-1 (September 19, 2025 privilege log); *see also Jordan*, 2009

WL 2913231, at *2. While counsel for Standard Fire might have earlier previewed the privileged

nature of the Good Faith Slides, the undersigned is aware of no caselaw mandating that action in

the context here, where the Slides were one of nearly *sixty* courses that were the subject of an

intense, ongoing dispute awaiting judicial resolution and whose production was by no means

foreordained. Neither did this court's August 5, 2025 order override the assertion of any privilege

that might apply to the Good Faith Slides (or any of the other training materials the court ordered

to be produced). *See* ECF No. 258 at 20-25; *cf. Fann v. Hartford Underwriters Insurance Co.*,

No. 11-cv-03156-CMA-BNB, 2012 WL 5363791, at *1 (D. Colo. Oct. 31, 2012) (holding that an

order compelling the production of certain discovery was not intended to "preclude the plaintiffs

from asserting a privilege objection to the discovery if one exists," and that "the [discovery]

Order should not be read to compel the waiver of any privilege"). The timeline here confirms

that Standard Fire's handling of discovery—including, in particular, the Good Faith Slides—

evinced good faith and reasonable promptness at every stage of the process.

The court thus finds no basis to conclude that Standard Fire waived the attorney-client privilege on grounds of some untoward delay. And the court is respectfully unpersuaded to reach a different conclusion based on the precedent cited by Plaintiff. Start with *United States v. Ary*, 518 F.3d 775 (10th Cir. 2008), on which Plaintiff primarily relies. *See* ECF No. 267 at 5-6. In its April 27, 2026 order, the court found *Ary*, a criminal case concerning the *involuntary* disclosure of privileged information that was decided under federal common law, wholly inapplicable to the circumstances at issue here. *See* ECF No. 313 at 14. The undersigned perceives no reason to revisit that conclusion at this juncture. The concerns animating the decision in *Ary*—that the adverse party might rely on disclosed privileged materials, negating their confidential character, *see* 518 F.3d at 784—are simply absent here.

Plaintiff's reliance on two decisions issued by judges in this District likewise misses the mark. *See* ECF No. 267 at 7-8 (discussing *Pham v. Hartford Fire Insurance Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000), and *Chevron Corporation v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 2135217 (D. Colo. May 25, 2010)). Both matters are distinguishable in critical respects from the instant situation.

In *Pham*, in contrast with the matter before this court, there was no dispute about the propriety of the discovery at issue; rather, an insurer blithely ignored the timing requirements of the Federal Rules of Civil Procedure in failing to "assert any objections to plaintiffs' interrogatories or production requests within the 33 days permitted by the federal rules"; in failing to move "to extend the time within which to respond to those requests"; in deferring its objections until "71 days after the discovery was served, and then only in response to [the court's] Minute Order"; and in failing to offer any "explanation or attempt to articulate good

10

cause for the delay[.]" *See* 193 F.R.D. at 662. Even when the insurer finally mounted a privilege

objection, it was of a "boilerplate" variety that failed to satisfy the requirements of Federal Rule

of Civil Procedure 26(b)(5). *See id.* Based on these particular circumstances, the court in *Pham*

concluded that the insurer waived its right to assert the attorney-client privilege in response to

the plaintiff's discovery requests. *See id.* Such facts plainly cannot be correlated with the

situation here, where Standard Fire never conceded that the Good Faith Slides should be

produced and vociferously argued against their production, then ultimately presented its privilege

objection in conformity with the requirements of Rule 26 and in timely compliance with this

court's contrary ruling on the question.

Neither does *Chevron* support Plaintiff's waiver argument. Critically, Plaintiff does not

acknowledge that the order she references, *see* ECF No. 267 at 8 (citing 2010 WL 2135217), was

subsequently clarified in a manner that contradicts her position on the instant question. Plaintiff

cites *Chevron* for the proposition that the attorney-client privilege was found to be waived

"where party filed motion to quash subpoena three (3) days after the deadline for such motion,"

ECF No. 267 at 8, but in a clarifying order former Chief United States Magistrate Judge Michael

Hegarty established "the scope of production applicable to" his order on a motion to compel. *See*

2010 WL 2232371, at *1 (D. Colo. June 1, 2010). In responding to a query from the compelled

party whether that order precluded them from asserting "narrow privilege objections to specific

documents and questions," Chief Judge Hegarty said that "*the answer is no*":

> The Plaintiffs' request to the Court to impose a blanket preclusion to the discovery
> sought by the Section 1782 subpoenas was indeed untimely and improper; however,
> allowing the responding parties to engage in the standard process of production,
> which may (or may not) necessitate the use of a privilege log, is still an appropriate
> method of responding to the Section 1782 subpoenas.

11

*Id.* at *1-2 (emphasis added). Just so here. In compelling Standard Fire to respond to Plaintiff's request for adjuster training materials (albeit in a manner substantially restricted from her original request), the court did *not* hold that Standard Fire was precluded from claiming the protection of the attorney-client privilege over the materials ordered to be produced. Put simply, *Chevron*, as clarified, supports *Standard Fire's* position—not Plaintiff's—concerning the applicability of the attorney-client privilege over the Good Faith Slides.

For these reasons, the court finds Plaintiff has failed to meet her burden to establish that Standard Fire waived the attorney-client privilege based on its purported delay in claiming the protection of the privilege over the Good Faith slides. *See Box Elder Kids*, 2023 WL 5042922, at *4 (burden of establishing a waiver of the privilege is on the party attempting to overcome the privilege).

***Implied waiver based on Standard Fire's defenses***. The court turns to Plaintiff's alternative contention that Standard Fire waived the attorney-client privilege over the Good Faith Slides "by injecting the legal advice it allegedly received as to how to handle claims in good faith as the basis of multiple affirmative defenses." ECF No. 267 at 9 (citing defenses 4 and 5).[3]

---

[3] Those defenses state:

4.  All acts and conduct of Standard Fire were undertaken in good faith. This defense is reasserted with regard to Plaintiff's request for punitive damages and the allegations accompanying that request.

5.  The actions and conduct of Standard Fire were attended at all times by a reasonable belief in their propriety under the circumstances, and said actions and conduct were in fact reasonable. This defense is reasserted with regard to Plaintiff's request for punitive damages and the allegations accompanying that request.

ECF No. 147 at 29.

12

In its April 27, 2026 order, the court explained that it would evaluate this argument "more fully following an in camera review" of the Good Faith Slides. ECF No. 313 at 14. Having conducted that in camera review, the court now confirms that it finds no merit in Plaintiff's "implied waiver" argument, and respectfully rejects it.

Under Colorado law, a party "may impliedly or expressly waive the privilege that attaches to a protected communication." *Wesp v. Everson*, 33 P.3d 191, 198 (Colo. 2001) (citing *Miller v. Dist. Court*, 737 P.2d 834, 838 (Colo. 1987)). "To prove an implied waiver, there must be evidence showing that the privilege holder, 'by words or conduct, has impliedly forsaken his claim of confidentiality with respect to the communication in question.'" *Id.* (quoting *Miller*, 737 P.2d at 838) (citation omitted). Waiver may occur "when a party places in issue a confidential communication *going directly to a claim or defense*[.]" *Id.* (emphasis added) (citations omitted). As the Colorado Supreme Court later put the point even more emphatically, "to establish an implied waiver based on the assertion of a claim or defense, a party must show that the client asserted a claim or defense that *depends on* privileged information." *State Farm Fire & Cas. Co. v. Griggs*, 419 P.3d 572, 575 (Colo. 2018) (citing *People v. Trujillo*, 144 P.3d 539, 543 (Colo. 2006) (finding that to impliedly waive the privilege, "the client must commit some 'affirmative act' that places the privileged information at issue"); *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (holding that for purposes of implied waiver, "a party must *rely* on privileged advice from his counsel to make his claim or defense")). Furthermore, the "fact that privileged information might become relevant in a given lawsuit could not alone be enough to establish an implied waiver." *Id.* (observing that if relevance were the operative standard then "the privilege would lose much of its protective force because 'privileged information may be in some sense

13

*relevant* in any lawsuit'") (quoting *Cnty. of Erie*, 546 F.3d at 229).

These standards pose a formidable bar to a finding of implied waiver. Following a careful examination of the Good Faith Slides pursuant to these governing legal principles, the court is unable to find that Plaintiff has surmounted that legal hurdle.

To begin with, the "affirmative defenses" on which Plaintiff's implied waiver argument hinges—that Standard Fire acted in good faith and reasonably under the circumstances, *see* ECF No. 267 at 9—are not actually affirmative defenses, but rather the functional equivalents of denials of Plaintiff's claims on which *she* bears the burden of proof.[4] *See Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004) ("Insureds have the burden of proving each element of a claim for bad faith breach of insurance contract, including damages, by a preponderance of the evidence.").[5] While "the mere denial of an allegation does not waive the

---

[4] That does not mean, of course, that such denials "are not 'legal defenses' for purposes of Rule 12(h)(2)." *See Equal Emp. Opportunity Comm'n v. Chris the Crazy Trader Inc.*, No. 21-cv-02666-NYW-TPO, 2025 WL 958486, at *13 (D. Colo. Mar. 31, 2025) (comparing *Legal Defense*, Black's Law Dictionary (12th ed. 2024) ("A complete and adequate defense in a court of law."), *with Affirmative Defense*, Black's Law Dictionary (12th ed. 2024) ("A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.")).

[5] In its April 27, 2026 order, the court used in one instance the term "affirmative" in describing these defenses, *see* ECF No. 313 at 14, but that characterization was incorrect. An affirmative defense is one that "'does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven.'" *A1 Garage Door Serv., L.L.C. v. West*, No. 21-cv-01821-PAB-NRN, 2022 WL 952874, at *3 (D. Colo. Mar. 30, 2022) (quoting *Medina v. Cath. Health Initiatives*, No. 13-cv-01249-REB-KLM, 2015 WL 13614128, at *1 (D. Colo. May 13, 2015)). An argument that an insurer acted in good faith or in a reasonable manner seeks to negate elements of Plaintiff's claims which she bears the burden to prove; they are therefore not affirmative defenses. *See id.* (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof [as to an element plaintiff is required to prove] is not an affirmative

14

attorney-client privilege," *Griggs*, 419 P.3d at 575—a point that, in and of itself, would be sufficient grounds for rejecting Plaintiff's implied waiver argument—the court's in camera review additionally confirms that Standard Fire's assertions that it acted reasonably and in good faith under the particular circumstances at issue here in no way "*depend*[] *on* privileged information" extracted from the Good Faith Slides. *Id.* Far from it. The court finds no support for the conclusion that the confidential communications in the Slides "go[] directly to" either of the asserted defenses. *See Wesp*, 33 P.3d at 198. Nor did the assertion of those defenses constitute an "affirmative act" that placed the privileged content of the Slides "at issue." *Trujillo*, 144 P.3d at 543; *Griggs*, 419 P.3d at 575; *see also Rademacher v. Greschler*, 455 P.3d 769, 775 (Colo. 2020) (finding no implied waiver of the attorney-client privilege where the plaintiff "neither asserted a claim or defense that focused or depended on privileged information nor otherwise placed at issue allegedly privileged information when she filed her malpractice action close to the expiration of the statute of limitations or when she then contested [defendant's] statute of limitations defense").[6]

---

defense."); *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."); *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986) ("[D]efenses [which] negate an element of the plaintiff's prima facie case . . . are excluded from the definition of affirmative defense.")).

[6] Standard Fire argues that Plaintiff's implied waiver argument "is worse than prior arguments this Court has found were 'frivolous,'" and that her "law firm was previously forced to pay special master fees for making a similarly meritless 'implied waiver' argument to attempt to pierce an insurer's attorney-client privilege." ECF No. 278 at 10; ECF No. 278-2, June 21, 2021 Special Master's Ruling on IDS's Assertion of Attorney-Client Privilege, *Smith v. Cervantes*, No. 2019CV30864 (Boulder County District Court). In *Smith*, the special master found that a statement in a case management order denying "an accusation of culpable mental state or intentional wrongdoing" did not constitute an implied waiver of the attorney-client privilege.

15

Accordingly, Plaintiff has failed to meet her burden to demonstrate that Standard Fire impliedly waived the attorney-client privilege over the Good Faith Slides. *See Box Elder Kids*, 2023 WL 5042922, at *4.

## CONCLUSION

Consistent with the foregoing, it is respectfully **ORDERED** that Defendant The Standard Fire Insurance Company's Motion to Enforce the Attorney-Client Privilege (ECF No. 262) is **GRANTED**. In light of the disposition of the Motion in favor of Standard Fire, it is further **ORDERED** that Plaintiff's request for sanctions in connection with this Motion, *see* ECF No. 267 at 13, is **DENIED**.[7]

---

ECF No. 278-2 at 5; *see also id.* at 9 ("Plaintiff's motion to pierce the attorney-client privileged communications . . . is denied for the second time in this proceedings. The [Special Master] therefore concludes that the Special Master costs relating to this particular dispute shall be borne 100% by Plaintiff."). To be sure, the implied-waiver arguments here and in *Smith* rest on a similar legal theory, if applied in a somewhat different context. Plaintiff's counsel, of course, is not precluded from raising an argument that has failed in past before a different judicial officer. However, the argument fares no better here, for the reasons articulated in this order.

[7] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

16

DATED: June 25, 2026                    BY THE COURT:


_____

Susan Prose
United States Magistrate Judge